**COPY**

# IN THE UNITED STATES DISTRICT
## COURT FOR THE DISTRICT OF COLUMBIA

JAMAL KIYEMBA, as Next Friend of
ABDUSABUR DOE, ABDUSAMAD DOE,
ABDUNASIR DOE, HAMMAD DOE, HUDHAIFA
DOE, JALAAL DOE, KHALID DOE, SAABIR DOE,
and SAADIQ DOE,

         Detainees,
         Guantanamo Bay Naval Station,
         Guantanamo Bay, Cuba;

and

ABDUSABUR DOE, ABDUSAMAD DOE,
ABDUNASIR DOE, HAMMAD DOE, HUDHAIFA
DOE, JALAAL DOE, KHALID DOE, SAABIR DOE,
and SAADIQ DOE,

         Petitioners/Plaintiffs,

         v.

GEORGE W. BUSH
         President of the United States
         The White House
         1600 Pennsylvania Avenue, N.W.
         Washington, D.C. 20500;

DONALD RUMSFELD
         Secretary, United States
         Department of Defense
         1000 Defense Pentagon
         Washington, D.C. 20301;

ARMY BRIG. GEN. JAY HOOD
         Commander, Joint Task Force - GTMO
         JTF-GTMO
         APO AE 09360; and

ARMY COL. MIKE BUMGARNER
         Commander, Joint Detention
         Operations Group - JTF-GTMO
         JTF-GTMO
         APO AE 09360,

         Respondents/Defendants.

Case No.

Judge:

Deck Type: Habeas Corpus/2255

Date Stamp:

NANCY M.
MAYER-WHITTINGTON
CLERK
2005 JUL 29 PM 4: 03
RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

**PETITION FOR WRITS
OF HABEAS CORPUS**

No. _____

DCDOCS/626024.3

Petitioners Abdusabur Doe, Abdusamad Doe, Abdunasir Doe, Hammad Doe, Hudhaifa Doe, Jalaal Doe, Khalid Doe, Saabir Doe, and Saadiq Doe (hereinafter "Petitioners") seek the Great Writ. On information and belief, Petitioners are citizens of the People's Republic of China and act on their own behalf and through their Next Friend, Jamal Kiyemba. Petitioners are civilians wrongly classified as "enemy combatants" by the President of the United States, and are being held virtually incommunicado in military custody at the United States Naval Station at Guantanamo Bay, Cuba ("Guantanamo Bay Naval Station"). The detention of Petitioners is without lawful basis, without charge, without access to counsel and without being afforded any fair process by which Petitioners might challenge their detention. Petitioners are being held under color and authority of the executive branch, and in violation of the Constitution, laws and treaties of the United States as well as in violation of customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioners or to establish in this Court a lawful basis for their detention. This Court should also order injunctive and declaratory relief.

Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, or under the November 13 Executive Order, Respondents George W. Bush, President of the United States, Donald H. Rumsfeld, U.S. Secretary of Defense, Army Brigadier General Jay Hood, Commander of Joint Task Force-GTMO, and Army Colonel Mike Bumgarner, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either ultimately responsible for or have been charged with the responsibility of maintaining the custody and control of the detained Petitioner at Guantanamo.

2                                    HABEAS CORPUS PETITION

## JURISDICTION

1.      Petitioners bring this action under 28 U.S.C. §§ 2241(a), (c)(1), (c)(3) and 2242. Respondents are detaining Petitioners "under or by color of the authority of the United States" and "in violation of the Constitution or laws or treaties of the United States." *Id.* at § 2241(a)(1), (a)(3). Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 701 *et seq.*; and Articles I and II of the Constitution of the United States, and the Fifth, Sixth, and Eighth Amendments thereto. Because they seek declaratory relief, Petitioners also rely on Fed. R. Civ. P. 57.

2.      This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas Corpus, and to entertain the Petition filed by Mr. Kiyemba, the Next Friend of Petitioners Abdusabur Doe, Abdusamad Doe, Abdunasir Doe, Hammad Doe, Hudhaifa Doe, Jalaal Doe, Khalid Doe, Saabir Doe, and Saadiq Doe, under 28 U.S.C. § 2242. This Court is further empowered to declare the rights and other legal relations of the parties herein under 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction, and also to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## PARTIES

3.      Petitioners Abdusabur Doe, Abdusamad Doe, Abdunasir Doe, Hammad Doe, Hudhaifa Doe, Jalaal Doe, Khalid Doe, Saabir Doe, and Saadiq Doe (collectively, "Petitioners") are presently incarcerated at Guantanamo Bay Naval Station, and held in Respondents' unlawful custody and control. Each is a citizen of the Xinjiang Uyghur Autonomous Region, a western province of the People's Republic of China also commonly referred to as "East Turkistan."

HABEAS CORPUS PETITION

Petitioners are Uighurs ("WEE-ghurs"), a Turkic Muslim minority group that has been brutally oppressed by the communist Chinese government.

