UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JAMAL KIYEMBA, as Next Friend of ABDUSABUR DOE, *et al.*, <br><br> Petitioners/Plaintiffs, <br><br> v. <br><br> GEORGE W. BUSH, *et al.*, <br><br> Respondents/Defendants. | Case No. 1:05-cv-01509-RMU |

**PETITIONERS' MOTION FOR ORDER TO SHOW CAUSE AND FOR ENTRY OF PROTECTIVE ORDER**

Petitioners Abdusabur Doe, Abdusamad Doe, Abdunasir Doe, Hammad Doe, Hudhaifa Doe, Jalaal Doe, Khalid Doe, Saabir Doe, and Saadiq Doe (hereinafter "Petitioners"), acting on their own behalf and through their Next Friend, Jamal Kiyemba, respectfully request that the Court (A) issue an Order to Show Cause why the writ of *habeas corpus* should not be granted, returnable by Respondents in three (3) days, and (B) enter three orders in this case originally entered in *In re Guantanamo Detainee Cases*: the November 8, 2004 Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba; the November 10, 2004 Order Addressing Designation Procedures for "Protected Information"; and the December 13, 2004 Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order.

## BACKGROUND

Petitioners are prisoners at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"), where they have been imprisoned by the United States for more than three

years. During this time, they have been held virtually *incommunicado* and without access to counsel. On July 29, 2005, undersigned counsel filed a Petition for Writs of Habeas Corpus ("Petition") on behalf of Petitioners pursuant to 28 U.S.C. §§ 2241 and 2242, charging that Petitioners are being detained in violation of the Constitution, laws and treaties of the United States, and in violation of international law.

All nine Petitioners are believed to be Uighurs ("WEE-ghurs"), a Turkic Muslim minority group living in western China that has been brutally oppressed by the communist Chinese government. According to public reports, the United States is currently incarcerating approximately twenty-two Uighurs at Guantánamo. *Devastating Blows, Religious Repression of Uighurs in Xinjiang*, 17 HUMAN RIGHTS WATCH 2, § II, at 22-23 (2005) (attached at Ex. 1). Many of these men—according to press reports, a dozen or more—have been determined by the government not to be "enemy combatants,"[1] and not to be a threat to the security of the United States. *See* Interview with Gordon England, Secretary of the Navy, in Washington, D.C., at 3 (Mar. 29, 2005) ("I think it has been reported we have Uighurs from China that we have not returned to China, even though, you know, some of those have been deemed, even before these hearings, to be non-enemy combatants because of concerns and issues about returning them to their country.") (hereinafter "England Interview") (attached at Ex. 3); Demetri Sevastopulo, *Cheney backs Guantanamo Bay jail amid growing unease*, FIN. TIMES, June 14, 2005 ("The US is holding about 550 detainees at Guantanamo, including about a dozen Uighur Chinese whom

---

[1] The government defines an "enemy combatant" as "an individual who was part of or supporting the Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the United States or its coalition partners." Paul Wolfowitz, Deputy Secretary of Defense, Memorandum for the Secretary of the Navy, Order Establishing Combatant Status Review Tribunal (July 7, 2004) (hereinafter "Wolfowitz Order") (attached at Ex. 2).

the US has determined are no longer 'enemy combatants.'") (attached at Ex. 4).

