IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                    )
JAMAL KIYEMBA, et al.,              )
                                    )
          Petitioners,              )
                                    )
     v.                             )          Civil Action No. 05-CV-01509 (RMU)
                                    )
GEORGE W. BUSH,                     )
     President of the United States,)
     et al.,                        )
                                    )
          Respondents.              )
_____     )
```

**RESPONDENTS' MOTION FOR ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED FOR LACK OF PROPER "NEXT FRIEND" STANDING OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS PENDING RELATED APPEALS AND FOR CONTINUED COORDINATION, AND MEMORANDUM IN OPPOSITION TO PETITIONERS' MOTION FOR ORDER TO SHOW CAUSE**

Respondents hereby respectfully request that the Court order petitioners to show cause why the above-captioned petition for writ of habeas corpus, not directly authorized by the detainees at Guantanamo Bay for whom habeas relief is sought, but instead brought by another detainee claiming to act as their "next friend," who does not even know their full names, should not be dismissed for lack of proper next friend standing. The putative "next friend," detainee Jamal Kiyemba, bears the burden of establishing his next friend status and justifying the exercise of the court's jurisdiction over this action. See Whitmore v. Arkansas, 495 U.S. 149, 163 (1990) ("'[N]ext friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another."). To do so, he must satisfy the "two firmly rooted prerequisites" articulated by the Supreme Court in Whitmore: (1) he must demonstrate that the detainees on whose behalf he claims to file a petition for writ of habeas corpus cannot challenge the legality of

their detention themselves; and (2) he must have a significant relationship with each of these detainees in order to demonstrate that he is truly dedicated to each detainee's best interests. Id. at 163-64. The petition in this case fails to meet either requirement. If petitioners are unable to demonstrate that the petition was filed by a legitimate next friend, the Court cannot exercise jurisdiction over the petition, and the case must be dismissed for lack of standing.[1]

If the above-captioned case is not dismissed for lack of proper next friend standing, the case nonetheless should be stayed pending resolution of all appeals in Khalid v. Bush, Boumediene v. Bush, Nos. 04-CV-1142 (RJL), 04-CV-1166 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), appeals docketed, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005), and In re Guantanamo Detainee Cases, No. 02-CV-0299, et al., 355 F. Supp. 2d 443 (D.D.C. 2005), appeal on petition for interlocutory appeal, No. 05-5064 (D.C. Cir. Mar. 10, 2005). Respondents also hereby oppose petitioners' motion for order to show cause, in which petitioners request that the Court order respondents to submit factual returns pertaining to petitioners in three days.[2] The pending

---

[1] The issue of next friend standing was raised sua sponte by Judge Roberts in Ahmed v. Bush, No. 05-CV-0665 (RWR), another Guantanamo Bay detainee case. Based on an observation that the petition presented scant facts demonstrating that the Whitmore requirements were satisfied, Judge Roberts ordered petitioners to file a memorandum and supporting materials tending to demonstrate that the detainee who purported to act as next friend in that case should be granted next friend standing. See Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12). Petitioners filed a memorandum in response to the Court's Order, in an attempt to demonstrate that both prongs of the Whitmore test were satisfied. See Ahmed v. Bush, No. 05-CV-0665 (RWR) (dkt. no. 13). Although respondents filed a response to petitioners' memorandum indicating that they took no position on petitioners' memorandum at that time, see Ahmed v. Bush, No. 05-CV-0665 (RWR) (dkt. no. 14), and the Court in that case did not issue any subsequent ruling on the issue, respondents now seek to challenge next friend standing in this recently-filed Guantanamo Bay detainee case in which the appropriate next friend standing requirements have not been satisfied.

[2] In seeking a stay to the extent that Jamal Kiyemba is determined to be a legitimate next friend, however, respondents do not intend thereby to block counsel access to properly

- 2 -

appeals will address the core issues in this case and, thus, determine how this case should

proceed, and whether factual returns should be required, if at all.  It makes no sense for this case

to proceed in any substantive fashion prior to resolution of the appeals; further proceedings

would require the expenditure of significant judicial and other resources that may be avoided as a

result of the appeals, and, in any event, such proceedings very likely would have to be revisited

or relitigated once the appeals are decided and the Court of Appeals provides guidance regarding

handling of the claims in all of the Guantanamo detainee cases.

## ARGUMENT

**I.      Petitioners Should Establish Proper "Next Friend" Standing or the Above-Captioned Case Should be Dismissed.**

It is well-established that "before a federal court can consider the merits of a legal claim,

the person seeking to invoke the jurisdiction of the court must establish the requisite standing to

sue" under Article III of the Constitution.  Whitmore, 495 U.S. at 154.  The standing doctrine

"ensure[s] that the plaintiff has a sufficient personal stake in the outcome of a dispute to render

judicial resolution of it appropriate in a society that takes seriously both the idea of separation of

powers and, more fundamentally, the system of democratic self-government that such separation

serves."  Hamdi v. Rumsfeld, 294 F.3d 598, 602-03 (4th Cir. 2002) (citation and internal

---

represented petitioners.  To that end, if proper next friend standing is found, respondents would
not object to entry of the protective order previously entered in other Guantanamo detainee cases,
along with appropriate supplementary orders, to permit such access.  See Petitioner's Motion for
Order to Show Cause and for Entry of Protective Order, Exs. 12-14.  Respondents' lack of
objection to entry of these orders in a properly filed case, however, is without prejudice to their
right to challenge any particular terms of these orders in any future proceedings as appropriate.

quotations omitted).[3]  "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  A habeas petitioner has proper standing only if the petition is "signed and verified by the person for whose relief it is intended or by someone acting in his behalf."  28 U.S.C. § 2242.  If a petition is brought by someone acting on behalf of the person for whose relief the petition is intended, this "next friend" does not become a party to the action, but "simply pursues the cause on behalf of the detained person, who remains the real party in interest."  Whitmore, 495 U.S. at 163.

