UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

JAMAL KIYEMBA, as Next Friend of
ABDUSABUR DOE, *et al.*,

    Petitioners/Plaintiffs,

v.

GEORGE W. BUSH, *et al.*,

    Respondents/Defendants.

Case No. 05-CV-01509-RMU

**PETITIONERS' MOTION FOR RECONSIDERATION
OF SEPTEMBER 13, 2005 ORDER**

The Court has now stayed a case in which **the Government had already determined that there is no legal basis to imprison at least one of the Petitioners.** In so doing, we believe the Court has fallen into the same snare the Government set for Judge Robertson in a similar case (*Qassim v. Bush*, No. 05-0497) where, by obtaining a stay, the Government avoided disclosing that it had already determined that the Petitioners were not "enemy combatants."[1] Matters are even worse here, where (perhaps because of what happened in *Qassim*) by separate motion the Government is vigorously seeking to prevent counsel even from meeting with Petitioners and confirming the truth. The net result of the Government's strategy here would be to keep secret that it knowingly holds innocent men without legal basis. Accordingly, and because the issues presented herein are *not* subject to the pending appeals (which concern only those alleged to be "enemy combatants"), Petitioners respectfully request

---

[1] As we show below, "enemy combatant" status is the only basis ever advanced by the Government to justify imprisonment at Guantanamo Bay. In almost all the other habeas cases, including, on information and belief, all the other habeas cases pending before Your Honor, the Government contends that the petitioners are "enemy combatants."

that the Court reconsider its September 13, 2005 Order granting Respondents' Motion to Stay Proceedings Pending Related Appeals for Continued Coordination and denying Petitioners' Motion For Order to Show Cause.

We show below, *first,* that the Government's claim of right to imprison has always derived exclusively from an "enemy combatant" determination; *second,* that none of the pending appeals involves persons whom the Government has found not to be "enemy combatants;" *third,* that there is overwhelming evidence that the Government itself has already determined that at least one of the Petitioners, Saddiq, is not an enemy combatant; *fourth,* that there is substantial evidence suggesting that other Petitioners are similarly situated to Saddiq; and *fifth,* that as long as the stay is in place, there may be no way to determine whether the Government has already determined that the other Petitioners are not "enemy combatants."

## DISCUSSION

### A. The Government's Claim Of Authority To Imprison At Guantanamo Bay Has Always Depended On "Enemy Combatant" Status

Heretofore, the Government's only claim of right to imprison a person at Guantanamo Bay has been that the prisoner is an "enemy combatant." In brief, the Government's theory proceeds as follows:

*The AUMF.* On September 18, 2001, Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." *See* Joint Resolution 23, Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (Jan. 18, 2001) (hereinafter "AUMF").

*The Executive Order.* Respondents contend that the President acted under the authority of the AUMF when, on November 13, 2001, he issued an Executive Order (hereinafter

2

"Executive Order") authorizing the Secretary of Defense to indefinitely detain anyone President Bush has "reason to believe":

> i. is or was a member of the organization known as al Qaeda;
>
> ii. has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefore, that have caused, threatened to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or
>
> iii. has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

66 Fed. Reg. 57,833 § 2 (Nov. 13, 2001).

*The Wolfowitz Order.* On July 7, 2004 (years after the Petitioners were captured and transported to Guantanamo), Deputy Defense Secretary of Defense Paul Wolfowitz issued an order—purportedly based on the authority of the AUMF and the Executive Order—in which the government for the first time defined and "enemy combatant," and established "Combatant Status Review Tribunals" ("CSRTs") for the purpose of reviewing whether prisoners at Guantanamo were properly held as "enemy combatants."[2] *See generally* Declaration of Susan Baker Manning in Support of Petitioners' Motion for Reconsideration of September 13, 2005 Order ("Manning Decl."), Ex. A (Order Establishing Combat Status Review Tribunal) (the "Wolfowitz Order").[3] The Wolfowitz Order defined an "enemy combatant" as:

---

[2] Petitioners believe that the Executive Order exceeded the President's putative power to seize and detain persons under the AUMF as it purports to expand that power well beyond those responsible for the September 11, 2001 attacks. Likewise, Petitioners believe that the definition of "enemy combatant" and the CSRT process both exceeded the Defense Department's lawful power. As we show below, however, those disputes are academic here.

