# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ABU BAKKER QASSIM, et al., | |
| Petitioners, | |
| v. | Civil Action No. 05-497 (JR) |
| GEORGE W. BUSH, et al., | |
| Respondents. | |

**RESPONDENTS' MEMORANDUM IN OPPOSITION TO
PETITIONERS' MOTION TO VACATE STAY ORDER AND
ISSUE WRIT DIRECTING IMMEDIATE RELEASE OF PETITIONERS**

Respondents hereby oppose petitioners' motion to vacate the stay order, to issue a writ of

habeas corpus, and to order the immediate release of petitioners. It is correctly noted in

petitioners' motion that Combatant Status Review Tribunals ("CSRTs") have recently

determined that petitioners are no longer classified as enemy combatants. Accordingly,

respondents intend to release them as soon as possible and have been diligently undertaking

efforts toward that end. As explained below, the only thing holding up petitioners' release is that

respondents are trying to locate a suitable country for transfer to avoid a situation where

petitioners would be returned to a country where it is more likely than not that they would be

tortured.[1] During the interim period, petitioners are being held in the least restrictive conditions

available, and it is simply not a workable alternative to commingle former detainees – even those

determined to no longer be enemy combatants – in base housing for military personnel, civilian

---

[1] Petitioners themselves voiced concerns about this issue in an earlier motion, in response to which the Court issued an order that, among other things, <u>bars</u> their "release, repatriation, or rendition." Order dated Apr. 13, 2005 (dkt. no. 14). Of course, before any release could be effected, respondents would have to obtain relief from this aspect of the Court's April 13, 2005 order.

contractors, their dependents, and authorized visitors during the interim period pending their

permanent departure from Guantanamo.  Consequently, there is no basis for petitioners' request

in this regard.  Furthermore, rather than favoring <u>vacating</u> the present stay, the CSRTs' decisions

that petitioners are no longer enemy combatants and the fact that, independent of this litigation,

respondents already are pursuing a course that will result in their release once a suitable

destination country can be arranged counsels <u>maintaining</u> the stay.  Petitioners' motion,

accordingly, should be denied.

**A.    The Court Should Not Vacate the Present Stay of Proceedings**

On April 13, 2005, the Court granted respondents' motion to stay proceedings in this case

pending the appeals in <u>Khalid v. Bush</u>, 355 F. Supp. 2d 311 (D.D.C. 2005), <u>appeals docketed</u>,

Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005), and <u>In re Guantanamo Detainee Cases</u>, 355 F.

Supp. 2d 443 (D.D.C. 2005), <u>appeal on petition for interlocutory appeal</u>, No. 05-5064 et al. (D.C.

Cir.).[2]  Petitioners argue that the stay was improper because, they say, the issues that will be

determined in the pending appeals in <u>Khalid</u> and <u>Guantanamo Detainee Cases</u> are "academic in

this case," and "the factual and legal bases upon which the Court's stay order was founded are

moot."  Petrs' Mem. at 4.

However, petitioners' portrayal of the issues on appeal in <u>Khalid</u> and <u>Guantanamo</u>

<u>Detainee Cases</u> is materially incomplete.  Petitioners selectively highlight one issue before the

Court of Appeals – whether the CSRTs comport with any constitutional due process

requirements – but fail to mention the crucial threshold issue also presented:  whether aliens

---

[2] On July 26, 2005, at the request of the detainees for expedited consideration, the D.C. Circuit moved up the date of oral argument and both cases are now scheduled to be argued on September 8, 2005.

outside the United States who have not voluntarily developed any substantial connection with

this country have constitutional rights.  See Khalid v. Bush, 355 F. Supp. 2d 311, 322-23 (D.D.C.

2005) (holding in the negative).[3]  Petitioners cannot sidestep this fundamental issue; indeed, the

principal case law they cite as a legal basis for the relief sought in this very motion is deeply

imbued with the assumption that non-resident aliens enjoy constitutional rights.  See Petrs' Mem.

at 9-10 ("'[T]he public has a strong interest in ensuring that its laws do not subject individuals to

indefinite detention without due process; [i]t is always in the public interest to prevent the

violation of a party's constitutional rights.'") (quoting Abdah v. Bush, 2005 WL 711814, *6

(D.D.C. Mar. 29, 2005) (emphasis added)).[4]  Petitioners provide no other putative legal basis for

the relief they seek, and petitioners' ability to avail themselves of constitutional rights, therefore,

appears key to their request for relief.  Thus, far from being "academic in this case" as petitioners

claim, the issues on appeal in Khalid and Guantanamo Detainee Cases touch the core of the

instant motion.

