IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMAL KIYEMBA, *et al.*, )<br><br>Petitioners, )<br><br>v. )<br><br>GEORGE W. BUSH, )<br>President of the United States, )<br>*et al.*, )<br><br>Respondents. ) | Civil Action No. 05-CV-01509 (RMU) |

## <u>DECLARATION OF TERRY M. HENRY</u>

Pursuant to 28 U.S.C. § 1746, I, Terry M. Henry, hereby declare:

1.      I serve as Senior Trial Counsel in the United States Department of Justice, Civil Division, Federal Programs Branch. I serve as one of the counsel for respondents in the Guantanamo Bay habeas litigation, including in this case. The information supplied in this declaration is based on my personal knowledge or on information provided to me in my official capacity.

2.      Attached as Exhibit A is a copy of an August 31, 2005 electronic mail message ("e-mail") sent to me by one of petitioners' counsel, Susan Baker Manning, Esq.

3.      Attached as Exhibit B is a copy of a September 1, 2005 e-mail sent to me by one of petitioners' counsel, Sabin Willett, Esq., with the name of an individual not involved in the litigation redacted.

4.      Attached as Exhibit C is a copy of a September 29, 2005 e-mail sent by me to one of petitioners' counsel, Sabin Willett, Esq. It also includes certain other e-mail correspondence exchanged between me and Mr. Willett on September 27 and 28, 2005.

5.    Attached as Exhibit D is a copy of a September 30, 2005 e-mail sent by me to Mr. Willett.

6.    Attached as Exhibit E is a copy of an October 7, 2005 e-mail sent by me to Mr. Willett.  It also includes another e-mail sent to me from Mr. Willett on October 5, 2005.

7.    As of September 22, 2005, the identity of the putative petitioner designated "Saadiq Doe" in this case had not been firmly established by respondents.  The piecemeal information regarding the identity of "Saadiq Doe" provided by petitioners' counsel from the inception of the case up to September 22 was determined, in consultation with the Department of Defense ("DoD"), to be internally inconsistent.  Certain of the information, including that the petitioner was believed to be a national or former resident of Saudi Arabia, of Uighur heritage, with the name "Al Bukhari," pointed to a detainee who used the name "al Bukhari" and was a Saudi national of Central Asian heritage, but that detainee was classified as an "enemy combatant," not as "no longer an enemy combatant" ("NLEC").  Other information supplied by petitioners' counsel, including that the petitioner used the name "Saadiq" and was believed to be a national or former resident of Saudi Arabia of Uighur heritage who had been classified as an NLEC, with a possible ISN of 491, pointed to another detainee who had a first name similar to "Saadiq," but that detainee did not use the name "al Bukhari," according to DoD records.  Further, the detainee with ISN 491 had previously been identified for several months by DoD as likely the petitioner "Adel Turkestani" in another Guantanamo habeas matter filed in this Court, Sliti v. Bush, No. 05-CV-0429 (RJL).  That detainee was the only one using the surname "Turkestani" who was of Chinese or Uighur origin, consistent with the description of the

petitioner in <u>Sliti</u>, though the first name "Adel" was not associated with that detainee in DoD's records.

       8.      With respect to petitioners in this case other than "Saadiq Doe," as of September 22, 2005, respondents' counsel had tentatively identified all but one of those petitioners.  Each of the identified petitioners was classified by a Combatant Status Review Tribunal as an "enemy combatant."  The one unidentified petitioner remains unidentified.

      I declare under penalty of perjury that the foregoing is true and correct.

Dated: October \_\_\_, 2005

TERRY M. HENRY

**EXHIBIT A**

**Henry, Terry (CIV)**

---

| | |
|---|---|
| **From:** | susan.manning@bingham.com |
| **Sent:** | Wednesday, August 31, 2005 11:58 AM |
| **To:** | Henry, Terry (CIV) |
| **Cc:** | Warden, Andrew (CIV) |
| **Subject:** | RE: Kiyemba v. Bush (No. 1:05cv01509) |

Dear Terry --
We still have not heard from the government regarding the critical issues raised below.
We have asked the government to advise whether it has determined that any of our clients
are not enemy combatants, or otherwise not a security threat to the United States.  We
have also asked the government to advise whether it has any plan or expectation of
releasing our clients.  As you know, Judge Robertson has viewed most unfavorably the
government's failure to provide us with that same information in the Qassim case.  I trust
that Judge Robertson's statements to date are enough to make it clear to the government
that our request for this critical information is appropriate.  Please provide the
requested information.