4.      The United States is currently incarcerating approximately 22 Uighurs at Guantanamo Bay. Some of these men—according to press releases, 15 or more of them—have been determined by the government not to be "enemy combatants" or not to be a threat to the security of the United States. *See, e.g.*, Demetri Sevastopulo, "Cheney backs Guantanamo Bay jail amid growing unease," FINANCIAL TIMES (June 13, 2005) ("The US is holding about 550 detainees at Guantanamo, including about a dozen Uighur Chinese whom the US has determined are no longer 'enemy combatants'."); Carol Rosenberg, "Guantanamo Bay: Closing prison would be tricky easy," MIAMI HERALD (June 12, 2005) ("Navy Secretary Gordon England confirmed in March that Guantanamo captives include Chinese Muslims—reportedly about two dozen—who are no longer classified as 'enemy combatants,' the Bush administration term for terrorism suspects."); Editorial, WASH. POST (May 3, 2005) ("[T]he military has determined that about 15 of [the Uighurs at Guantanamo] are not 'enemy combatants.' . . . The Pentagon has, consequently, cleared them for release. The trouble is that the State Department has been unable to find other countries willing to take them."). Nevertheless, Respondents continue to imprison these men. On information and belief, the government has determined that one or more Petitioners are not "enemy combatants" and/or not a threat to the security of the United States, and has nevertheless failed to release them from prison.

5.      Jamal Kiyemba is presently incarcerated at Guantanamo Bay Naval Station, and held in Respondents' unlawful custody and control. Because Petitioners Abdusabur Doe, Abdusamad Doe, Abdunasir Doe, Hammad Doe, Hudhaifa Doe, Jalaal Doe, Khalid Doe, Saabir

4                                    HABEAS CORPUS PETITION

Doe, and Saadiq Doe have been denied access to legal counsel and to the courts of the United States, Mr. Kiyemba acts as their Next Friend.

6.      Respondent George W. Bush is the President of the United States and Commander-in-Chief of the armed forces of the United States. Petitioners are being detained pursuant to President Bush's authority as Commander-in-Chief and under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, entitled Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (Nov. 13, 2001) ("Executive Order"). President Bush is responsible for Petitioners' unlawful detention and is sued in his official capacity.

7.      Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense. Pursuant to either the Executive Order or the President's authority as Commander-in-Chief, and under the laws and usages of war, Respondent Rumsfeld has been charged with maintaining custody and control over Petitioners, and is responsible therefor. He is sued in his official capacity.

8.      Respondent Brigadier General Jay Hood is the Commander of Joint Task Force-GTMO, the task force that has control of the detention operation at Guantanamo Bay. He has supervisory responsibility for Petitioners and is sued in his official capacity.

9.      Respondent Army Colonel Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioners are is presently held. He is the immediate custodian responsible for Petitioners' detention and is sued in his official capacity.

HABEAS CORPUS PETITION

10.    Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantanamo. All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

## STATEMENT OF FACTS

11.    Upon information and belief, Petitioners are not, and never were, enemy aliens, lawful or unlawful belligerents, or combatants of any kind under any definition adopted by the Government in any civil or military proceedings. Upon information and believe, Petitioners are not, nor have they ever been, "enemy combatants" who were "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2639 (2004).

12.    Upon information and belief, Petitioners were present in Afghanistan when the United States began military operations in that country in October 2001. Upon information and belief, Petitioners did not take up arms against United States forces, and did not support forces hostile to or engaged in armed conflict with the United States. Instead, Petitioners attempted to flee Afghanistan, eventually making their way over the mountains to Pakistan with a large number of other refugees. In Pakistan, Petitioners were fed and housed by a local tribe for several days. That tribe, however, eventually turned Petitioners over to Pakistani authorities who arrested Petitioners. Petitioners were eventually turned over to the U.S. military. Upon information and belief, the United States paid a $5,000 bounty for each Petitioner. *See also*

6                                          HABEAS CORPUS PETITION

"Guantanamo Detainees Say Arabs, Muslims Sold for U.S. Bounties," USA Today (May 31, 2005).

13.     Petitioners seek to enforce their rights to a judicial determination of the lawfulness of their detention.

14.     The United States has not shown that Petitioners were members of the Taliban, of the armed forces of Afghanistan, or of Al Qaeda prior to their detention. Nor has it shown that Petitioners committed any violent acts against any American person or property. Furthermore, the United States has failed to show that Petitioners had any involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, the ensuing armed conflict, or any acts of international terrorism attributed by the United States to Al Qaeda or any other terrorist group. Petitioners remain incarcerated at Guantanamo Bay Naval Station, a territory over which the United States exercises exclusive jurisdiction and control.

15.     Petitioners have not been afforded any procedures that satisfy their rights under the most fundamental common law notions of due process, the Constitution of the United States, the laws and treaties of the United States, or customary international law.

### The Joint Resolution

16.     In the wake of the September 11, 2001, attacks, the United States, at the direction of President Bush, began a military campaign in Afghanistan. On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

7                                    HABEAS CORPUS PETITION

17.    Petitioners are not properly detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or the Joint Resolution.

18.    Petitioners are not, and have never been, members of Al Qaeda or any other terrorist group.  Prior to their detention, they did not commit any violent act against any American person or espouse any violent act against any American person or property.  They had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, or any act of international terrorism attributed by the United States to Al Qaeda or any other terrorist group.  They are not properly subject to the detention order issued by President Bush.  As they did not participate in the armed conflict at any point in time, they are not properly subject to President Bush's authority as Commander-in-Chief or under the laws and usages of war.

### The Executive Order

19.    On November 13, 2001, President Bush issued an Executive Order authorizing Respondent Rumsfeld to detain indefinitely anyone President Bush has "reason to believe":

> i.    is or was a member of the organization known as al Qaeda;
>
> ii.    has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threatened to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or
>
> iii.    has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833 § 2 (Nov. 13, 2001).  President Bush is obligated to make this determination in writing.  The Executive Order was neither authorized nor directed by Congress, and is beyond the scope of the Joint Resolution of September 18, 2001.