There is substantial reason to believe that Respondents have already determined—possibly months or even years ago—that one or more Petitioners are not "enemy combatants" and should be released. *See, e.g.*, England Interview at 3 (acknowledging that several of the Uighur detainees had been deemed non enemy combatants "even before the[ government] hearings"); Interview with Colin Powell, Secretary of State, in Washington, D.C., at 5 (Aug. 12, 2004) ("[T]he Uighurs are a difficult problem and we are trying to resolve all issues with respect to all detainees at Guantanamo. The Uighurs are not going back to China, but finding places for them is not a simple matter, but we are trying to find places for them. And we are trying to find places for them, and, of course, all candidate countries are being looked at.") (attached at Ex. 5); *U.S.: Don't Send Detainees Back to China*, HUMAN RIGHTS NEWS (Human Rights Watch, New York, N.Y.) Nov. 26, 2003 (attached at Ex. 6) ("The United States apparently is considering sending the Uighurs to China because it believes they do not constitute a threat to the United States and presumably have committed no crimes."). In light of this concern, Petitioners' counsel has questioned Respondents as to whether the Petitioners have been determined not to be "enemy combatants," or no longer a threat to the United States. *See* E-mail from Sabin Willett to Terry Henry (Aug. 4, 2005) (attached at Ex. 7). To date, the government has not responded to this request.

Just last month, however, the government admitted to keeping at least two Uighurs imprisoned at Guantánamo well after the detainees had been cleared by the government's own Combatant Status Review Tribunals ("CSRT").[2] *See Qassim, et al. v. Bush, et al.* (Civ. No. 05-

---

[2] Since July 2004, the government has conducted CSRT hearings to review the status of each person incarcerated at Guantánamo. *See generally* Wolfowitz Order; *see also* Gordan England, Secretary of the

(Footnote Continued on Next Page.)

3

497 (JR)) (hereinafter "*Qassim*"), Resp'ts' Mem. in Opp'n to Pet'rs' Mot. to Vacate Stay Order and Issue Writ Directing Immediate Release of Pet'rs at 1 ("It is correctly noted in petitioners' motion that [CSRTs] have recently determined that petitioners are no longer classified as enemy combatants.") (attached as Ex. 9). Thus, despite the fact that the petitioners in *Qassim* had been judged to not be "enemy combatants," the government continues to hold them indefinitely without any promise of timely release. *See Qassim*, Tr. of Mot. Hr'g before the Honorable James Robertson at 20-22 (attached as Ex. 10).

Furthermore, in *Qassim*, the government knowingly failed to inform the Court or petitioners' counsel that their clients had been cleared by the CSRTs despite repeated requests by counsel as to their clients' status. *See Qassim* Memo. in Support of Pet'rs' Emergency Mot. to Vacate Stay Order and Issue Writ Directing Immediate Release of Pet'rs at 1-2 (hereinafter "*Qassim* Motion") and accompanying Decl. by Sabin Willett (attached as Ex. 11). Moreover, even after the *Qassim* petitioners' CSRT proceedings had been concluded, the government continued to intimate to this Court that the petitioners were "enemy combatants." *See Qassim* Motion at 3. In fact, petitioners' counsel in *Qassim* only learned that their clients had been cleared by the CSRTs while visiting them in Guantánamo. *See id.* at 6. To date, the government still refuses to provide petitioners' counsel in *Qassim* with copies of their clients' CSRT reports.

The government's conduct in *Qassim* demonstrates why it is so critical to require the Respondents to show cause in the present case. Like the detainees in *Qassim*, petitioners are believed to be Uighurs. As discussed above, many Uighurs were apparently cleared by the

---

(Footnote Continued from Previous Page.)

Navy, Memorandum for Distribution for Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants detained at Guantanamo Naval Base, Cuba (July 29, 2004) (attached at Ex. 8).

CSRTs months if not years ago. Absent an Order to Show Cause, the government could continue to imprison the Petitioners indefinitely without disclosing to the Court that it has itself determined that it has no lawful basis to imprison them.

## DISCUSSION

### A. <u>Order to Show Cause</u>

Pursuant to 28 U.S.C. § 2243, a court "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." The writ or order to show cause "*shall be returned within three days* unless for good cause additional time, not exceeding twenty days, is allowed." 28 U.S.C. § 2243 (emphasis added).