Next friend standing is not automatically granted to anyone who seeks to pursue an action on behalf of another person, however.  See id.  Rather, consistent with the constitutional limits established by Article III, a litigant who asserts next friend standing bears the burden of satisfying the "two firmly rooted prerequisites" for next friend status articulated by the Supreme Court in Whitmore:

> First, a "next friend" must provide an adequate explanation — such as inaccessibility, mental incompetence, or other disability — why the real party in interest cannot appear on his own behalf to prosecute the action.  Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a "next

---

[3]  The cited 2002 decision of the Fourth Circuit in Hamdi ordered dismissal of a habeas case that a public defender and private citizen brought as purported next friends of Hamdi despite having no relationship with him.  That deficiency was cured when Hamdi's father filed a legitimate next-friend petition bearing the same style, which eventually culminated in the 2004 decision of the Supreme Court in Hamdi v. Rumsfeld, 124 S. Ct. 2633 (2004).  See Hamdi, 294 F.3d at 600 n.1, 606-07 & n.4; see also Hamdi, 124 S. Ct. at 2636.  Of course, neither the fact that the defect was cured, nor the Supreme Court's ultimate decision in the properly filed habeas case, undermines or casts doubt on the Fourth Circuit's holdings concerning next-friend standing in the defective case brought by the public defender and private citizen.

friend" must have some significant relationship with the real party
in interest.

Id. at 163-64 (internal citations omitted).

The petition in this case does not meet either prong of the Whitmore test.  First,

petitioners have failed to demonstrate that the detainees for whom habeas relief is sought cannot

submit petitions on their own behalf.  As explained in the Declaration of Frank Sweigart, the

Department of Defense ("DoD") has notified each detainee at Guantanamo Bay of his right to file

a petition for habeas corpus, and has provided each detainee with the address of the United States

District Court in the event that he desires to submit his own petition to the Court.[4]  See Sweigart

Declaration, ¶¶ 3-5 (attached hereto as Exhibit A).  As a result of these notifications, 55 pro se

petitions for writ of habeas corpus have already been filed with the Court,[5] and at least 18

---

[4]  Detainees are afforded the opportunity regularly to send and receive mail through the
mail system administered by DoD and through the International Committee for the Red Cross.
Detainees are supplied pens, paper and envelopes regularly, and mail privileges cannot be
revoked.  See Sweigart Declaration, Ex. D.

[5]  See Khiali-Gul v. Bush, No. 05-CV-0877 (JR); Rahmattulah v. Bush, No. 05-CV-0878
(CKK); Mohammad v. Bush, No. 05-CV-0879 (RBW); Nasrat v. Bush, No. 05-CV-0880 (ESH);
Slahi v. Bush, No. 05-CV-0881 (JR); Rahman v. Bush, No. 05-CV-0882 (GK); Bostan v. Bush,
No. 05-CV-0883 (RBW); Muhibullah v. Bush, No. 05-CV-0884 (RMC); Mohammad v. Bush,
No. 05-CV-0885 (GK); Wahab v. Bush, No. 05-CV-0886 (EGS); Chaman v. Bush, No. 05-CV-
0887 (RWR); Gul v. Bush, No. 05-CV-0888 (CKK); Basardh v. Bush, No. 05-CV-0889 (ESH);
Khan v. Bush, No. 05-CV-0890 (RMC); Nasrullah v. Bush, No. 05-CV-0891 (RBW); Shaaban v.
Bush, No. 05-CV-0892 (CKK); Sohail v. Bush, No. 05-CV-0993 (RMU); Tohirjanovich v. Bush,
No. 05-CV-0994 (JDB); Slahi v. Bush, No. 05-CV-0995 (JR); Mohammad v. Bush, No. 05-CV-
0996 (JR); Khudaidad v. Bush, No. 05-CV-0997 (PLF); Al Karim v. Bush, No. 05-CV-0998
(RMU); Al-Khalaqi v. Bush, No. 05-CV-0999 (RBW); Sarajuddin v. Bush, No. 05-CV-1000
(PLF); Kahn v. Bush, No. 05-CV-1001 (ESH); Mohammed v. Bush, No. 05-CV-1002 (EGS);
Mangut v. Bush, No. 05-CV-1008 (JDB); Hamad v. Bush, No. 05-CV-1009 (JDB); Khan v.
Bush, No. 05-CV-1010 (RJL); Zuhoor v. Bush, No. 05-CV-1011 (JR); Ali Shah v. Bush, No. 05-
CV-1012 (ESH); Salaam v. Bush, No. 05-CV-1013 (JDB); Mammar v. Bush, No. 05-CV-1233
(RCL); Ahmed v. Bush, No. 05-CV-1234 (EGS); Baqi v. Bush, No. 05-CV-1235 (PLF);
Abdulzaher v. Bush, No. 05-CV-1236 (RWR); Aminullah v. Bush, No. 05-CV-1237 (ESH);

detainees have written directly to counsel and secured assistance in filing petitions.[6]

Furthermore, the American Bar Association ("ABA") has agreed to recruit volunteer counsel for pro se petitioners and other detainees who request the assistance of counsel in filing a petition for writ of habeas corpus.  See Sweigart Declaration, ¶ 7.  DoD will soon begin delivering a notification to these detainees to advise them of the ABA's offer to secure them legal representation, and to provide them with the address of the ABA if they desire such assistance. See id.  In addition, all detainees at Guantanamo Bay have the ability to send and receive mail, allowing them to contact family and friends, see Sweigart Declaration, Ex. D; supra, note 4, and they have been informed of the option of contacting friends and family to have them file habeas petitions on their behalf.

Given that all detainees have been notified of their right to submit petitions for writ of habeas corpus; that they have the ongoing opportunity to send mail to family, friends, and the

---

Ghalib v. Bush, No. 05-CV-1238 (CKK); Al Khaiy v. Bush, No. 05-CV-1239 (RJL); Altaiy v. Bush, No. 05-CV-1240 (RCL); Bukhari v. Bush, No. 05-CV-1241 (RMC); Pirzai v. Bush, No. 05-CV-1242 (RCL); Peerzai v. Bush, No. 05-CV-1243 (RCL); Alsawam v. Bush, No. 05-CV-1244 (CKK); Mohammadi v. Bush, No. 05-CV-1246 (RWR); Al Ginco v. Bush, No. 05-CV-1310 (RJL); Ullah v. Bush, No. 05-CV-1311 (RCL); Al Bihani v. Bush, No. 05-CV-1312 (RJL); Sadkhan v. Bush, No. 05-CV-1487 (RMC); Faizullah v. Bush, No. 05-CV-1489 (RMU); Faraj v. Bush, No. 05-CV-1490 (PLF); Khan v. Bush, No. 05-CV-1491 (JR); Ahmad v. Bush, No. 05-CV-1492 (RCL); Amon v. Bush, No. 05-CV-1493 (RBW); Idris v. Bush, No. 05-CV-1555 (JR).