[3] In June 28, 2004, the Supreme Court of the United States held that prisoners at Guantanamo Bay are entitled to bring a habeas corpus action to challenge their incarceration. *Rasul v. United States*, 124 S. Ct. 2686, 2699 (2004) (upholding the jurisdiction of federal courts "to determine the legality of the Executive's potentially indefinite detention of individuals who claim to be wholly innocent of wrongdoing"). The Wolfowitz Order was issued nine days later.

3

> [A]n individual who was part of or supporting Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces. Each detainee subject to this Order has been determined to be an enemy combatant through multiple levels of review by officers of the Department of Defense.

*Id.* The CSRT implementation procedures, in turn, set out a procedure for determining whether a prisoner was "properly classified" as an "enemy combatant." Where a prisoner was not, he was to be remanded to the Secretary of State for repatriation or release. Manning Decl., Ex. B (Implementation of Combat Status Review Tribunal Procedures for Enemy Combatants at Guantanamo Bay Naval Base, Cuba) at 9. None of the authority the government cites to justify imprisoning "enemy combatants" at Guantanamo Bay—not the Executive Order, not the Wolfowitz Order, and not the implementation procedures—even purports to authorize the imprisonment of persons who are determined not to be enemy combatants.[4]

**B.   The Pending Appeals Do Not Affect Those Found *Not* To Be "Enemy Combatants."**

Respondents requested a stay of this case because of three pending cases on appeal before the D.C. Circuit Court of Appeals. *See* Respondents' Motion to Stay at 18-19.[5] Respondents argue that the appeals address the issues present in this case. *See id. That is simply not true.* In every case on appeal, the Government contends that the prisoner is an "enemy

---

[4]   Respondents recently attempted to concoct a new theory that would allow them to detain non-enemy combatants. The "status of 'enemy combatant' has been, until now, the only handhold for the government's claim of executive authority to hold detainees at Guantanamo." *See* Manning Decl., Ex. C (Judge Robertson's Aug. 19, 2005 Order in *Qassim v. Bush*). "Now that these petitioners are 'no longer enemy combatants'" the government attempted to justify their continued imprisonment by asserting "the Executive's necessary power to wind up wartime detentions in an orderly fashion." *Id.* This was yet another effort to pull some authority out of the air, and Judge Robertson rejected it. "There is no basis for this claimed authority except the Executive's assertion of it." *See id.* (citing *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2639-40 (2004)). Respondents are grasping at straws.

[5]   *See Khalid v. Bush*, No. 04-CV-1142; *Boudediene v. Bush*, No. 04-CV-1166 (RJL); and *In re Guantanamo Detainee Cases*, No. 02-CV-0299.

4

combatant," as defined in the Wolfowitz Order. None of the appeals involves a claim by the Government of the right to detain someone whom the Government itself, through its CSRT process, has determined not to be an "enemy combatant." *See, e.g.,* Judge Robertson's Aug. 19, 2005 Order at 5 ("Neither of the twinned cases now pending before the Court of Appeals presents, or appears to have contemplated, the case of a detainee who has been through the [Combat Status Review Tribunal] process and declared no longer an 'enemy combatant.' . . . [T]hese petitioners are correct, as a formal, legal matter, in their insistence that the issue presented by this case is not before the Court of Appeals.") (Manning Decl., Ex. C). Because the appeals do not consider the status of "non-enemy combatants," those appeals simply will not elucidate any power indefinitely to imprison non-enemy-combatants.

Indeed, the *Al-Odah* oral argument shows that this Court should not be concerned with the possibility of the Court and the Government wasting resources in responding to these Petitioners. The root question at issue was whether a prisoner was an "enemy combatant" or whether, as Judge Sentelle put it, he was "just a shepherd." Because the Petitioners are "non-enemy combatants" there should be no concern that the appellate decision will have an adverse effect on this Court's ruling that Respondents must respond to the Petitioners' Habeas Corpus Petition. *See generally* Manning Decl., Ex. D (transcript of Sept. 8, 2005 *Al-Odah* oral argument) at 36-37, 41-42, 45-46.

Accordingly, this Court should—indeed, we believe *must* under 28 U.S.C. § 2243—deny any request for a stay, and move promptly to consideration on the merits of the writ of *habeas corpus*, in any case involving non-enemy combatants.