---

[3] The CSRTs' determinations that these petitioners were no longer enemy combatants did not invest them with constitutional rights.  The case law excluding constitutional rights for non-resident aliens does not hinge on whether or not they are enemy combatants.  See, e.g., United States v. Verdugo-Urquidez, 494 U.S. 263 (1990) (involving civilian Mexican-citizen defendant in criminal case, not enemy combatant); Pauling v. McElroy, 278 F.2d 252, 254 n.3 (D.C. Cir. 1980) (suit to enjoin nuclear testing by civilian citizens of Canada, Britain, France, Germany, Japan, and other countries, not enemy combatants).

[4] Petitioners also rely on Zadvydas v. Davis, 533 U.S. 678 (2001).  See Petrs' Mem. at 12 n.9.  In Zadvydas, the Supreme Court interpreted an immigration statute not applicable here so as to avoid constitutional difficulty, and, in the course of doing so, reaffirmed the critical "distinction as to the availability of constitutional rights between an alien who has effected an entry into the United States and one who has never entered," stressing that "[i]t is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders."  533 U.S. at 693, cited in Khalid, 355 F. Supp. 2d at 322.

Petitioners imply that it was somehow misleading or deceptive for the Government to move for a stay, including deferral of factual returns, in this case because the two petitioners herein were subsequently determined to no longer be enemy combatants.[5]  However, the stay is as justified, if not more so, in this case as in the others.  As the Court is likely aware, respondents filed essentially the same stay motion in dozens of Guantanamo detainee cases because the anticipated guidance from the Court of Appeals on the key issues is likely to affect dramatically how, if at all, these cases proceed with respect to the various issues and requests for relief involved in the cases, including, as discussed above, the very request for relief in the instant motion.  Any issue of whether a petitioner possesses substantive legal rights under the Constitution, treaties, or statutes regarding his detention would be the subject of and affected by resolution of the pending appeals and is thus properly the subject of a stay, and this is true regardless of whether an individual's detention is expected to continue or respondents have already determined to release him as soon as the necessary arrangements for an appropriate destination country can be made.

Indeed, the fact that these petitioners are already slated for release, independent of the outcome of this litigation, would constitute, if anything, an additional factor weighing in favor of a stay in this case.  In this case, what is typically the core issue in most habeas cases is not actually in dispute:  respondents agree it is appropriate to release petitioners and intend to release them as soon as possible.  The only thing holding up their release is the making of suitable

---

[5]  The CSRTs determined petitioners should no longer be classified as enemy combatants on March 26, 2005, after the stay motion had been briefed.  Up until that date, prior determinations by Department of Defense decisionmakers that petitioners were classified as enemy combatants remained in effect and operative.

arrangements for transferring them to a country where it is not more likely than not that they would be tortured, a matter in which the Government is acting in recognition of the very concerns petitioners themselves have expressed.[6]  The pendency of appeals that are likely to determine the legal landscape going forward warrants a stay in <u>any</u> Guantanamo detainee habeas case; if there is any such case in which it would be appropriate to lift the stay and forge ahead with plenary proceedings, surely it is not one in which respondents are already substantially engaged in efforts to bring about petitioners' release.

Furthermore, the undertaking to locate and interact with an appropriate country to which petitioners may be released is a classic type of foreign policy matter committed exclusively to the Executive Branch.  <u>See</u>, <u>e.g.</u>, <u>Schneider v. Kissinger</u>, 412 F.3d 190, 195 (D.C. Cir. 2005) (noting that "the Supreme Court has described the President as possessing 'plenary and exclusive power' in the international arena and 'as the sole organ of the federal government in the field of international relations'" (quoting <u>United States v. Curtiss-Wright Export Corp.</u>, 299 U.S. 304, 320 (1936))).  The fact that sensitive diplomatic negotiations and arrangements that must be

---

[6] As noted in prior filings in this case, it is the policy of the United States not to transfer Guantanamo detainees to countries where it is more likely than not that they would be tortured, and the Government employs an elaborate process involving significant diplomatic efforts to carry out that policy.  <u>See generally</u> Declaration of Pierre-Richard Prosper dated Mar. 8, 2005 ("Prosper Decl."), previously filed in connection with respondents' March 21, 2005 opposition to petitioners' motion for preliminary injunction (dkt. no. 7); Declaration of Matthew C. Waxman dated June 2, 2005, previously filed on July 11, 2005 (dkt. no. 22).  United States policy in this regard is consistent with the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment as ratified by the United States Senate.  <u>See</u> Resolution of Ratification, 136 Cong. Rec. S17486, S17492 (Oct. 27, 1990) ("The Senate's advice and consent is subject to the following understandings, which shall apply to the obligations of the United States under this Convention: . . . . That the United States understands the phrase, 'where there are substantial grounds for believing that he would be in danger of being subjected to torture,' as used in Article 3 of the Convention, to mean 'if it is more likely than not that he would be tortured.'").