As to our client Saddiq, we have obtained additional unclassified information about him.
We believe that he may be an ethnic Uighur who is a citizen of Saudi Arabia.  His full
name may be Saddiq Al Bukhari.  We also believe that the government has determined that he
is not an enemy combatant, or "no longer an enemy combatant" in DoD parlance.  If that
information is correct, I can only assume that he has either been repatriated or moved to
Camp Iguana.  Please advise.

regards,
Susan


Susan Baker Manning, Esq.
Bingham McCutchen LLP
1120 20th Street NW, Suite 800
Washington DC 20036
202.778.6172 (t)
202.778.6155 (f)
susan.manning@bingham.com


> -----Original Message-----
> From:     Manning, Susan Baker
> Sent:     Monday, August 22, 2005 11:54 AM
> To: 'terry.henry@usdoj.gov'
> Cc: 'andrew.warden@usdoj.gov'
> Subject:  RE: Kiyemba v. Bush (No. 1:05cv01509)
>
> Terry --
> With the additional information below requested by the government as to each Kiyemba v.
Bush petitioner, has the govt. been able to determine (1) whether each petitioner is a
Uighur?; (2) whether the Government made a determination that the detainee is not an enemy
combatant, or otherwise does not represent a security threat to the United States?; and
(3) whether the Government has any plan or expectation as to the detainee's release?
>
> As you'll recall, Sabin Willett asked you these same questions in correspondence dated
August 4, 2005, and we provided the information below to assist in your investigation.
Given the publicly available information that more than half of the Uighurs in Guantanamo
have been cleared by the government, we are of course particularly interested to know
whether petitioners have been determined not to be enemy combatants.  I look forward to
hearing from you on these important matters.
>
> regards,
> Susan
>
>

1

```
> Susan Baker Manning, Esq.
> Bingham McCutchen LLP
> 1120 20th Street NW, Suite 800
> Washington DC 20036
> 202.778.6172 (t)
> 202.778.6155 (f)
> susan.manning@bingham.com
>
>
>
>      -----Original Message-----
>      From:         Manning, Susan Baker
>      Sent: Tuesday, August 16, 2005 5:02 PM
>      To:    'terry.henry@usdoj.gov'
>      Cc:    'andrew.warden@usdoj.gov'
>      Subject:    Kiyemba v. Bush (No. 1:05cv01509)
>
>      Terry --
>      I write in response to the issues you raised with Sabin Willett regarding the
Kiyemba petitioners.  I have forwarded you the next friend authorization under separate
cover.  As to the Petitioners, we trust that the government will be able to identify each
of them as they are all Uighurs, and we understand that there are only approximately 22
Uighurs in Guantanamo.
>
>      Nevertheless, to assist the government, please find below some add'l information
regarding each of the Petitioners.  Naturally, I have not been able to confirm any of this
information with my clients yet, but this is my best understanding.
>
> Name (and possible AKAs)    ISN    Camp
> Abdul Nasser (aka Abdulnasir, Abdul Anasser)  I
> Abdul Sabour (aka Abdusaber)            I
> Abdul Somad  (aka Abdul Samad)    295    I
> Hammad         I
> Hudhafia  (aka Hoozaifa)          IV
> Jalal Jalaldin  (aka Jalal Eddine)>    285    I
> Khalid         I
> Sabir     289(?)       IV
> Saddiq         ?
>
> regards,
> Susan
>
>
> Susan Baker Manning, Esq.
> Bingham McCutchen LLP
> 1120 20th Street NW, Suite 800
> Washington DC 20036
> 202.778.6172 (t)
> 202.778.6155 (f)
> susan.manning@bingham.com
>
>
```

**EXHIBIT B**

**Henry, Terry (CIV)**

| | |
|---|---|
| **From:** | sabin.willett@bingham.com |
| **Sent:** | Thursday, September 01, 2005 10:09 AM |
| **To:** | Henry, Terry (CIV) |
| **Cc:** | dl.zzmgitmohabeas@bingham.local; bolshansky@ccr-ny.org; tfoster@ccr-ny.org |
| **Subject:** | Qassim/Hakim/Saddiq Doe aka Saddiq al Bukhari |

Terry, I have several requests.