HABEAS CORPUS PETITION

20.    The Executive Order purports to vest President Bush with the sole discretion to identify individuals who fall within its purview.  It establishes no standards governing the exercise of his discretion.  The Executive Order contains no notification provision for informing a detainee of the charges he may face.  The Executive Order authorizes detainees to be confined indefinitely without charges.  It contains no provision for a detainee to be notified of his rights under domestic and international law, and provides neither the right to counsel, nor rights to notice of consular protection or to consular access at the detainee's request.  It provides no recourse to a neutral tribunal to review the basis for or the legality of a detainee's continued detention and contains no provision for recourse to an Article III court.  In fact, the Executive Order purports to expressly bar review by any court.  The Executive Order authorizes indefinite and unreviewable detention, based on nothing more than President Bush's written determination that an individual is subject to its terms which, since not reviewable by any court, may be based on false evidence, evidence obtained through torture, or even no evidence at all.

21.    The Executive Order was promulgated in the United States and in this judicial district.  The decision to incarcerate Petitioners was made by Respondents in the United States and in this judicial district.  The decision to detain Petitioners at Guantanamo Bay Naval Station was made in the United States and in this judicial district.  The decision to continue detaining Petitioners was, and is, being made by Respondents in the United States and in this judicial district.

22.    The United States has not shown that President Bush has certified or determined in any manner, in writing or otherwise, that Petitioners are subject to the Executive Order.

23.    The United States has not shown that Petitioners were, and are, detained lawfully either pursuant to the Executive Order, President Bush's authority as Commander-in-Chief, or

HABEAS CORPUS PETITION

the laws and usages of war, in that Petitioners were denied the process due to them under the common law and the Due Process Clause of the Fifth Amendment to the Constitution of the United States, domestic civil and military law, as well as international law.

### Guantanamo Bay Naval Station

24.     On or about January 11, 2002, the United States Military began transporting prisoners, some of whom were captured in or near Afghanistan, to Camp X-Ray at the Guantanamo Bay Naval Station. In April 2002, all prisoners were transferred to Camp Delta, a more permanent prison facility at the Naval Station. Currently, prisoners are housed in Camp Delta and Camp V, an additional maximum-security interrogation and detention center, as well as in Camps I, II, III and IV.

25.     Prisoners incarcerated at Guantanamo Bay Naval Station are entitled to test the legality of their detention in the federal courts. *Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004).

26.     On a date unknown to counsel for Petitioners, but known to Respondents, the United States transferred Petitioners to Guantanamo Bay Naval Station, where, upon information and belief, they currently reside in the custody and control of Respondents.

### The Conditions of Detention at Guantanamo

27.     The United States military has held Petitioners at Guantanamo Bay Naval Station virtually *incommunicado*.

28.     Upon information and belief, Petitioners have been interrogated by representative by the People's Republic of China while in the custody of the United States at Guantanamo Bay, and that Petitioners were subjected to threats and "stress and duress" techniques such as sleep deprivation, forced sitting for hours and "environmental manipulation" such as exposure to extreme heat or cold.

HABEAS CORPUS PETITION

29.     Upon information and belief, Petitioners have been or will be forced to provide

involuntary statements to Respondents' agents at Guantanamo and have been or will be

interrogated repeatedly by agents of the United States Departments of Defense and Justice, and

the Central Intelligence Agency, though they have not been charged with an offense and have not

been notified of any pending or contemplated charges. They have not appeared before a lawful

military or civilian tribunal, and have not been provided access to counsel or the means to

contact and secure counsel. They have not been adequately informed of their rights under the

United States Constitution, the regulations of the United States Military, the Geneva Convention,

the International Covenant on Civil and Political Rights, the American Declaration on the Rights

and Duties of Man, the 1954 Convention Relating to the Status of Refugees or customary

international law. Indeed, Respondents have taken the position that Petitioners should not be

informed of these rights. As a result, Petitioners lack any ability to protect or to vindicate their

rights under domestic and international law.

30.     Upon information and belief, the United States has held detainees at Guantanamo

Bay Naval Station under conditions that violate their constitutional and international rights to

dignity and freedom from torture, and from cruel, inhuman and degrading treatment or

punishment. *See, e.g.*, Press Release, United Nations, United Nations Human Rights Experts

Express Continued Concern About Situation of Guantanamo Bay Detainees (Feb. 4, 2005); Press

Release, International Committee of the Red Cross, The ICRC's Work at Guantanamo Bay (Nov.

30, 2004); Operational Update, International Committee of the Red Cross, US Detention Related

to the Events of September 11, 2001 and its Aftermath - the Role of the ICRC (July 26, 2004);

Amnesty International, United States of America: Human Dignity Denied: Torture and

HABEAS CORPUS PETITION

Accountability in the "War on Terror" (Oct. 27, 2004); *see also* The National Association of Criminal Defense Lawyers, Abuse of Detainees at Guantanamo Bay (Nov. 2004).

31.    Many of these violations—including isolation for up to thirty days, twenty-eight-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror—are actual interrogation techniques approved for use at Guantanamo Bay Naval Station by the most senior Department of Defense lawyer. *See* Action Memo from William J. Haynes II, General Counsel, Department of Defense, to Secretary of Defense (Nov. 27, 2002); Pentagon Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations (Apr. 4, 2003).[1]

32.    Approved interrogation techniques appear to have resulted in the death of detainees while in Respondents' custody in Iraq, and in other abuses at Bagram Air Force base. *See* Tim Golden, *In U.S. Report, Brutal Details of 2 Afghan Inmates' Deaths*, N.Y. TIMES, May 20, 2005; *Iraqi Died While Hung from Wrists*, ASSOC. PRESS, Feb. 17, 2005; *Papers Reveal Bagram Abuse*, THE GUARDIAN, Feb. 18, 2005.