The United States Supreme Court has affirmed that Petitioners are entitled to challenge their incarceration via an application for the Great Writ. *Rasul v. United States*, 124 S. Ct. 2686, 2699 (2004) (upholding the jurisdiction of federal courts "to determine the legality of the Executive's potentially indefinite detention of individuals who claim to be wholly innocent of wrongdoing"). Indeed, the *Rasul* Court could not have been plainer in its mandate that this Court hold a hearing. The Court (1) observed that "Petitioners' allegations . . . unquestionably describe custody in violation of the Constitution or laws or treaties of the United States," *id.* at 2698 n.15, (2) held that 28 U.S.C. § 2241 confers on the district court jurisdiction to "hear petitioners' habeas corpus challenges to the legality of their detention at the Guantanamo Bay Naval Base," *id.*, (3) directed the government to "make [its] response to the merits of petitioners' claims," *id.* at 2689, and (4) "remand[ed] for the district court to consider in the first instance the merits of the Petitioners' Claims." *Id.*

These words are plain. The government is to respond, and the district court is to hear the

case. Thus, *Rasul* supports entry of an Order to Show Cause in this instance so that the District Court can finally begin to do what the Supreme Court instructed more than a year ago: direct the government to make a response and address the merits of the case. There is no reason for further delay—certainly not when the government has a record of obfuscating the truth, and knowingly continuing to imprison men who have been exonerated by its own military tribunal. And while *habeas* claims should always receive "a swift, flexible, and summary determination," *Preiser v. Rodriguez*, 411 U.S. 475, 495 (1973), the facts of this case require an especially expeditious adjudication as there is a strong likelihood that one or more of the Petitioners has been cleared by the government, and yet continues to be held *incommunicado* with no immediate prospect of release.

### B. Amended Protective Order and Order Addressing Designation Procedures

On November 8, 2004, in *In re Guantanamo Detainees Cases*, United States District Court Senior Judge Joyce Hens Green entered an Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantánamo Bay, Cuba (hereinafter "Amended Protective Order") (attached at Ex. 12). This protective order was designed to protect the legitimate security concerns of the government, and establish procedures that must be followed by all *habeas* counsel. *See* Amended Protective Order at 1-2. On November 10, 2004, Judge Green also entered an Order Addressing Designation Procedures for "Protected Information" (attached at Ex. 13), and on December 13, 2004, Judge Green issued an Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order (attached at Ex. 14).

The entry of these Orders in the present case will serve to protect the government's legitimate interest in protecting sensitive information from public dissemination, and also to

ensure that the Petitioners have guidelines to follow in communicating with their clients. On information and belief, Judge Green's Orders have been entered in every longstanding Guantánamo *habeas* case pending in the United States District Court for the District of Columbia, and the parties agree that the Orders should be entered in this case. *See* E-Mail from Andrew Warden to Jason Pinney (Aug. 11, 2005) (attached at Ex. 15).[3]

## CONCLUSION

WHEREFORE, for the above-stated reasons and for any other reason that may become known to the Court, Petitioners respectfully request that the Writ or an Order to Show Cause be issued, returnable by Respondents in three (3) days, and that the Court enter Judge Green's Orders as agreed to by the parties.

---

[3] Petitioners reserve their right to seek appropriate relief from the Orders, including regular telephone contact, in the event it is revealed that they are not "enemy combatants."

Dated: August 17, 2005

Of Counsel:

Barbara Olshansky
Deputy Director
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone:   (212) 614-6439

_____
Sabin Willett
Neil McGaraghan
Jason S. Pinney
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA  02110-1726
Telephone:   (617) 951-8000
Facsimile:   (617) 951-8925

Susan Baker Manning
Hope M. Jarkowski
BINGHAM McCUTCHEN LLP
1120 20th Street NW, Suite 800
Washington, DC  20036-3406
Telephone:   (202) 778-6150
Facsimile:   (202) 778-6155

David A. Peters
BINGHAM McCUTCHEN LLP
One State Street
Hartford, CT 06103
Telephone:   (860) 240-2700
Facsimile:   (860) 240-2800