[6]  See Al Qosi v. Bush, No. 04-CV-1937 (PLF); Abdullah v. Bush, No. 05-CV-0023 (RWR) (Rami Bin Saad Al-Oteibi); Al-Wazan v. Bush, No. 05-CV-329 (PLF); Alhami v. Bush, No. 05-CV-359 (GK); Ameziane v. Bush, No. 05-CV-392 (ESH); Qassim v. Bush, No. 05-CV-497 (JR); Tumani v. Bush, No. 05-CV-0526 (RMU); Mokit v. Bush, No. 05-CV-0621 (PLF); Battayav v. Bush, No. 05-CV-0714 (RBW); Hamoodah v. Bush, No. 05-CV-0795 (RJL); Mousovi v. Bush, No. 05-CV-1124 (RMC) (Abdul Razak Iktiar Mohammed); Faraj v. Bush, No. 05-CV-1590 (JDB) (case voluntarily dismissed because of earlier-filed pro se case submitted by petitioner); Zahir v. Bush, No. 05-CV-1623 (CKK); El-Marqodi v. Bush, No. 05-CV-1649 (PLF); Khandan v. Bush, No. 05-CV-1697 (PLF).

Court; and that the ABA has agreed to offer the detainees assistance in securing legal representation, it cannot simply be assumed that the detainees seeking habeas relief in this case cannot file petitions on their own behalf. The petition in this case, however, does just that. <u>See</u> Petition, ¶ 5 ("Because Petitioners Abdusabur Doe, Abdusamad Doe, Abdunasir Doe, Hammad Doe, Hudhaifa Doe, Jalaal Doe, Khalid Doe, Saabir Doe, and Saadiq Doe have been denied access to legal counsel and to the courts of the United States, Mr. Kiyemba acts as their Next Friend."). <u>See also</u> <u>Ahmed v. Bush</u>, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12) ("The petition presumes, rather than demonstrates through facts, that Ahmed has been denied access to the courts of the United States. . . . In light of the fact that several <u>pro se</u> petitions have been filed recently by Guantanamo Bay detainees, Ahmed's lack of access to this court cannot be presumed, but must be established."). Absent evidence that the detainees on whose behalf this case is filed cannot submit petitions on their own behalf, petitioners cannot demonstrate proper next friend standing, and the Court cannot exercise jurisdiction over the petition in the above-captioned case. <u>See</u> <u>FW/PBS, Inc. v. City of Dallas</u>, 493 U.S. 215, 231 (1990) ("It is a long-settled principle that standing cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record.'") (citations omitted).

The purported "next friend" in this case has also failed to satisfy the second requirement of the <u>Whitmore</u> test — he has not established that he has a "significant relationship" with each detainee such that he is "truly dedicated to the[ir] best interests." <u>See</u> <u>Whitmore</u>, 495 U.S. at

163-64.[7]  The requirement of a "significant relationship" with the real party in interest is

necessary to ensure that a next friend will genuinely pursue the interests of the person in custody

(who at all times remains the real party in interest) and will not (1) merely use the litigation as a

vehicle for advancing his own agenda or (2) assume he or she is in tune with the real party's

desires and interests.  See id. at 164 (cautioning against "intruders or uninvited meddlers" filing

lawsuits on behalf of unwitting strangers).

---

[7]  The majority of Circuits that have been confronted with the issue have construed
Whitmore to require a "significant relationship" as part of the second prong of the test for next
friend standing.  See Hamdi v. Rumsfeld, 294 F.3d 598, 604 (4th Cir. 2002) ("Whitmore is thus
most faithfully understood as requiring a would-be next friend to have a significant relationship
with the real party in interest."); Coalition of Clergy, Lawyers, and Professors v. Bush, 310 F.3d
1153, 1162 (9th Cir. 2002) ("Combining the 'significant relationship' requirement, however,
with the 'dedicated to best interests' consideration . . . meets the concerns the Whitmore Court
addressed."); T.W. v. Brophy, 124 F.3d 893, 897 (7th Cir. 1997) ("It follows, as the Court
suggested in the Whitmore case, that not just anyone who expresses an interest in the subject
matter of a suit is eligible to be the plaintiff's next friend – that he 'must have some significant
relationship with the real party in interest'"); Amerson v. Iowa, 59 F.3d 92, 93 n.3 (8th Cir. 1995)
(under Whitmore, the "next friend has [the] burden to establish . . . that she has some "significant
relationship with [the] real party in interest"); Zettlemoyer v. Horn, 53 F.3d 24, 27 n.4 (3d Cir.
1995) (observing that "[t]he Whitmore Court also . . . suggested that the party 'must have some
significant relationship with the real party in interest'").  See also Al Odah v. Bush, 321 F.3d
1134, 1138 (D.C. Cir. 2003), rev'd on other grounds, Rasul v. Bush, 542 U.S. 466 (2004) (stating
that the family members of Guantanamo detainees who filed habeas petitions on their behalf
"demonstrated through affidavits that they are 'truly dedicated to the best interests of these
individuals,' [and] that they have a 'significant relationship' with the detainees . . .") (citing
Whitmore, 495 U.S. at 163-64).  Although the Eleventh Circuit questioned whether Whitmore
established "some significant relationship" as an independent requirement, it nevertheless noted
the importance of a relationship in demonstrating whether a putative next friend "can show true
dedication to the best interests of the person on whose behalf he seeks to litigate."  Sanchez-
Velasco v. Secretary of the Dep't of Corrections, 287 F.3d 1015, 1026-27 (11th Cir. 2002).  See
also Centobie v. Campbell, 407 F.3d 1149, 1151 (11th Cir. 2005) ("We conclude that Puzone is
not 'truly dedicated to the best interests of the person on whose behalf [s]he seeks to litigate,' and
she does not have 'some significant relationship with the party in interest.'") (citing Hauser v.