C. **There is Compelling Evidence That The Government Determined That Saddiq Is Not An "Enemy Combatant."**

Respondents cannot deny that Petitioner Saddiq Doe ("Saddiq") has been

5

determined not to be an "enemy combatant." First, on both July 13-14, 2005, and again on August 29, 2005, Adel Abdul Hakim and Abu Bakker Qassim (who are Petitioners in the *Qassim v. Bush* case, and who the government admits are not enemy combatants) informed counsel that Saddiq was imprisoned with them, and that he had been determined by the CSRT not to be an "enemy combatant." Manning Decl. at ¶ 6; September 8, 2005 Declaration of Sabin Willett ("Willett Decl.") (filed under seal). Second, in a letter just received, Saddiq informed counsel that "[s]ix months ago, [he] was told by the Americans that [he was] innocent and [he was] not an enemy combatant." Manning Decl., Ex. E. Third, both Mr. Qassim and Mr. Hakim have confirmed that Saddiq lives with them in Camp Iguana. Manning Decl. ¶ 6; Willet Decl. *Only prisoners who have been determined not to be "enemy combatants" are housed at Camp Iguana.* Manning Decl. ¶ 4; Willet Decl. There can be no doubt that the Department of Defense is aware of this—on August 29 there were fewer than ten men housed at Camp Iguana. *See* Manning Decl. ¶ 6; Willett Decl. The Government knows who Saddiq is, and that it has no basis to imprison him.

D.  **There Are Strong Suggestions That Other Petitioners May Also Have Been Determined Not To Be Enemy Combatants.**

Petitioners are prisoners at Guantanamo, where they have been imprisoned by the United States for more than three years. All nine Petitioners are Uighurs, a Turkic Muslim minority group living in western China that has been brutally oppressed by the communist Chinese government.[6] Manning Decl. ¶ 2. There is strong evidence that as many as eighteen Uighurs are situated in precisely the same way. All were in Afghanistan together, at a camp not operated by the Taliban or Al Qaeda; all fled together to Pakistan, all were captured together

---

[6] Saddiq is an ethnic Uighur whose parents fled western China to escape Chinese oppression and violence. Manning Decl., Ex. E; *id.* ¶ 6. The other eight Petitioners are Chinese nationals. *Id.* ¶ 2.

there; all were sold to the U.S. for a bounty. *See generally,* CSRT for Bahtiyar Mahnut, recently produced in *Sadar Doe v. Bush*, No. 05-1704 (JR) ("Mahnut CSRT"). Manning Decl., Ex. F.[7] *See also id.* at ¶ 7.

This information is consistent with reliable press accounts. According to public reports, the United States is currently incarcerating approximately twenty-two Uighurs at Guantanamo. *Devastating Blows, Religious Repression of Uighurs in Xinjiang*, 17 HUMAN RIGHTS WATCH 2, § II, at 22-23 (2005). *See* Petitioners' Mot. For Order to Show Cause, Ex. 1. Fifteen or more Uighurs have been determined by the Government not to be "enemy combatants," or not to be a threat to the security of the United States and therefore eligible for release. *See* Interview with Gordon England, Secretary of the Navy, in Washington, D.C., at 3 (Mar. 29, 2005) ("I think it has been reported we have Uighurs from China that we have not returned to China, even though, you know, some of those have been deemed, even before [the CSRT] hearings, to be non-enemy combatants because of concerns and issues about returning them to their country.") (Petitioners' Aug. 17, 2005 Mot. For Order to Show Cause, Ex. 3); Demetri Sevastopulo, *Cheney backs Guantanamo Bay jail amid growing unease*, FIN. TIMES, June 14, 2005 ("The US is holding about 550 detainees at Guantanamo, including about a dozen Uighur Chinese whom the US has determined are no longer 'enemy combatants.'") (Petitioners' Aug. 17, 2005 Mot. For Order to Show Cause, Ex. 4); Robin Wright, *Chinese Detainees Are Men Without a Country*, Washington Post, August 24, 2005 ("In late 2003, the Pentagon quietly