undertaken by the Executive Branch are the lynchpin in ultimately effecting the petitioners'

release further counsels in favor of a stay and against present judicial intervention in this case.[7]

**B.    The Court Should Not Order "Immediate Release" of Petitioners
or Changed Residential Conditions Pending Their Release**

Petitioners ask for an order directing an "immediate release."[8]  However, respondents are

already working diligently to effect petitioners' release as soon as possible.  The issue that must

be resolved in order for the release to take place – locating, consistent with petitioners' own

expressed concerns, a suitable country to which petitioners can be transferred where it is not

more likely than not that they would be tortured – is one that will exist and will have to be dealt

with whether or not the Court issues the requested order.

Petitioners' answer seems to be that, in the meantime, they wish to be implanted as

private residents alongside servicemembers, their dependents, and/or authorized visitors, in some

form of housing on the Guantanamo Bay Naval Base but outside the detention facility.  However,

---

[7] While the Government's efforts to implement its policy and locate an appropriate destination country are continuing and multifaceted, the specific details of those efforts are not appropriate for disclosure outside appropriate governmental channels.  See Prosper Decl. ¶¶ 9-12 (submitted previously with respondents' memorandum in opposition to petitioners' motion for preliminary injunction, filed Mar. 21, 2005 (dkt. no. 7)).

[8] Petitioners appear to request that the Court order petitioners' release by issuing a writ of habeas corpus.  However, as a technical matter, a writ of habeas corpus simply directs the custodian to "make a return certifying the true cause of detention," after which the Court would engage in a substantive review of whether the reasons underlying the detention are justified.  28 U.S.C. § 2243; Roman v. Ashcroft, 162 F. Supp. 2d 755, 759 (N.D. Ohio 2001) ("[T]he writ of habeas corpus merely initiates the proceedings.  It is analogous in this respect to the writ of certiorari, another prerogative writ still in use.  When the Supreme Court grants a writ of certiorari, it is bringing the case before it for decision rather than deciding it on the merits.  The same is true of habeas corpus.").  For the same reasons as the stay of proceedings should be maintained, the Court should not at this time undertake plenary substantive review of reasons underlying detention that the Government is actively working to terminate.

petitioners fail to cite any applicable legal authority for the Court to order such relief.[9]

Guantanamo Bay Naval Base is a closed-access military base dedicated to military functions that

require security and a controlled environment.  See Declaration of Col. Michael I. Bumgarner ¶ 8

(submitted herewith).  For instance, in order to travel to Guantanamo, U.S. citizen habeas

counsel must possess a security clearances as well as country and theater clearances.  See

Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay,

Cuba, ¶ III.D.4, entered herein by dkt. no. 16, and reproduced at In re Guantanamo Detainee

Cases, 344 F. Supp. 2d 174, 186, 191 (D.D.C. 2004).  Even then, counsel are required to be

escorted by military staff for movement on most areas of the Base.  See, e.g., Willett Decl. ¶ 16.

　　　Petitioners, even if no longer classified as enemy combatants, are foreign nationals who

have no prior voluntary connection with or allegiance to the United States and who were

previously held as enemy combatants.  Thus, release in this context is not like, for example, the

release of a U.S. citizen detained domestically pursuant to the criminal justice system, which

generally consists of transporting the ex-convict outside the detention facility whereupon he is

free to rejoin local society.  Rather, release generally involves repatriating the former detainee to

---

[9] Petitioners cite Zadvydas v. Davis, 533 U.S. 678 (2001), and Clark v. Martinez, 125 S. Ct. 716 (2005), as precedents for the relief they seek.  See Petrs' Mem. at 12 n.9.  However, both of those cases dealt with a provision of the Immigration and Nationality Act that by its own terms has no application here.  See 8 U.S.C. § 1231(a)(6) (applying to three categories of "alien[s] ordered removed" pursuant to a final order of removal under the pertinent immigration statutes).  Moreover, petitioners' reliance on Zadvydas simply reaffirms the propriety of the stay pending the appeals that will address whether persons in petitioners' situation possess constitutional rights.  See supra note 4.  Further, the Court in Zadvydas made clear that its holding was not intended to speak to any "special circumstances" that might call for "heightened deference to the judgments of the political branches with respect to matters of national security."  533 U.S. at 696. The Military's management of the residential status of individuals formerly detained as enemy combatants during the transitional period pending their release constitutes such special circumstances, particularly when those individuals are located on a secure military base.

his home country or, in situations where repatriation would not be consistent with United States policy, transferring him to another appropriate country, which requires, among other things, diplomatic coordination with the foreign government and implementation of respondents' policies to guard against repatriation or transfer of detainees to countries where it is more likely than not that they would be tortured.