1.    We would like to schedule telephone calls with our clients
Messrs. Qassim and Hakim for the second or third week of September.  We would also like to
request another phone call between our client Mr.
Hakim and his sister ▓▓▓▓▓▓▓▓▓ at the same or about the same time.
We request an hour for each phone call.

2.    We also request that Ms. Hakim be permitted to speak to her
brother from her home.  We believe that Mr. Hakim will be able to confirm that it is
indeed his sister who is speaking and I assume your people will in any event be listening
in to ensure that no truly classified information concerning the layout of the camps or
the like is being communicated.  At the hearing, you said that she was not on a secure
line, and had been brought to the embassy only to confirm her identity.  I think it was
plain that Judge Robertson regarded that as unnecessary.

We ask that the personal call be scheduled for after (which may be immediately after) the
attorney-client call.

3.    .  We request an immediate phone call with any of our other clients
who may have been determined not to be an enemy combatant.  Please note that among our
clients is a Uighur who may be a Saudi resident named Saddiq.  He may also be known as
Saddiq al Buhkari.  He is one of the petitioners in the Kiyemba petition.

4.    I will write you separately with a list of requests for changes
to the protective order with respect to prisoners who have been determined in the CSRT
process not to be enemy combatants.

Regards,
Sabin

**EXHIBIT C**

**Henry, Terry (CIV)**

| | |
|---|---|
| **From:** | Henry, Terry (CIV) |
| **Sent:** | Thursday, September 29, 2005 4:10 PM |
| **To:** | 'sabin.willett@bingham.com' |
| **Cc:** | Warden, Andrew (CIV); Katerberg, Robert (CIV) |
| **Subject:** | RE: Kiyemba/Saddiq Doe aka Saddiq Ahmad Turkestani//Edham Mamet/Interpreter Issues |

Sabin:

Thank you for your email containing additional identifying information for petitioner "Sadiq Doe," which includes, for the first time, the surname Turkestani.

You had previously advised, on September 1 and continuing thereafter, that you believed "Sadiq Doe" to have the surname Bukhari, which has complicated the identification process. We assume that, now that you have confirmed that the surname of the individual you purport to represent is Turkestani, the earlier references to surname Bukhari were a mistake and should be disregarded. Please advise if that is not correct.

With the additional identifying information you have provided, it has been determined that to the best of the government's knowledge, the individual you purport to represent already has a habeas case pending on his behalf, Sliti v. Bush, Civ. A. No. 05-429(RJL), in which he is listed as Adel Turkestani. This case was filed on or about February 14, 2005, by attorney Clive Stafford Smith. If you would like a copy of the petition in Sliti, please advise and we will be happy to provide one. We presume you are already working with Mr. Smith since as part of a recent filing in Kiyemba you submitted a declaration by him, and since what your email calls the "Kiyemba next-friend authorization" actually purports to authorize Mr. Smith as lawyer for the listed detainees. In any event, if you wish to represent a detainee who already has a pending habeas case as co-counsel with Mr. Smith, the appropriate course would be to enter an appearance in the earlier-filed case, and to dismiss that detainee from the duplicative petition. Pursuant to standing instructions from the court, we intend to file shortly a notice of duplicative petitions in Sliti and Kiyemba with respect to Mr. Turkestani.

Thank you for providing a copy of the letter from Mr. Turkestani which you obtained from the Secure Facility. It is unclear from the translation copy whether the letter, which is addressed to a "lawyer" generically, was addressed specifically to you, to Clive Stafford Smith, or to some other person. In this regard, we note that your email claims the letter was written by Mr. Turkestani "many months" ago, which we gather means before your August 1 filing of a habeas case on his behalf and before the privileged-mail provisions of the protective order would have applied making it possible for Mr. Turkestani to send legal mail to you through these channels. If you wish to have this letter taken into consideration by the government as authorization for you and your firm to represent Mr. Turkestani, please let us know to whom the letter was originally addressed, and provide a PDF or other copy of the complete original of the letter and envelope in which it was contained (we do not object to the redaction of the phone number).