33.    Some military lawyers have objected to and tried to stop the abusive interrogations at Guantanamo Bay Naval Station. *Military Lawyers Objected to Interrogation*

---

[1]    Additional details of the cruel and degrading conditions suffered by detainees at Guantánamo are set out at length in a statement by numerous released British detainees as well as in a book written by a former United States Army linguist who worked as an Arabic translator at Guantanamo. *See* Shafiq Rasul, Asif Igbal & Rhuhel Ahmed, Composite Statement: Detention in Afghanistan and Guantanamo Bay, 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23july04.pdf; Eric Saar & Viveca Novak, INSIDE THE WIRE: A MILITARY INTELLIGENCE SOLDIER'S EYEWITNESS ACCOUNT OF LIFE AT GUANTANAMO (2005). The Department of Defense also informed the Associated Press that a number of interrogators at Guantanamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See Report Details Guantanamno Abuses*, ASSOC. PRESS, Nov. 4,

(Footnote Continued on Next Page.)

HABEAS CORPUS PETITION

DCDOCS/626024.3

*Methods at Guantanamo Sources Say,* N.Y. DAILY NEWS, Feb. 13, 2005 ("Judge Advocates—

uniformed legal advisers known as JAGs who were assigned to a secret war crimes task force—

repeatedly objected to aggressive interrogations by a separate intelligence unit at Camp Delta,

where Taliban and al-Qaida suspects have been jailed since January 2002. The military lawyers'

actions had never been disclosed and are the first known cases of lower-level officers resisting

interrogations at the Cuban camp that might constitute torture.").

34.     Upon information and belief, Respondents contend that Petitioners should not be

informed of their rights under the laws or Constitution of the United States, the regulations of the

United States Military, the Geneva Convention, the International Covenant on Civil and Political

Rights, the American Declaration on the Rights and Duties of Man, and the 1954 Convention

Relating to the Status of Refugees or customary international law. As a result, upon information

and belief, Petitioners lack awareness of their rights under domestic and international law.

35.     The International Committee of the Red Cross ("ICRC") has charged the United

States Military with intentionally using psychological and physical coercion on prisoners at

Guantanamo Bay Naval Base during interrogations that was "tantamount to torture." *See* Neil A.

Lewis, *Red Cross Finds Detainee Abuse in Guantanamo,* N.Y. TIMES, Nov. 30, 2004, at A1. The

report includes claims that doctors and other medical workers at Guantanamo Bay Naval Station

participated in planning for interrogations. *Id.; see also* M. Gregg Bloche & Jonathan H. Marks,

*When Doctors Go to War,* N.E. J. MED., Jan. 6, 2005, at 3-4. Since details of the ICRC's report

emerged, new revelations of abuse and torture at Guantanamo Bay Naval Station have appeared,

---

(Footnote Continued from Previous Page.)

2004.

HABEAS CORPUS PETITION

DCDOCS/626024.3

including Federal Bureau of Investigation memos detailing torture and "highly aggressive interrogation techniques," including twenty-four-plus hour interrogations involving temperature extremes, dogs, prolonged isolation, and loud music. *See* Amnesty International, GUANTANAMO: AN ICON OF LAWLESSNESS, Jan. 6, 2005, at 3-5; *see also* Amnesty International, GUANTANAMO AND BEYOND: THE CONTINUING PURSUIT OF UNCHECKED EXECUTIVE POWER, May 12, 2005, at 83-116; Neil A. Lewis, *Fresh Details Emerge on Harsh Methods at Guantanamo*, N.Y. TIMES, Jan. 1, 2005, at A1; Carol D. Leonnig, *Further Detainee Abuse Alleged; Guantanamo Prison Cited in FBI Memos*, WASH. POST, Dec. 26, 2004, at A1; Neil A. Lewis and David Johnston, *New F.B.I. Memos Describe Abuses of Iraq Inmates*, N.Y. TIMES, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, *FBI Agents Allege Abuse of Detainees at Guantanamo Bay*, WASH. POST, Dec. 21, 2004, at A1; Neil A. Lewis, *F.B.I. Memos Criticized Practices at Guantanamo*, N.Y. TIMES, Dec. 7, 2004, at A19. Even more recently, the Associated Press has reported allegations that female Guantanamo interrogators have used sexual taunting, including smearing fake menstrual blood on a detainee's face, to try to break Muslim detainees. *Gitmo Soldier Details Sexual Tactics*, ASSOC. PRESS, Jan. 27, 2005; *see also* Eric Saar & Viveca Novak, INSIDE THE WIRE: A MILITARY INTELLIGENCE SOLDIER'S EYEWITNESS ACCOUNT OF LIFE AT GUANTANAMO (2005).

36.     On information and belief, the unlawful and unconstitutional interrogation techniques used by Respondents at Guantanamo Bay Naval Station include not only physical and psychological abuse, but also other impermissible conduct contrary to due process requirements, including having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees for the purpose of extracting information from the detainees.

HABEAS CORPUS PETITION

*See* Sam Hannel, *Lawyers Describe Guantanamo Detainees*, SEATTLE POST-INTELLIGENCER, Jan. 19, 2005.

37.     Respondents, acting individually or through their agents, have stated that whatever limitations apply on coercive interrogation techniques used by United States Military officials under the auspices of the Department of Defense do not apply to interrogations conducted by agents of the Central Intelligence Agency or other entities controlled by President Bush. Eric Lichtblau, *Gonzales Says '02 Policy on Detainees Doesn't Bind CIA*, N.Y. TIMES, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, *Torture by U.S. Personnel Illegal, Gonzales Tells Senate*, WASH. POST, Jan. 18, 2005, at A4.