Moore, 223 F.3d 1316, 1322 (11th Cir. 2000)).

Thus, under the "significant relationship" requirement, courts have generally limited next friend standing to close relatives such as parents, siblings, and spouses. See, e.g., Vargas v. Lambert, 159 F.3d 1161, 1168 (9th Cir. 1998) (mother); Hamdi, 294 F.3d at 600 n.1 (father); Smith ex rel. Missouri Pub. Defender Comm'n v. Armontrout, 812 F.2d 1050 (8th Cir. 1987) (brother); In re Ferrens, No. 4746, 8 F. Cas. 1158, 1159 (S.D.N.Y. 1869) (wife). Attorneys who have previously represented an individual seeking habeas corpus have also been permitted to act as next friends based on that pre-existing relationship. See Sanchez-Velasco, 287 F.3d at 1026 ("'[S]ome significant relationship' does exist when the would-be next friend has served in a prior proceeding as counsel for the real party in interest and did so with his consent."). Distant relatives or simple acquaintances generally do not have a sufficient relationship to establish next friend standing, see, e.g., Davis v. Austin, 492 F. Supp. 273, 274-76 (N.D. Ga. 1980) (neither detainee's first cousin nor a minister who had counseled detainee could sue as next friend) (cited with approval in Whitmore, 495 U.S. at 164), and petitions filed by total strangers purporting to act as next friends are typically dismissed for lack of jurisdiction. See, e.g., Hamdi, 294 F.3d at 603-07 (dismissing petitions brought by a public defender and private citizen who had no relationship to the detainee).

In the above-captioned case, petitioners have not demonstrated that Jamal Kiyemba has any sort of "significant relationship" with the detainees on whose behalf he claims to seek habeas relief. Indeed, the petition in this case contains no evidence presenting the basis upon which Jamal Kiyemba claims to act as "next friend" for the detainees on whose behalf he is seeking habeas relief. See Petition. As a result, respondents requested documentation of petitioners' counsel's authorization to file this petition, and were provided with a handwritten "authorization"

- 9 -

by Mr. Kiyemba that contains mere boilerplate language stating that Mr. Kiyemba understands

what it means to act as a "next friend," and that he believes that the detainees on whose behalf he

claims to seek habeas relief wants legal representation to challenge their detention, without

stating any legitimate basis for his belief beyond the fact that he has also been detained at

Guantanamo Bay.  A list of over 30 detainees, their countries of origin, and camp locations

accompanied the handwritten "authorization"; most of these detainees are listed only by a single

name, including the detainees on whose behalf Mr. Kiyemba seeks habeas relief in this case.[8]

Since respondents could not even identify these individuals as detainees at Guantanamo Bay,

upon further consultation, counsel for petitioners agreed that Clive Stafford Smith, counsel

representing Mr. Kiyemba in his own petition for habeas relief, would attempt to gather more

information about these detainees during a visit with Mr. Kiyemba.  Mr. Smith returned from his

visit with an assortment of rough physical descriptions, possible camp locations (which change

frequently as detainees are moved regularly), and potential internee serial numbers (ISNs) for

only two detainees.  Thus, even after repeated opportunities to demonstrate the basis upon which

Jamal Kiyemba is acting as next friend to the detainees purportedly seeking habeas relief in this

case, the minimal basic biographical and personal information about the detainees that Mr.

Kiyemba has produced indicates that he does not share any meaningful relationship with these

detainees and, therefore, cannot be determined to be acting in their best interests.  See Ahmed v.

Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12) ("The petition does not

---

[8] If a detainee were able to act as next friend for another detainee simply based on the
mere fact that they are both detained at Guantanamo, detainees or prisoners could purport to
bring mass habeas corpus petitions simply by being able to list the identities of those detained
alongside them, a situation that is surely inconsistent with standing jurisprudence.  Mr.
Kiyemba's list of 30 detainees indicates he is pursuing such a course.

provide basic personal facts about Ahmed, such as his citizenship, his age, whether he is married or has a family, the place of his arrest or capture, and the places of detention, if any, prior to his being transported to Guantanamo Bay.  The absence of such facts leaves the impression that Hassen does not know even this much about Ahmed and his situation.").  Because even acquaintances cannot satisfy the requirement of a significant relationship under Whitmore, and the documentation supplied by petitioners (which was not attached to the petition in this case) indicates that Mr. Kiyemba merely knows of these detainees or, at best, is a mere acquaintance with the detainees on whose behalf he seeks habeas relief, Mr. Kiyemba has failed to demonstrate that he is "truly dedicated to the [detainees'] best interests."  Whitmore, 495 U.S. at 163.  Absent proof that evidences a significant relationship, petitioners cannot demonstrate proper next friend standing, and the Court cannot exercise jurisdiction over the petition in this case.[9]

In addition to the jurisdictional defect arising out of the lack of a significant relationship between the purported next friend and the party in interest, the phenomenon of detainees filing petitions purportedly on behalf of other detainees about whom they have little knowledge presents the practical difficulty of identifying the detainees for whom habeas relief is sought.  Given the similar names or aliases of many of the approximately 500 individuals detained at Guantanamo Bay, it is often difficult, if not impossible, to correctly identify detainees based on

---

[9]  Over 135 detainees at Guantanamo Bay have filed petitions for writ of habeas corpus through family members who arguably meet the "significant relationship" requirement.  See, e.g., Hatim v. Bush, No. 05-CV-1429 (RMU) (filed on behalf of two detainees by their siblings, Fatima Nasser Yahia Abdullah Kussrof and Ali Mohammed Saleh Al-Salahi); Rabbani v. Bush, No. 05-CV-1607 (JR) (filed on behalf of two detainees by their wives, Malika and Fouzia Ahmmed); Sadkhan v. Bush, No. 05-CV-1679 (RJL) (filed on behalf of detainee by his father, Jabbar Sadkhan Al-Sahlani).