---

[7] Mr. Mahnut testified that he was at a camp in Afghanistan along with other Uighurs. *See* Manning Decl., Ex. F. Uighurs, not Afghanis or Arabs, ran the camp. *See id.* The people at the camp escaped to Pakistan when the U.S. began its bombing campaign in Afghanistan. *See id.* It was there that all of them were sold for a bounty to US forces. The Uighurs have no connection with Al Qaeda, and Mr. Mahnut had not heard of Al Qaeda until he was questioned about the group in Guantanamo. *See id.* Mr. Mahnut also testified that Al Qaeda was an enemy of the world, and the Uighurs needed help from the rest of the world to defend themselves from the Chinese government, so it would make no sense to support Al Qaeda. *See id.*

decided that 15 Chinese Muslims detained at the military prison in Guantanamo Bay, Cuba, could be released.") (Manning Decl., Ex. G).

There is substantial reason to believe that Respondents have already determined—possibly months or even years ago—that (in addition to Saddiq) many of the other Petitioners are not "enemy combatants" and should be released. *See*, *e.g.*, England Interview (Petitioners' Aug. 17, 2005 Mot. For Order to Show Cause, Ex. 3) at 3 (acknowledging that several of the Uighur detainees had been deemed non enemy combatants "even before the [government] hearings"); Interview with Colin Powell, Secretary of State, in Washington, D.C., at 5 (Aug. 12, 2004) ("[T]he Uighurs are a difficult problem and we are trying to resolve all issues with respect to all detainees at Guantanamo. The Uighurs are not going back to China, but finding places for them is not a simple matter, but we are trying to find places for them. And we are trying to find places for them, and, of course, all candidate countries are being looked at.") (Petitioners' Mot. For Order to Show Cause, Ex. 5); *U.S.: Don't Send Detainees Back to China*, HUMAN RIGHTS NEWS (Human Rights Watch, New York, N.Y.) Nov. 26, 2003 ("The United States apparently is considering sending the Uighurs to China because it believes they do not constitute a threat to the United States and presumably have committed no crimes.") (Petitioners' Mot. For Order to Show Cause, Ex. 6).

In July, the Government admitted to keeping at least two Uighurs imprisoned at Guantanamo well after the detainees had been cleared by the Government's own Combatant Status Review Tribunals ("CSRT"). *See Qassim, et al. v. Bush, et al.* (Civ. No. 05-497 (JR)) (hereinafter "*Qassim*"), Resp'ts' Mem. in Opp'n to Pet'rs' Mot. to Vacate Stay Order and Issue Writ Directing Immediate Release of Pet'rs at 1 ("It is correctly noted in petitioners' motion that [CSRTs] have recently determined that petitioners are no longer classified as enemy

LITDOCS/617105.1

combatants.") (Manning Decl., Ex. H). The eight remaining Petitioners here are believed to be situated similarly to Qassim, Hakim, and Mahnut. Manning Decl. ¶ 7. In short, we know (i) that Mr. Hakim and Mr. Qassim have been determined not to be enemy combatants, (ii) as many as sixteen other Uighurs were similarly situated, and (iii) the U.S. has made efforts to release approximately the same number of Uighurs for more than two years. All of this is strong evidence that other Petitioners may also have been determined not to be enemy combatants.

E.  **The Pressing Need For Relief**

With the stay in place, the Government is refusing to produce any information—indeed, refusing to make any contention—as to the "enemy combatant" status of the Petitioners. Without the making of a return and production of the CSRT information, unlawful detention of men whom the Government has itself cleared might be permitted to continue indefinitely.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that Respondents' Respondents' Motion to Stay Proceedings Pending Related Appeals for Continued Coordination be denied and grant the Writ or an Order to Show Cause be issued, returnable by Respondents in three (3) days.

Dated: September 29, 2005

Of Counsel:

Barbara Olshansky
Deputy Director
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone:   (212) 614-6439

_____
Sabin Willett
Neil McGaraghan
Jason S. Pinney
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA  02110-1726
Telephone:   (617) 951-8000
Facsimile:   (617) 951-8925

Susan Baker Manning
Hope M. Jarkowski
BINGHAM McCUTCHEN LLP
1120 20th Street NW, Suite 800
Washington, DC  20036-3406
Telephone:   (202) 778-6150
Facsimile:   (202) 778-6155

David A. Peters
BINGHAM McCUTCHEN LLP
One State Street
Hartford, CT 06103
Telephone:   (860) 240-2700
Facsimile:   (860) 240-2800