In the meantime, petitioners are housed in Camp 4, where detainees have a communal living arrangement consisting of 10-man bays in which they can move about freely with nearly all-day access to exercise yards and other recreational opportunities.  Bumgarner Declaration ¶¶ 4-7.  Camp 4 detainees can play soccer and volleyball and are provided games such as chess, checkers, and playing cards, as well as books through a librarian.  Bumgarner Declaration ¶ 4.  They are served meals family-style on picnic benches under an awning.  Bumgarner Declaration ¶ 5.  These detainees are also provided weekly movies and special food items.  Id.

Of course, we do not mean to imply that being temporarily confined at Camp 4 pending release is somehow tantamount to outright freedom.  However, no housing arrangement that could be granted to petitioners while they remain at Guantanamo, a secure U.S. military base, would entail outright freedom.  Despite what petitioner's counsel may have perceived during his visit, Guantanamo outside Camp Delta is not an open society but a military base that, for sound reasons and like any other military base, maintains a controlled environment.  Bumgarner Declaration ¶¶ 8-11.  Even assuming there was some available, suitable, and vacant space outside Camp Delta where petitioners could be housed, they would have to be confined within a perimeter and subject to appropriate monitoring.  Bumgarner Declaration ¶ 8.  As noted above, even habeas counsel are subject to restrictions and are required to be escorted by military

8

personnel when traveling in most areas of the base.

Unlike visiting habeas counsel, petitioners – notwithstanding that they have been determined by CSRTs to no longer be enemy combatants – are not U.S. citizens and presumably have no allegiance or loyalty to the United States. A determination that a detainee is no longer an enemy combatant simply reflects that he is deemed not to be "an individual who was part of or supporting Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the United States of its coalition partners. This includes any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."[10] It does not necessarily imply a finding that an individual is benign in all respects. See Bumgarner Declaration ¶¶ 10-11. Moreover, the determination with which the CSRTs were tasked is not an exact science.[11] The circumstances in which wartime detainees were apprehended can be ambiguous, and prior Department of Defense decisionmakers had found that these petitioners were enemy combatants. The Department of Defense has learned that some former Guantanamo

_____

[10] See Order Establishing Combatant Status Review Tribunal (July 7, 2004), available at <<http://www.defenselink.mil/news/Jul2004/d20040707review.pdf>>.

[11] Petitioners, in emphasizing that the CSRTs "exonerated" them and found them "blameless," misperceive the function of the CSRT and the import of its findings. See Petrs' Mem. at 1, 6 (citing Herrera v. Collins, 506 U.S. 390 (1993), for the proposition that "[t]he central purpose of any system of criminal justice is to convict the guilty and free the innocent" (emphasis petitioners')). To the contrary, the purpose of detention of enemy combatants "is to prevent captured individuals from returning to the field of battle and taking up arms once again," and "[c]aptivity in war is neither revenge nor punishment, but solely protective custody, the only purpose of which is to prevent the prisoners of war from further participation in the war." Hamdi v. Rumsfeld, 124 S. Ct. 2633, 2640 (2004) (plurality opinion) (internal quotation marks omitted). The CSRT is a fact-based proceeding to determine whether a detainee is properly classified as an enemy combatant – nothing more, nothing less. It is not a criminal justice oriented process and does not "exonerate" a detainee, provide a character reference, or serve as a guarantee that a detainee could be appropriately and safely assimilated into American society on a military base.

9

detainees who were released upon judgments that they no longer presented a threat have reemerged in combat and terrorism activities following their release.  While such experience does not undermine the finality of the specific CSRT results in this case, it does counsel against resettling former detainees in the middle of a military base in unrestricted circumstances where the security of military functions and/or safety of base personnel could be compromised.  The chain of command at Guantanamo has decided in its military judgment that such a precipitous move could jeopardize the good order, safety, and security of the base, and that judgment should not be subject to second-guessing at petitioners' behest.

***

For the foregoing reasons, respondents respectfully request that petitioners' motion be denied.

Dated: July 29, 2005                    Respectfully submitted,

                                        PETER D. KEISLER
                                        Assistant Attorney General

                                        KENNETH L. WAINSTEIN
                                        United States Attorney

                                        DOUGLAS N. LETTER
                                        Terrorism Litigation Counsel

_/s/ Robert J. Katerberg_
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
EDWARD H. WHITE
ROBERT J. KATERBERG
ANDREW I. WARDEN
NICHOLAS J. PATTERSON
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 616-8298
Fax:  (202) 616-8460

Attorneys for Respondents