As to the interpreter and visit issue, our understanding is that a decision regarding clearances for one or more of the citizen-interpreters should be coming soon, although we do not control that process, and I understand that you, appropriately, have confirmed this with the CSOs. Assuming clearances are granted, that would enable you to schedule a visit with Messrs. Mamet, Qassim, and Hakim in the near future, as you have requested in an e-mail today to Andrew Warden, subject to logistical constraints applicable to habeas counsel visits. Andrew will contact you about that. Obviously, we need to get the outstanding questions about next-friend standing and proper representation/authorization straightened out prior to processing requests for visits with any of the Kiyemba petitioners, including Mr. Turkestani and the petitioner identified as Abdunaser Doe. In that vein, if you have information that Abunaser Doe has asked you in some fashion to represent him directly, then please advise.

Sincerely,

Terry M. Henry

1

Senior Trial Counsel
Civil Division, Federal Programs Branch
U.S. Department of Justice
Tel. 202.514.4107

-----Original Message-----
From: sabin.willett@bingham.com [mailto:sabin.willett@bingham.com]
Sent: Wednesday, September 28, 2005 2:01 PM
To: Henry, Terry (CIV); Katerberg, Robert (CIV)
Subject: FW: Kiyemba/Saddiq Doe aka Saddiq Ahmad Turkestani//Edham Mamet/Interpreter
Issues

my mistake on the addresses.
-----Original Message-----
From: Willett, P. Sabin
Sent: Wednesday, September 28, 2005 1:58 PM
To: 'terry.henry@usdoj.com'; 'robert.katerburg@usdoj.com'
Cc: zzm gitmo habeas; 'bolshansky@ccr-ny.org'
Subject: Kiyemba/Saddiq Doe aka Saddiq Ahmad Turkestani//Edham Mamet/Interpreter Issues


Dear Terry:

Thank you for your response.

1. With respect to Saddiq Doe, I have several reactions. First, our information is that
his ISN is 491. "Saddiq" is of course a transliteration of Arabic characters, and in
English the name might be spelled in different ways, including as "Sadeeq," as the
translator of the attachment did, and "Sidick." But we are struggling to understand the
contention that you are unable to identify him, for several reasons. First and foremost,
he is at Camp Iguana, and only NLECs (as you call them) are at Camp Iguana, and indeed
there are very few of these -- only eight or nine, of which two are Adel and Abu Bakker,
leaving at most six or seven. As we have said before, he is a Saudi of Uighur ancestry.
Is it really the government's position that it can identify no Saudi NLEC of Uighur
heritage who is one of six or seven men at Iguana and whose name, transliterated to
English characters, is "Saddiq" or something like "Saddiq?" Our information is that, at
least as of August 29, there was no other person in Iguana with a similar name, and no
other Saudi at Iguana.

As an NLEC, Saddiq would have been through a CSRT. Is it the government's position that
there is no CSRT with an NLEC determination for a Saudi whose first name is Saddiq or
something like Saddiq?

We believe that Saddiq earnestly desires that our firm represent him because (i) of the
Kiyemba next-friend authorization, (ii) because our clients Adel and Abu Bakker have twice
advised us that Saddiq desires this, and in both cases advised that Saddiq lives with
them, and (iii) because we have just received from the secure facility a letter from
Saddiq. Evidently it was written many months ago. We have just had it translated and I
attach to this email a copy of the translation (which is unclassified, and from which I
have redacted a telephone number given to us for Saddiq's family). It makes abundantly
clear that Saddiq exists and desires that we personally meet and represent him. It also
states that Saddiq is known as Saddiq Ahmad, Turkestani, or perhaps Saddiq Ahmad [al]
Turkestani (i.e. Saddiq the Turkestani), as would be customary in Saudi culture.

We renew our urgent request for an immediate telephone call to Saddiq at Camp Iguana. I
can assure you that as with any client, if we learn that the client would prefer that we
not represent him, we will take appropriate steps.