38.     In published statements, President Bush and Secretary Rumsfeld, and predecessors of Hood and Bumgarner, respectively, Lenhert and Carrico, have proclaimed that the United States may hold the detainees under their current conditions indefinitely. See, e.g., Roland Watson, *The Times* (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, Assoc. Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held . . . . 'We have to look at Camp X-ray as a work in progress . . .' Lehnert told CNN. Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards . . . .'"); John Mintz, "Extended Detention in Cuba Mulled," *The Washington Post*, February 13, 2002. ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at

HABEAS CORPUS PETITION

Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

39.    According to the Department of Defense, even detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantanamo indefinitely.  *See* Department of Defense Press Background Briefing of July 3, 2003, *at* http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited Feb. 14, 2005).

40.    Counsel for Respondents have also consistently maintained that the United States has reserved the right to hold the detained Petitioners under their current conditions indefinitely. *See In re Guantanamo Detainee Cases*, Nos. 02-CV-0299 (CKK) *et al.*, (D.D.C.), Tr. of Dec. 1, 2004, Or. Argument on Mot. to Dismiss, at 22-24 (statements of Principle Deputy Assoc. Atty. Gen. Brian Boyle); *see also* Dana Priest, *Long-Term Plan Sought for Terror Suspects*, WASH. POST, Jan. 2, 2005, at Al.  Moreover, the United States Government has recently acknowledged plans to begin constructing a new, more permanent facility at Guantanamo Bay Naval Station. Christopher Cooper, *In Guantanamo, Prisoners Languish in a Sea of Red Tape*, WALL ST. J., Jan. 26, 2005, at Al; *Guantanamo Takes on the Look of Permanency*, ASSOC. PRESS, Jan. 9, 2005.

### Rendition

41.    During interrogations, detainees have also been threatened with rendition or transfer to countries that routinely practice torture.  Upon information and belief, the United States has secretly transferred detainees to such countries without complying with the applicable legal requirements for extradition.  This practice, known as "rendition" or "extraordinary rendition," is used to facilitate interrogation by means of torture.  *See* Craig Whitlock, *New*

HABEAS CORPUS PETITION

*Swedish Documents Illuminate CIA Action: Probe Finds 'Rendition' Of Terror Suspects Illegal*,

WASH. POST, May 21, 2005, at A1; Jane Mayer, *Outsourcing Torture: The Secret History of*

*American's "Extraordinary Rendition" Program*, THE NEW YORKER, Feb. 14, 2005, at 106.

42.    The United States' practice of rendition has been well documented by various

major American and international news organizations, including, *inter alia*, The New York

Times, The Washington Post, the Los Angeles Times, and the British Broadcasting Corporation

("BBC").  According to news accounts,

> Since September 11, the U.S. government has secretly transported dozens of
> people suspected of links to terrorists to countries other than the United States
> bypassing extradition procedures and legal formalities, according to Western
> diplomats and intelligence sources.  The suspects have been taken to countries . .
> . whose intelligence services have close ties to the CIA and where they can be
> subjected to interrogation tactics—including torture and threats to families—that
> are illegal in the United States, the sources said. In some cases, U.S. intelligence
> agents remain closely involved in the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, *U.S. Behind Secret Transfer of Terror Suspects*, WASH. POST,

Mar. 11, 2002, at A1; *see also* Dana Priest, *Long Term Plan Sought for Terror Suspects*, WASH.

POST, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between

the United States and other countries, such as Egypt . . . that agree to have local security services

hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

43.    Upon information and belief, Petitioners are at risk of being rendered, expelled or

returned without lawful procedures to a country that engages in torture during interrogations and

incarceration.  The Chinese government has specifically demanded that the United States return

the Uighurs held in Guantanamo to China "to face charges of terrorism."

44.    In particular, Petitioners cannot legally or ethically be returned or rendered to

their native country, the People's Republic of China.  To do so, would very likely subject them to

arbitrary arrest, torture or even death at the hands of the oppressive Communist Chinese regime.

According to the State Department, in China during 2004 "[f]ormer detainees reported credibly

HABEAS CORPUS PETITION

that officials used electric shocks, prolonged periods of solitary confinement, incommunicado

detention, beatings, shackles, and other forms of abuse. . . . Deaths in custody due to police use

of torture to coerce confessions from criminal suspects continued to occur.  U.S. Dept. of State,

Country Reports on Human Rights Practices—2004 (China Report) § 1(c) (2005) (available at

www.state.gov/g/drl/rls/hrrpt/2004/41640.htm).  The State Department reports particularly harsh

abuse of ethnic Uighur Muslims:

> The [Chinese] Government used the international war on terror as
> a justification for cracking down harshly on suspected Uighur
> separatists expressing peaceful political dissent and on independent
> Muslim religious leaders. . . . Uighurs were executed and
> sentenced to long prison terms during the year on charges of
> separatism. . . . In October 2003, Uighur Shaheer Ali was
> executed after being convicted of terrorism.  He had been
> repatriated forcibly from Nepal in 2002, where he had been
> interviewed by UNHCR and granted refugee status.