the minimal information provided in the petitions.  Respondents are often left trying to guess at a

detainee's identity.  Indeed, respondents have yet to identify more than two dozen purported

petitioners as individuals presently detained at Guantanamo Bay, despite having requested

additional information from these petitioners' counsel.  This case is no exception; respondents

cannot identify at least two petitioners and have merely educated guesses based on limited

information as to the identities of several others.  Moreover, there have already been two

instances in which respondents incorrectly identified petitioners in the Guantanamo Bay detainee

cases; errors which, unfortunately, were not discovered until counsel visited and interviewed

these detainees at Guantanamo Bay.  Requiring petitions to be filed either through direct

authorization by the detainees on whose behalf habeas relief is sought, or through individuals

who can demonstrate a significant relationship with the detainees, would diminish the

identification issues that have plagued the parties in the Guantanamo detainee litigation thus

far.[10]

In sum, the petition in this case fails to satisfy the standing requirements articulated by the

Supreme Court in <u>Whitmore</u>.  If petitioners are unable to demonstrate that the petition was filed

by a legitimate next friend, the Court cannot exercise jurisdiction over the petition, and the case

must be dismissed for lack of standing.

---

[10]  In addition, the phenomenon of detainees purporting to act as next friends results in
counsel improperly abusing the next friend device in order merely to solicit the Guantanamo
detainee population for clients, while in the meantime seeking various forms of relief with
respect to anyone a purported next friend detainee, such as Mr. Kiyemba, can remember having
come in contact with.

II.    **If the Court Does Not Dismiss the Above-Captioned Case, It Should be Stayed Pending Resolution of the Appeals of Decisions in the Other Guantanamo Detainee Cases Adjudicating Common Issues, and Petitioners' Motion for Order to Show Cause Should Be Denied.**

If the Court finds that the petition in the above-captioned case was filed by a legitimate next friend,[11] the Court should stay proceedings in this case pending the resolution of the appeals in Khalid, Boumediene and In re Guantanamo Detainee Cases, which will determine whether and how this case should proceed.

On January 19, 2005, Judge Leon granted respondents' motion to dismiss or for judgment in its entirety, concluding that constitutional protections do not extend to aliens outside sovereign United States territory, such as petitioners, and that petitioners also have no viable claims under U.S. statutory law or international law or treaties.  See Khalid v. Bush, No. 04-CV-1142 (RJL), Boumediene v. Bush, No. 04-CV-1166 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005).  The Khalid and Boumediene cases are currently on appeal to the D.C. Circuit.  See Nos. 05-5062, 05-5063 (D.C. Cir.).

---

[11] Even if the Court finds that petitioners have established next friend standing so that the Court can exercise jurisdiction over the petitions, Mr. Kiyemba should not be permitted to serve in this capacity beyond the time when counsel are permitted to meet with the detainees for whom habeas relief is sought.  See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 8, 2004), § III.C. (permitting counsel two visits with a detainee before an authorization of representation by the detainee must be provided to respondents).  At that time, counsel should determine these detainees' wishes concerning pursuing a challenge to their detention through the habeas petitions in these cases, such that the cases can then either be converted into direct petitions or be dismissed.

On January 31, 2005, Judge Green entered an order (and memorandum opinion) in eleven

other of the pending Guantanamo Bay detainee cases[12] denying in part and granting in part

respondents' motion to dismiss or for judgment as a matter of law.  See Memorandum Opinion

Denying in Part and Granting in Part Respondents' Motion to Dismiss or for Judgment as a

Matter of Law in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al., 355 F. Supp. 2d 443

(D.D.C. 2005).  Contrary to the prior decision of Judge Leon, Judge Green, inter alia, determined

that procedural "due process" protections apply to aliens detained at Guantanamo Bay and that

the Combatant Status Review Tribunal proceedings the military has used to confirm detainees'

status as enemy combatants do not satisfy these due process requirements.  Id. at 453-78.

Further, in her decision, Judge Green agreed with the decision of Judge Robertson in Hamdan v.

Rumsfeld, 344 F. Supp. 2d 152, 165 (D.D.C. 2004), rev'd, 415 F.3d 33 (D.C. Cir. 2005), and

concluded that the Third Geneva Convention is "self-executing" and can provide petitioners with

a claim in a habeas action.[13]  355 F. Supp. 2d at 478-80.  Judge Green, however, dismissed

petitioners' remaining constitutional, statutory, international law, and treaty claims.  Id. at 480-

81.

Judge Green noted that her January 31, 2005 decision on respondents' motion to dismiss

or for judgment "technically applie[d] only to the eleven cases contained in the [opinion's]

---

[12] Hicks v. Bush, No. 02-CV-0299 (CKK); Al Odah v. United States, No. 02-CV-0828
(CKK); Habib v. Bush, No. 02-CV-1130 (CKK); Kurnaz v. Bush, No. 04-CV-1135 (ESH);
O.K. v. Bush, No. 04-CV-1136 (JDB); Begg v. Bush, No. 04-CV-1137 (RMC); El-Banna v.
Bush, No. 04-CV-1144 (RWR); Gherebi v. Bush, No. 04-CV-1164 (RBW); Anam v. Bush, No.
04-CV-1194 (HHK); Almurbati v. Bush, No. 04-CV-1227 (RBW); and Abdah v. Bush, No. 04-
CV-1254 (HHK).

[13] The D.C. Circuit held in Hamdan that the Third Geneva Convention does not give rise
to claims enforceable in court.  See Hamdan, 415 F.3d at 40.

caption," but the Court nevertheless acknowledged that the opinion "addresse[d] issues common" to eight other Guantanamo Bay detainee cases that had been filed during or after the briefing and oral argument that resulted in the Court's opinion.[14]  See id. at 452 & n.15.

On February 3, 2005, respondents filed a motion seeking certification of the January 31, 2005 order for interlocutory appeal and filed a motion to stay all the Guantanamo Bay detainee cases pending at that time, consistent with the need for these cases to proceed in a coordinated fashion.  Thus, the motion was filed as a motion for certification of order for interlocutory appeal and for a stay in the eleven cases in which the January 31, 2005 order was entered, and was filed by respondents solely as a motion to stay in the other then-pending cases.  Judge Green certified her January 31, 2005 decision on respondents' motion to dismiss or for judgment for appeal and stayed proceedings in the eleven cases in which the January 31, 2005 order was entered, "for all purposes pending resolution of all appeals."  Judge Green left the decision whether to stay cases other than the eleven to the individual judges in those cases.  See Order Granting in Part and Denying in Part Respondents' Motion for Certification of Jan. 31, 2005 Orders and for Stay in In re Guantanamo Detainee Cases (Feb. 3, 2005) (Green, J.).