2. With respect to interpreters, it is my information that the interpreters Ms. Venturi
has identified have not yet obtained secret clearance, and so we are unable to use them
yet. We would be willing to use them provided that we can promptly schedule visits to our
clients Edham and Saddiq with them. But if they are to be hung up in security clearances,
then we are back to our problem of having no interpreter, even for NLECs.

As a solution, I would request that Mr. Turkel be approved as well, and that we be
authorized to use him as an interpreter as and to the extent no secret-cleared interpreter

2

is available for a visit. If a secret-cleared interpreter is available, we will use him or her. I will send on another email to the CSOs about this point.  To this end, however, we would like to schedule visits to Sadiq Ahmad Turkestani, no. 491, in Camp Iguana, as well as our client Edham Mamet, as soon as possible.

3. Thank you for the information regarding my declaration.


-----Original Message-----

From: Terry.Henry@usdoj.gov [mailto:Terry.Henry@usdoj.gov]

Sent: Tuesday, September 27, 2005 7:32 PM

To: Willett, P. Sabin

Cc: Robert.Katerberg@usdoj.gov

Subject: Your e-mails


Sabin:

I am, among other things, responding to the two e-mails you sent me on Friday.

With respect to "Sadiq" Doe, the identification problem stems from the fact that various pieces of identifying information you have given us over the past two months are internally inconsistent, i.e., point to different individuals. In addition, depending on which piece of identifying information is used, it appears that the individual you are seeking to represent may already have a petition for habeas pending filed by other counsel, making your petition duplicative. Both of these issues, of course, seem related to the fact that the next friend petitioner who purports to be acting on "Sadiq's" behalf apparently does not know him very well at all, raising serious doubts about the propriety of his serving as a next friend, as expressed in our recent motion. Obviously, we would need to get the identification issues, as well as the outstanding questions about next-friend standing, straightened out before we could entertain any request for a telephone call. Please advise what ISN you believe "Sadiq" has and what is the basis for that belief. In that same vein, if you have information that "Sadiq" has asked you in some fashion to represent him directly, then please advise.

With respect to your request regarding Mr. Turkel, when the issue of a clearance for Mr. Turkel arose earlier in the summer, the CSOs had undertaken the exploration of whether he, as a non-citizen, could qualify. My understanding was that the CSOs' identification for you of one or two Uighur interpreters who were US citizens, and who are currently in the process of obtaining at least interim clearances, obviated the need to continue that exploration. If you wish to raise the matter related to Mr. Turkel again, please contact the CSOs, who may be able to provide some guidance.

Finally, I am informed that your September 8, 2005 filing in Qassim v. Bush (05-497-JR), captioned as "September 8, 2005 Declaration of Sabin Willet" has been determined to be unclassified. You may file it on the public record.

Regards,

Terry M. Henry

Senior Trial Counsel

Civil Division, Federal Programs Branch

U.S. Department of Justice

Tel. 202.514.4107

**EXHIBIT D**

**From:** Henry, Terry (CIV)
**Sent:** Friday, September 30, 2005 6:38 PM
**To:** 'sabin.willett@bingham.com'
**Subject:** Kiyemba v. Bush

Sabin:

I am responding to your e-mail from last evening. As you know, the government has no intention of blocking you from access to any clients on whose behalf you have filed a proper habeas case. There are two issues with respect to your representation of Saddiq Turkestani that need to be resolved. Neither of these issues is insurmountable, and, if the facts are as you represent, it should be a relatively simple matter to get you access to your putative client.

The first issue is the one raised in our outstanding motion for an order to show cause why the case should not be dismissed for lack of next-friend standing. As you know, a habeas case can be brought either pursuant to direct authorization from the client, or through a legitimate next friend. With respect to the next-friend approach, to date, you have not established that Jamal Kiyemba is a legitimate next friend under the standards enunciated in case law. Mr. Kiyemba apparently does not even know Mr. Turkestani's last name; the boilerplate language and accompanying list that you have submitted clearly do not pass muster under the governing standards for who can be a valid "next friend"; and, in any event, Mr. Kiyemba's instrument purports to authorize Clive Stafford Smith, not your firm.