*Id.* at Introduction and § 5, subsection on National/Racial/Ethnic Minorities.  *See also, e.g.,*

Joshua Kurlantzik, "Unnecessary Evil: China's Muslims aren't terrorists.  So why did the Bush

administration give Beijing the green light to oppress them?," WASH. MONTHLY (Dec. 1, 2002

("More than 3,000 Uighurs have reportedly been secretly jailed since 9/11, and many have been

executed for no given reason.  Xinjiang province . . . remains the only place in China where

people are routinely put to death for purely political disagreement."); Mark Mazzetti & John

Hendren, "U.S. Quietly Exploring Alternatives to Guantanamo Bay," LOS ANGELES TIMES (June

15, 2005) ("The repatriation of nearly two dozen ethnic Uighurs from China detained at

Guantanamo Bay has been held up because of State Department concerns that the Uighurs might

be tortured or killed after being turned over to Chinese custody."); Demetri Sevastopulo,

"Cheney backs Guantanamo Bay jail amid growing unease," FINANCIAL TIMES (June 13, 2005)

("The US is holding about 550 detainees at Guantanamo, including about a dozen Uighur

Chinese whom the US has determined are no longer "enemy combatants".  The US does not

want to repatriate the Uighurs ethnic Muslims from China's Xinjiang province out of fear that

HABEAS CORPUS PETITION

DCDOCS/626024.3

they could be tortured in China. But the Bush administration is having trouble persuading other countries to take the Uighurs.").

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

## (COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL DEPRIVATION OF LIBERTY)

45.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

46.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate common-law principles of due process as well as the Due Process Clause of the Fifth Amendment to the Constitution of the United States. President Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals, without due process of law, and the remaining Respondents have implemented those orders. Respondents' actions deny Petitioners the process accorded to persons seized and detained by the armed forces of the United States in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice ("UCMJ"), Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

47.    To the extent that Petitioners' detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment of the Constitution of the United States on its face and as applied to Petitioners.

HABEAS CORPUS PETITION

DCDOCS/626024.3

48.    Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## SECOND CLAIM FOR RELIEF

### (DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES – UNLAWFUL CONDITIONS OF CONFINEMENT)

49.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

50.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate Petitioners' rights to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

51.    Accordingly, Petitioners are entitled to declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

## THIRD CLAIM FOR RELIEF

### (GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

52.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

53.    By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioners the process accorded to persons seized and detained by the armed forces of the United States in times of armed conflict, as established by specific provisions of the Third and Fourth Geneva Conventions.

HABEAS CORPUS PETITION

DCDOCS/626024.3

54.     Violations of the Geneva Conventions are direct treaty violations, violate customary international law, and give rise to an enforceable claim by Petitioners under 28 U.S.C. § 2241 (c)(3).

55.     Respondents are liable for the conduct described above insofar as they set the conditions at Guantanamo Bay Naval Station, and directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

56.     Accordingly, Petitioners are entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## FOURTH CLAIM FOR RELIEF

### (INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW - ARBITRARY DENIAL OF DUE PROCESS)

57.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

58.     By the actions described above, Respondents have denied and continue to deny Petitioners the process due to persons seized and detained by the armed forces of the United States in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

59.     Accordingly, Petitioners are entitled to habeas corpus, declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

## FIFTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE - TORTURE)

HABEAS CORPUS PETITION

60.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

61.    On information and belief, Respondents directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon detainees in order to obtain coerced information or confessions from them, punish or intimidate them, or for other purposes. On information and belief, such abuses include, *inter alia*, that detainees have been placed in constant vulnerability to repeated interrogation and severe beatings; kept in cages with no privacy; shackled with heavy chains and irons; subjected to solitary confinement or the threat of solitary confinement for prolonged periods of time for minor rule infractions; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

62.    The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

63.    Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against detainees.

HABEAS CORPUS PETITION

64.    On information and belief, Petitioners were and continue to be subject to the same physically and psychologically abusive conditions as other detainees, and are entitled to habeas corpus, declaratory, and injunctive relief and other relief to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE - WAR CRIMES)

65.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

66.    By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of detainees constitute war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate, among others, the Fourth Geneva Convention, Common Article III of the Geneva Conventions, and Additional Protocols I and II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decision, and other authorities.

67.    As a result of Respondents' unlawful conduct, upon information and belief, detainees have been and are being forced to suffer severe physical and psychological abuse and agony.  Furthermore, upon information and belief, Petitioners were and continue to be subject to the same conditions as detainees, and therefore are entitled to declaratory and injunctive relief, and such other relief as the Court may deem appropriate.

## SEVENTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE - CRUEL, INHUMAN OR DEGRADING TREATMENT)

DCDOCS/626024.3

68.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

69.    Upon information and belief, the acts described herein intentionally and grossly humiliated and debased detainees, forced them to act against their respective wills and consciences, filled them with fear and anguish, and broke them physically and/or morally.

70.    The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

71.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of detainees.

72.    Upon information and belief, Petitioners were and continue to be subject to the same severe physical and psychological abuse and agony, and are entitled to declaratory and injunctive relief, as well as other relief to be determined at trial.

### EIGHTH CLAIM FOR RELIEF

#### (ALIEN TORT STATUTE -
#### ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

73.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

74.    The acts described herein constitute arbitrary arrest and detention of detainees in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts

HABEAS CORPUS PETITION

DCDOCS/626024.3

violate customary international law prohibiting arbitrary detention as reflected, expressed, and

defined in multilateral treaties and other international instruments, international and domestic

judicial decisions, and other authorities.

75.    Respondents are liable for said conduct in that they directed, ordered, confirmed,

ratified, and/or conspired together and with others to bring about the arbitrary arrest and

prolonged arbitrary detention of detainees in violation of the law of nations under the Alien Tort

Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting

arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in

multilateral treaties and other international instruments, international and domestic judicial

decisions, and other authorities.