Various petitioners in the eleven cases sought reconsideration of Judge Green's stay order, arguing that the Court should permit factual development and proceedings regarding detainee living conditions to go forward.  See, e.g., Petrs' Motion for Reconsideration of Order

---

[14]  Belmar v. Bush, No. 04-CV-1897 (RMC); Al-Qosi v. Bush, No. 04-CV-1937 (PLF); Paracha v. Bush, No. 04-CV-2022 (PLF); Al-Marri v. Bush, No. 04-CV-2035 (GK); Zemiri v. Bush, No. 04-CV-2046 (CKK); Deghayes v. Bush, No. 04-CV-2215 (RMC); Mustapha v. Bush, No. 05-CV-22 (JR); Abdullah v. Bush, No. 05-CV-23 (RWR).

Granting Stay Pending Appeal at 9-10 (dkt. no. 203 in <u>Al Odah</u>, No. 02-CV-0828 (CKK)).  Judge

Green, however, denied the motion for reconsideration

> in light of the substantial resources that would be expended and the
> significant burdens that would be incurred should this litigation go
> forward, and . . . [in] recognition that a reversal of the Court's
> January 31, 2005 rulings would avoid the expenditure of such
> resources and incurrence of such burdens . . . .

<u>See</u> Order Denying Motion for Reconsideration of Order Granting Stay Pending Appeal in <u>In re</u>

<u>Guantanamo Detainee Cases</u>, No. 02-CV-0299, <u>et al.</u>, 355 F. Supp. 2d 482 (D.D.C. 2005)

(Green, J.).

On February 9, 2005, pursuant to Judge Green's certification, respondents filed a petition

for interlocutory appeal of the January 31, 2005 decision with the D.C. Circuit, <u>see</u> 28 U.S.C.

§ 1292(b), and requested that the appeal proceed on an expedited basis.  Further, petitioners in

the eleven cases subject to Judge Green's decision filed a cross-petition for interlocutory appeal

with the D.C. Circuit and petitioners in <u>Al-Odah</u> appealed Judge Green's stay order.  On March

10, 2005, the D.C. Circuit accepted the interlocutory appeal.  In addition, as noted above,

petitioners in <u>Khalid</u> and <u>Boumediene</u> appealed Judge Leon's decision.  Oral argument in both

appeals is scheduled for September 8, 2005.

In light of these pending appeals, several of the cases pending at the time of Judge

Green's decision, but that Judge Green did not stay, have been stayed pending appeal.  <u>See</u>

<u>Paracha</u>, No. 04-CV-2022 (PLF) (dkt. no. 49); <u>Al Marri</u>, No. 04-CV-2035 (GK) (dkt. no. 26);

<u>Zemiri</u>, No. 04-CV-2046 (CKK) (dkt. no. 32); <u>Deghayes</u>, No. 04-CV-2215 (RMC) (dkt. no. 7);

<u>Mustapha</u>, No. 05-CV-22 (JR) (dkt no. 7); <u>Abdullah</u>, No. 05-CV-23 (RWR) (dkt. no. 16).  As

Judge Kessler stated in her stay order in <u>Al Marri</u>,

> The opinions resolving Judge Leon's and Judge Green's cases encompass and discuss many of the precise issues raised in Respondents' Motion [to Stay]. Thus, until the Court of Appeals addresses these issues, the law in this Circuit is unsettled, since Judge Green and Judge Leon reached different conclusions about many of the issues before them. Requiring this case to proceed before appellate resolution of those cases therefore would involve an unnecessary expenditure of judicial resources.

Order dated March 8, 2005 in Al-Marri, No. 04-CV-2035 (GK), at 2.

Since February 3, 2005 – the date respondents moved to stay all of the Guantanamo Bay detainee cases pending at that time – over 125 new petitions, involving approximately 200 petitioners, have been filed. Respondents have filed motions to stay proceedings in these new cases for the reasons stated herein, and several Judges of this Court have stayed proceedings in the cases pending before them.[15]

---

[15] See Al Mohammed v. Bush, No. 05-CV-0247 (HHK) (dkt. no. 18); El-Mashad v. Bush, No. 05-CV-0270 (JR) (dkt. no. 29); Al-Adahi v. Bush, No. 05-CV-0280 (GK) (dkt. no. 35); Al Joudi v. Bush, No. 05-CV-0301 (GK) (dkt. no. 26); Al-Wazan v. Bush, No. 05-CV-0329 (PLF) (dkt. no. 15); Al-Anazi v. Bush, No. 05-CV-0345 (JDB) (dkt. no. 21); Alhami v. Bush, No. 05-CV-0359 (GK) (dkt. no. 20); Ameziane v. Bush, No. 05-CV-0392 (ESH) (dkt. no. 12); Sliti v. Bush, No. 05-CV-0429 (RJL) (dkt. no. 8); M.C. v. Bush, No. 05-CV-0430 (ESH) (dkt. no. 10); Kabir v. Bush, No. 05-CV-0431 (RJL) (dkt. no. 10); Qayed v. Bush, No. 05-CV-0454 (RMU) (dkt. no. 4); Al-Shihry v. Bush, No. 05-CV-0490 (PLF) (dkt. no. 14); Aziz v. Bush, No. 05-CV-492 (JR) (dkt. no. 16); Qassim v. Bush, No. 05-CV-0497 (JR) (dkt. no. 14); Al-Oshan v. Bush, No. 05-CV-0520 (RMU) (dkt. no. 12); Tumani v. Bush, No. 05-CV-0526 (RMU) (dkt. no. 5); Al-Oshan v. Bush, No. 05-CV-0533 (RJL) (dkt. no. 6); Al Shamri v. Bush, No. 05-CV-0551 (RWR) (dkt. no. 10); Salahi v. Bush, No. 05-CV-0569 (JR) (dkt. no. 8); Mammar v. Bush, No. 05-CV-0573 (RJL) (dkt. no. 5); Al-Sharekh v. Bush, No. 05-CV-0583 (RJL) (dkt. no. 9); Magram v. Bush, No. 05-CV-0584 (CKK) (dkt. no. 9); Al Rashaidan v. Bush, No. 05-CV-0586 (RWR) (dkt. no. 10); Mokit v. Bush, No. 05-CV-0621 (PLF) (dkt. no. 13); Al Daini v. Bush, No. 05-CV-0634 (RWR) (dkt. no. 10); Ahmed v. Bush, No. 05-CV-0665 (RWR) (dkt. no. 16); Battayav v. Bush, No. 05-CV-0714 (RBW) (dkt. no. 12); Adem v. Bush, No. 05-CV-0723 (RWR) (dkt. no. 13); Hamlily v. Bush, No. 05-CV-0763 (JDB) (dkt. no. 10); Imran v. Bush, No. 05-CV-0764 (CKK) (dkt. no. 6); Al Hamamy v. Bush, No. 05-CV-0766 (RJL) (dkt. no. 6); Hamoodah v. Bush, No. 05-CV-0795 (RJL) (dkt. no. 13); Rahmattullah v. Bush, No. 05-CV-0878 (CKK) (dkt. no. 3); Nasrat v. Bush, No. 05-CV-0880 (ESH) (dkt. no. 4); Slahi v. Bush, No. 05-CV-0881 (RWR) (dkt. no. 5); Chaman v. Bush, No. 05-CV-0887 (RWR) (dkt. no. 7); Gul v.