You have also intimated that you have direct authorization from Mr. Turkestani to bring a habeas case on his behalf, which, if true, would obviate the need to rely on the Kiyemba next-friend authorization. You have sent us a translation copy of a letter that Mr. Turkestani purportedly sent to the Secure Facility for delivery to an attorney who is not named on the face of the translation copy you have given us. This letter may well constitute valid direct authorization but, as stated previously, we are unable to reach a conclusion in that regard until we receive a copy of the signed original.

The second issue, which also should not be insurmountable, is that another petition was previously filed on behalf of an Adel Turkestani. GTMO's records reflect only one detainee with the surname Turkestani. When that prior petition was filed, the government reasonably identified that detainee as the Mr. Turkestani you now purport to represent. (A discrepancy in first names is not at all unusual in these cases, as many of the detainees go by multiple first names and/or have numerous aliases.) As such, the government has deemed Mr. Turkestani to be Mr. Clive Stafford Smith's client for the past 8 months, and Mr. Stafford Smith has been given the opportunity to meet with him and to correspond with him through the privileged mail channels. You surmise that "Turkestani" is meaningless as a surname, and that the individual represented by Mr. Stafford Smith must be someone else. It is not impossible that that may be the case, but absent Mr. Stafford Smith bringing a discrepancy to our attention or providing additional identifying detail (which has not occurred over the past 8 months), the government is not in a position to second-guess the surnames given in every petition and engage in detective work to figure out if each detainee sought to be represented is different than the one actually named.

Since you apparently are already working closely with Mr. Stafford Smith, we suggest that you confer with him to find out who he believes he represents as Adel Turkestani. If there was duplication, it would not be at all unusual, as a number of duplicative petitions have been filed in these cases. Moreover, if there was duplication, it will obviate the issue of authorization in Kiyemba and it will be easy for you to have access to Mr. Turkestani; all you will need to do is enter an appearance in the earlier-filed case and sign on to the protective order in that case.

We appreciate that you are eager to meet with Mr. Turkestani. By the same token, I am sure you can appreciate the need to ensure that fundamental jurisprudential standing requirements are met, as well as to avoid the utter chaos that would result if an individual detainee were the subject of dueling habeas petitions brought by different counsel. As soon as the authorization and apparent duplicativeness issues can be resolved, you will have access to your putative client.

As I was preparing to send this e-mail, I received your letter threatening a motion for Rule 11 sanctions. While your letter is grossly offensive and inappropriate, we, too, agree that it would be appropriate to update the court regarding the identification of "Sadiq Doe" as Mr. Turkestani, and we intend to do so, most likely when we submit a response to the motion for reconsideration you have filed in the Kiyemba case. Your accusations that we have lied to the court, however, are outrageous and false. As we have previously pointed out, until just a couple of days ago, the information you provided, including including your numerous references to Bukhari as "Sadiq"'s surname, pointed to different individuals. Until then, we were unable to confirm the identity of "Sadiq Doe," and the representations that we made to the court in our reply brief in support of our motion related to the next-friend standing issue were accurate.

*Terry M. Henry*

10/10/2005

Senior Trial Counsel
Civil Division, Federal Programs Branch
U.S. Department of Justice
Tel. 202.514.4107

10/10/2005

**EXHIBIT E**

**Henry, Terry (CIV)**

| | |
|---|---|
| **From:** | Henry, Terry (CIV) |
| **Sent:** | Friday, October 07, 2005 6:24 PM |
| **To:** | 'sabin.willett@bingham.com' |
| **Cc:** | Katerberg, Robert (CIV) |
| **Subject:** | RE: Kiyemba v. Bush/Saddiq Doe aka Sadeeq Ahmad Turkestani |

Sabin,

Based on the information contained in your last e-mail concerning the circumstances surrounding the Aug. 29, 2005 letter from Saddiq Doe aka Sadeeq Ahmad Turkestani, whom we have identified, as explained in my prior e-mails, as ISN 491, we will consider it as having been established that Mr. Turkestani desires representation by your firm, subject to the condition that we are able to inspect the original or a copy of the letter as soon as may be practicable. It remains possible that Mr. Turkestani is one and the same as the Adel Turkestani in the Sliti case. You assert that the two are not the same and that Adel Turkestani is a detainee not held in Camp Iguana, but as I've mentioned, GTMO's records reflect only one detainee with the surname or alias Turkestani, so, from our perspective, the matter is far from clear.