76.    As a result of Respondents' unlawful conduct, detainees, upon information and

belief, have been and are being deprived of their freedom, separated from their families, and

forced to suffer severe physical and mental abuse.  Furthermore, Petitioners, upon information

and belief, are subject to the same conditions, and therefore are entitled to habeas corpus,

declaratory, and injunctive relief, and such other relief as the Court may deem appropriate.

## NINTH CLAIM FOR RELIEF

## (ALIEN TORT STATUTE - ENFORCED DISAPPEARANCE)

77.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully

herein.

78.    By the actions described above, Respondents directed, ordered, confirmed,

ratified, and/or conspired to bring about the enforced disappearance of detainees in violation of

the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate

customary international law prohibiting enforced disappearances as reflected, expressed, and

DCDOCS/626024.3

defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

79.     As a result of Respondents' unlawful conduct, detainees have been and are being deprived of their freedom, separated from their families, and forced to suffer severe physical and mental abuse. Petitioners are subject to the same conditions, and therefore are entitled to habeas corpus, declaratory, and injunctive relief, and such other relief as the Court may deem appropriate.

<strong><u>TENTH CLAIM FOR RELIEF</u></strong>

<strong>(ARTICLE II OF THE UNITED STATES CONSTITUTION - UNLAWFUL DETENTION)</strong>

80.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

81.     The United States has not shown that Petitioners are, or were, enemy aliens, lawful or unlawful belligerents, or combatants of any kind. The executive branch lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, ___ U.S. ___124 S. Ct. 2633, 2642 n.l (2004).

82.     By the actions described above, President Bush has exceeded and continues to exceed the executive's authority under Article II of the Constitution of the United States by authorizing, ordering and directing that military officials seize detainees and transfer them to military detention, and by authorizing and ordering the continued military detention of detainees at Guantanamo Bay Naval Station. All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of detainees.

26

83.     President Bush's Executive Order authorizing the military seizure and detention of detainees by the Respondents is *ultra vires* and illegal in that it exceeds the executive's authority under Article II of the Constitution of the United States.  Accordingly, the Executive Order is void on its face, and as applied to Petitioners.

84.     To the extent that Respondents assert that their authority to detain Petitioners derives from a source other than the Executive Order, including, without limitation, the executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the United States Armed Forces, whether from Article II of the Constitution of the United States or otherwise, Respondents lack that authority as a matter of fact and law.

85.     Accordingly, Petitioners are entitled to habeas corpus, declaratory, and injunctive relief as well as any other relief the Court may deem appropriate.

## ELEVENTH CLAIM FOR RELIEF

### (APA - ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

86.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

87.     The UCMJ governs the detention of persons by the armed forces of the United States.  Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States.  *See* Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

HABEAS CORPUS PETITION

DCDOCS/626024.3

88.     By arbitrarily and capriciously detaining Petitioners in military custody, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of Army Reg. 190-8 and other provisions of the UCMJ.

89.     Respondents' violation of Army Regulation 190-8 and the UCMJ gives rise to a cause of action under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*

90.     Accordingly, Petitioners are entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## TWELFTH CLAIM FOR RELIEF

### (APA - ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS)

91.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

92.     By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioners the process accorded to persons seized and detained by the United States Military in times of armed conflict as established by the UCMJ and Army Regulation 190-8, resulting in a violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*

93.     Accordingly, Petitioners are entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the Court many deem appropriate.

DCDOCS/626024.3

## THIRTEENTH CLAIM FOR RELIEF

## (APA - TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT)

94.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

95.     By the actions described above, Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject detainees to torture and/or cruel, inhuman or degrading treatment in violation of the UCMJ and Army Regulation 190-8, thereby violating the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* Upon information and belief, Petitioners are subject to the same conditions.

96.     Accordingly, Petitioners are entitled to declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

## FOURTEENTH CLAIM FOR RELIEF

## (DUE PROCESS CLAUSE - RENDITION)

97.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

98.     Upon information and belief, Petitioners are at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of Petitioners to a country that creates a foreseeable and direct risk that they will be subjected to torture constitutes a violation of Petitioners' rights under the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

99.     Accordingly, Petitioners are entitled to declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

HABEAS CORPUS PETITION

DCDOCS/626024.3

## FIFTEENTH CLAIM FOR RELIEF

### (CONVENTION AGAINST TORTURE, CONVENTION RELATING TO THE STATUS OF REFUGEES AND GENEVA CONVENTION - RENDITION)

100.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

101.    Upon information and belief, Petitioners are at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of Petitioners to a country that creates a foreseeable and direct risk that they will be subjected to torture constitutes a direct violation of Petitioners' rights under the Third and Fourth Geneva Conventions, the Covenant Against Torture and the 1954 Convention Relating to the Status of Refugees, 189 U.N.T.S. 150 (entered into force Apr. 22, 1954).

102.    Accordingly, Petitioners are entitled to declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

## SIXTEENTH CLAIM FOR RELIEF

### (HABEAS CORPUS AND ALIEN TORT STATUTES - RENDITION)

103.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

104.    Upon information and belief, Petitioners are at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of Petitioners to a country that creates a foreseeable and direct risk that they will be subjected to torture constitutes a violation of Petitioners' rights under 28 U.S.C. §§ 2241 and 2242, and under customary international law which may be vindicated under the Alien Tort Statute, 28 U.S.C. § 1350.