If the Court finds that the above-captioned case has been filed by a legitimate next friend, the case should nevertheless be stayed pending the appeals of the other Guantanamo Bay detainee cases.[16] The petition raises legal issues that were squarely addressed by the opinions in In re

---

Bush, No. 05-CV-0888 (CKK) (dkt. no. 3); Basardh v. Bush, No. 05-CV-0889 (ESH) (dkt. no. 4); Shaaban v. Bush, No. 05-CV-0892 (CKK) (dkt. no. 3); Tohirjanovich v. Bush, No. 05-CV-0994 (JDB) (dkt. no. 4); Al Karim v. Bush, No. 05-CV-0998 (RMU) (dkt. no. 3); Al-Khalaqi v. Bush, No. 05-CV-0999 (RBW) (dkt. no. 3); Kahn v. Bush, No. 05-CV-1001 (ESH) (dkt. no. 3); Mangut v. Bush, No. 05-CV-1008 (JDB) (dkt. no. 2); Hamad v. Bush, No. 05-CV-1009 (JDB) (dkt. no. 4); Khan v. Bush, No. 05-CV-1010 (RJL) (dkt. no. 3); Ali Shah v. Bush, No. 05-CV-1012 (ESH) (dkt. no. 3); Salaam v. Bush, No. 05-CV-1013 (JDB) (dkt. no. 2); Al-Hela v. Bush, No. 05-CV-1048 (RMU) (dkt. no. 12); Zalita v. Bush, No. 05-CV-1220 (RMU) (dkt. no. 3); Aminullah v. Bush, No. 05-CV-1237 (ESH) (dkt. no. 3); Ghalib v. Bush, No. 05-CV-1238 (CKK) (dkt. no. 3); Alsawam v. Bush, No. 05-CV-1244 (CKK) (dkt. no. 3); Mohammed v. Bush, No. 05-CV-1347 (GK) (dkt. no. 7); Saib v. Bush, No. 05-CV-1353 (RMC) (Minute Order dated August 1, 2005); Hatim v. Bush, No. 05-CV-1429 (RMU) (dkt. no. 16); Faizullah v. Bush, No. 05-CV-1489 (RMU) (dkt. no. 3); Dhiab v. Bush, No. 05-CV-1457 (GK) (Minute Order dated August 29, 2005).

[16] The Court has the authority to stay proceedings in habeas cases, even prior to the filing of a response. Pursuant to the Rules Governing Section 2254 Cases in the United States District Courts (the "2254 Rules"), which are applicable to petitions for writ of habeas corpus other than those arising under 28 U.S.C. § 2254, such as the petitions in these cases, see 2254 Rule 1(b), a court may extend the deadline for responses to habeas petitions beyond the time limits set forth in 28 U.S.C. § 2243 — the 2254 Rules do not indicate a fixed deadline for responding to habeas petitions, and they supersede the time limits set forth in 28 U.S.C. § 2243. Rule 4 provides that "the judge must order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order. . . ." See also Bleitner v. Welborn, 15 F.3d 652, 653-54 (7th Cir. 1994) ("[T]he Rules Governing Section 2254 Cases in the United States District Courts, which have the force of a superseding statute, 28 U.S.C. § 2072(b) . . . loosened up the deadline for responses. Rule 4 leaves it up to the district court to fix the deadline."); Castillo v. Pratt, 162 F. Supp. 2d 575, 577 (N.D. Tex. 2001) (denying § 2241 petitioner's request for expedited consideration because "[t]he discretion afforded by Rule 4 of the 2254 Rules 'prevails' over the strict time limits of 28 U.S.C. § 2243"); Kramer v. Jenkins, 108 F.R.D. 429, 431 (N.D. Ill. 1985) (denying § 2241 petitioner's motion for correction of court scheduling order because "in the conflict between Rule 4 of the 2254 Rules and 28 U.S.C. § 2243, Rule 4 must prevail"). Furthermore, the 2254 Rules have provided courts with the discretion to consider the burdens involved in filing responses to habeas petitions when implementing case management schedules. See Advisory Committee Notes to 2254 Rules; see also Lonchar v. Thomas, 517 U.S. 314, 325 (1996) (stating that the 2254 Rules confer "ample discretionary authority" on district courts "to tailor the proceedings" in habeas cases). See also Landis v. North American Co., 299

Guantanamo Detainee Cases, Khalid, and Boumediene and that are raised in the appeals, including: (1) whether the petitioners have stated valid claims under the Fifth Amendment to the United States Constitution and, if so, whether the procedures implemented by respondents to determine the status of petitioners violate their Fifth Amendment rights; (2) whether the petitioners have stated valid claims under the Third Geneva Convention;[17] and (3) whether the petitioners have stated valid claims based on various other legal theories, including other Constitutional provisions, other international treaties, Military regulations, the Administrative Procedure Act, the Alien Tort Statute, and customary international law. It makes no sense for proceedings related to the merits of this case, such as the submission of factual returns in response to an order to show cause regarding the issuance of a writ of habeas corpus, to go forward when decisions from the D.C. Circuit on the related Guantanamo detainee appeals, which are proceeding in an expedited fashion, will determine the legal analyses applicable to this case and, indeed, whether and how this case should proceed.[18]

---

U.S. 248, 254-55 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); id. at 256 (noting propriety of stay in cases "of extraordinary public moment").