In any event, we are willing to begin the normal process for scheduling a visit by you with Mr. Turkestani subject to several caveats or conditions : First, as noted above, we want to be able to inspect the original of the authorization letter or a copy of it as soon as may be practicable, presumably once the privilege team completes its review.

Second, you must promptly undertake steps to amend the Kiyemba petition to convert it to a direct petition on behalf of Mr. Turkestani-- you have previously indicated your willingness to do this. It is imperative from our perspective that there be a properly filed lawsuit, with the protective order entered in it, prior to any visit or phone call with Mr. Turkestani, i.e., the amendment must be in effect by the time of your visit or call. (Alternatively, you could file a new direct petition on Mr. Turkestani's behalf and seek to have the protective order entered in that case.)  We have attempted consistently to require such of all habeas counsel who have requested visits with detainees.

Third, you need to have a cleared translator for your visit with Mr. Turkestani. You have mentioned you want to use an Arabic translator for the visit.

And, fourth, we reserve all of our rights if it is ultimately determined that ISN 491 and Adel Turkestani in Sliti are one and the same person.

Sincerely,

Terry M. Henry
Senior Trial Counsel
Civil Division, Federal Programs Branch
U.S. Department of Justice
Tel. 202.514.4107

-----Original Message-----
From: sabin.willett@bingham.com [mailto:sabin.willett@bingham.com]
Sent: Wednesday, October 05, 2005 2:44 PM
To: Henry, Terry (CIV)
Cc: dl.zzmgitmohabeas@bingham.local; bolshansky@ccr-ny.og
Subject: Kiyemba v. Bush/Saddiq Doe aka Sadeeq Ahmad Turkestani

Dear Terry:

My colleague Susan Baker Manning has been to the secure facility and has learned additional information about our client Saddiq's letter (English translation  -- unclassified -- attached).  The original of the letter, which is in Arabic and at the secure facility, contains my handwritten notation and the date August 29, 2005. (Please note -- the original of the letter has not been unclassified and so I cannot send it to you).

Piecing this together, it appears that the following is the case:

1.    I visited Abu Bakker Qassim in Camp Iguana on the afternoon of August 29, 2005.

2.    Saddiq was in Iguana on the same day.  Based on physical description, I believe I saw him.  Also, I am aware that Saddiq, Abu Bakker and Adel Abdul Hakim all had lunch together after my morning meeting with Adel.

3.    In the afternoon, Abu Bakker gave me several documents in Uighur or Arabic.  (The Uighur documents are written in Arabic characters).  One of these was the original of Saddiq's letter.  This was during a meeting in which he told me that Saddiq wanted Bingham McCutchen to act as his counsel and represent him in the habeas litigation, and I in turn advised that we had already filed for Saddiq.  However, I did not realize at the time that one of the documents was a letter from Saddiq.

4.    I numbered and initialed my notes and these documents and gave them all to the Navy Chief.

5.    They were delivered to the SF.

6.    On Sept. 8, I visited the SF.  On or about that date all of the August 29 notes and materials from the client were submitted to the CSOs.  On or about that date my handwritten notes were unclassified.  However, the  Arabic and Uighur documents were still being reviewed by the  Privilege Team .

7.    At some later point  the original of Sadiq's letter was placed in our file.  This would have been the week of Sept. 19-23.  We then had it translated , and the translation (attached, in redacted form) was unclassified.

Two things follow from this:

1.    This should clear up any concern you may have as to whether Saddiq  Doe, petitioner in Kiyemba, truly desires Bingham to represent him.

2.    Statements we have made to the court regarding the apparent age of Saddiq's letter now appear to be inaccurate.  This will promptly be corrected.

Accordingly, I renew my request that you immediately authorize our visit to meet Saddiq.

Very truly yours,

Sabin


==============================================================================
Bingham McCutchen LLP Circular 230 Notice:   To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.
==============================================================================

| Tracking: | Recipient | Read |
|---|---|---|
| | 'sabin.willett@bingham.com' | |
| | Katerberg, Robert (CIV) | Read: 10/07/2005 6:27 PM |