HABEAS CORPUS PETITION

DCDOCS/626024.3

105.    Accordingly, Petitioners are entitled to declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

## SEVENTEENTH CLAIM FOR RELIEF

(DECLARATORY JUDGMENT ACT - DECLARATORY JUDGMENT)

106.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

107.    Pursuant to 28 U.S.C. § 2201, this case presents an actual controversy as to which it is necessary that the Court declare the rights, obligations, and other legal relations of the parties.

108.    Petitioners are entitled to a declaration that the Executive Order of November 13, 2001, is *ultra vires* and unlawful as applied to Petitioners.

109.    Petitioners are also entitled to a declaration that the prolonged, indefinite, and restrictive detention of Petitioners is without due process of law.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners pray for relief as follows:

1.    Grant the Writ of Habeas Corpus and order Respondents to release Petitioners from their current unlawful detention;

2.    Order that Petitioners be brought before the Court to vindicate their rights;

3.    Order that Petitioners cannot be transferred to any other country without the knowing consent and written agreement of Petitioners (obtained voluntarily and without duress) and Petitioners' counsel while this action is pending;

HABEAS CORPUS PETITION

4.      Order that Petitioners cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that Petitioners will be subject to torture;

5.      Order Respondents to allow counsel to meet and confer with Petitioners in private and unmonitored attorney-client conversations;

6.      Order Respondents to cease all interrogations of Petitioners, direct or indirect, while this litigation is pending;

7.      Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioners;

8.      Order and declare the Executive Order of November 13, 2001, *ultra vires* and unlawful as applied to Petitioners;

9.      Order and declare that the prolonged, indefinite, and restrictive detention of Petitioners without due process is arbitrary and unlawful and a deprivation of liberty without due process; and

10.     Grant such other relief as the Court may deem necessary and appropriate to protect Petitioners' rights under the common law, the Constitution of the United States, federal statutory law, international law and the treaties to which the United States is a party.

DCDOCS/626024.3

Dated:  July 29, 2005

Of Counsel:

    Barbara Olshansky
    Deputy Director
    CENTER FOR CONSTITUTIONAL
    RIGHTS
    666 Broadway, 7th Floor
    New York, NY 10012
    Telephone:    (212) 614-6439

Sabin Willett
Neil McGaraghan
Jason S. Pinney
Daniel Hunter Keil
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA  02110-1726
Telephone:    (617) 951-8000
Facsimile:    (617) 951-8925

Susan Baker Manning
Hope M. Jarkowski
BINGHAM McCUTCHEN LLP
1120 20th Street NW, Suite 800
Washington, DC  20036-3406
Telephone:    (202) 778-6150
Facsimile:    (202) 778-6155

David A. Peters
BINGHAM McCUTCHEN LLP
One State Street
Hartford, CT 06103
Telephone:    (860) 240-2700
Facsimile:    (860) 240-2800

HABEAS CORPUS PETITION

DCDOCS/626024.3



# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMAL KIYEMBA, as Next Friend of
ABDUSABUR DOE, ABDUSAMAD DOE,
ABDUNASIR DOE, HAMMAD DOE, HUDHAIFA
DOE, JALAAL DOE, KHALID DOE, SAABIR DOE,
and SAADIQ DOE,

      Detainees,
      Guantánamo Bay Naval Station,
      Guantánamo Bay, Cuba;

and

ABDUSABUR DOE, ABDUSAMAD DOE,
ABDUNASIR DOE, HAMMAD DOE, HUDHAIFA
DOE, JALAAL DOE, KHALID DOE, SAABIR DOE,
and SAADIQ DOE,

      Petitioners/Plaintiffs,

      v.

GEORGE W. BUSH
      President of the United States
      The White House
      1600 Pennsylvania Avenue, N.W.
      Washington, D.C. 20500

DONALD RUMSFELD
      Secretary, United States
      Department of Defense
      1000 Defense Pentagon
      Washington, D.C. 20301-1000

ARMY BRIG. GEN. JAY HOOD
      Commander, Joint Task Force - GTMO
      JTF-GTMO
      APO AE 09360;  and

ARMY COL. MIKE BUMGARNER
      Commander, Joint Detention
      Operations Group, JTF - GTMO
      JTF-GTMO
      APO AE 09360

      Respondents/Defendants.

Case No.

Judge:

Deck Type: Habeas Corpus/2255

Date Stamp:

**CERTIFICATION OF
REPRESENTATION WITHOUT
COMPENSATION**

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Pursuant to Local Civil Rule 83.2(g), counsel for Petitioners Abdusabur Doe, Abdusamad

Doe, Abdunasir Doe, Hammad Doe, Hudhaifa Doe, Jalaal Doe, Khalid Doe, Saabir Doe and

Saadiq Doe, and for Jamal Kiyemba, next friend of the aforementioned Petitioners, certify that

they are representing Petitioners without compensation.


Dated:  June 29, 2005

Of Counsel:

Barbara Olshansky
Deputy Director
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone:    (212) 614-6439

Sabin Willett
Neil McGaraghan
Jason S. Pinney
Daniel Hunter Keil
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA  02110-1726
Telephone:    (617) 951-8000
Facsimile:    (617) 951-8925

Susan Baker Manning
Hope M. Jarkowski
BINGHAM McCUTCHEN LLP
1120 20th Street NW, Suite 800
Washington, DC  20036-3406
Telephone:    (202) 778-6150
Facsimile:    (202) 778-6155

David A. Peters
BINGHAM McCUTCHEN LLP
One State Street
Hartford, CT 06103
Telephone:    (860) 240-2700
Facsimile:    (860) 240-2800

DCDOCS/626025.2