[17] See note 13, supra.

[18] Petitioners allege "on information and belief" that "one or more" of them has been determined not to be an enemy combatant. Petition, ¶ 4. However, of the petitioners whom respondents have been able to arguably identify as of this date, all are held as enemy combatants. In any event, the requested stay pending appeals in related cases is warranted regardless of whether any of the petitioners in this case have been determined not to be enemy combatants. Any issue of whether a petitioner possesses substantive legal rights under the Constitution, treaties, or statutes regarding his detention would be the subject of and affected by resolution of the pending appeals and is thus properly the subject of a stay, and this is true regardless of whether an individual's detention is expected to continue or respondents have already determined to release him as soon as the necessary arrangements for an appropriate destination country can

Although respondents do not object to entry of the protective order and related, supplementary orders previously entered in other Guantanamo detainee cases to enable counsel to meet and correspond with properly represented petitioners in a privileged manner at Guantanamo Bay on appropriate matters related to this case, it makes no sense for the government to process and submit factual returns[19] with respect to petitioners when the D.C. Circuit will be considering the proper scope of these habeas proceedings, including whether the claims can be dismissed without reference to specific factual returns. See Khalid, 355 F. Supp. 2d 311 (dismissing petitioners' claims in their entirety). Even if counsel had access to factual returns, they would not be able to share classified information in the returns with petitioners. See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 8, 2004), ¶ 30. Thus, there is no reason why counsel need access to factual returns at this time.[20]

Moreover, the submission of factual returns which, in any event, may ultimately be unnecessary, burdens the government's resources and risks the inadvertent disclosure of classified information. Each factual return must be obtained from the Department of Defense,

_____

be made.

[19] A factual return for a petitioner in a Guantanamo detainee case typically has consisted of the record of proceedings before the Combatant Status Review Tribunal that confirmed petitioner's status as an enemy combatant properly subject to detention. The factual return is separate from briefing on legal issues in the cases. Factual returns include both classified and unclassified material.

[20] In this vein, three Judges of this Court have declined to require factual returns during the pendency of the stay. See, e.g., El-Mashad, No. 05-CV-0270 (JR) (dkt. no. 29); Sliti v. Bush, No. 05-CV-0429 (RJL) (dkt. no. 5); Imran v. Bush, No. 05-CV-0764 (CKK) (dkt. no. 6).

and then reviewed by agencies who provided source information to DoD to ensure that

information disclosed to counsel in the returns is in accordance with all applicable statutes,

regulations and Executive Orders.  Respondents must then prepare both public and classified

versions of the factual returns for submission to the Court and counsel.  Each return can range

from dozens to hundreds of pages, depending upon the circumstances.  Thus, respondents face an

immense logistical burden to process and file the returns, especially on the short, simultaneous

schedules being requested by petitioners in the various cases.  Further, submission of these

returns vastly expands access to classified information contained in the returns, thereby

increasing the risks of inadvertent or other disclosure or compromise of the information.  These

burdens and risks, however, could be rendered completely unnecessary, depending on the

outcome of the appeals.  Cf. Order Denying Motion for Reconsideration of Order Granting Stay

Pending Appeal in In re Guantanamo Detainee Cases, 355 F. Supp. 2d 482 (staying cases so as to

avoid expenditure of "substantial resources" and imposition of "significant burdens" that might

not be necessary depending on outcome of appeal).

　　　　Although certain Judges of this Court have ordered respondents to submit factual returns

in cases that are otherwise stayed, respondents oppose the submission of a factual return in the

above-captioned case for the reasons stated herein.  If proper next friend standing if found, and if

submission of a factual return were to go forward at all, it could only be done pursuant to a

coordinated and reasonable schedule, taking account of the fact that petitioners in all the recently

filed cases are seeking factual returns and recognizing the logistical burdens posed by an

undertaking to produce returns in the cases. Given these circumstances, a schedule for the rolling

production of factual returns in this case (and potentially other cases) over the next 10 to 12

weeks would be appropriate.  In a number of other recent cases, the government has been given

between 90 and 120 days to file factual returns, and respondents request that the Court impose a

similar schedule, if the Court decides to require factual returns.  See e.g., Al-Joudi, No. 05-CV-

0301 (GK) (dkt. no. 26) (imposing 90-day schedule); Al-Wazan, No. 05-CV-0329 (PLF) (dkt.

no. 37) (imposing 90-day schedule); Al-Anazi, No. 05-CV-0345 (JDB) (dkt. no. 21) (imposing

120-day schedule); Ameziane, No. 05-CV-392 (ESH) (dkt. no. 12) (imposing 90-day schedule);

Qayed, No. 05-CV-0454 (RMU) (dkt. no. 5) (imposing 90-day schedule); Battayav, No. 05-CV-

0714 (RBW) (dkt. no. 12) (imposing 120-day schedule).

     Thus, if the petitions are not dismissed for lack of proper next friend standing, the Court

should hold all proceedings in this case in abeyance pending the outcome of the appeals of

decisions by Judges of this Court in the other Guantanamo Bay detainee cases.

## **CONCLUSION**

     For the reasons stated, the Court should order petitioners to show cause why these cases

should not be dismissed for lack of proper next friend standing.  If petitioners are able to

establish proper standing, the Court should stay further proceedings in these cases, except as

noted above, pending resolution of the appeals of Judge Leon's decision in Khalid and

Boumediene and Judge Green's January 31, 2005 decision in In re Guantanamo Detainee Cases.


Dated: August 31, 2005          Respectfully submitted,

                    PETER D. KEISLER
                    Assistant Attorney General

                    KENNETH L. WAINSTEIN
                    United States Attorney

DOUGLAS N. LETTER
Terrorism Litigation Counsel

    /s/ Preeya M. Noronha
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Room 7144
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents