IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMAL KIYEMBA, *et al.*, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 05-CV-01509 (RMU) |
| ) | |
| GEORGE W. BUSH, ) | |
| President of the United States, ) | |
| *et al.,* ) | |
| ) | |
| Respondents. ) | |

**RESPONDENTS' OPPOSITION TO (1) PETITIONERS' MOTION FOR LEAVE TO FILE SURREPLY TO RESPONDENTS' REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED FOR LACK OF PROPER "NEXT FRIEND" STANDING AND (2) PETITIONERS' MOTION FOR RECONSIDERATION OF SEPTEMBER 13, 2005 ORDER**

Respondents hereby oppose (1) petitioners' motion for leave to file a surreply (dkt. no. 17) to respondents' reply in support of their motion for order to show cause why this case should not be dismissed for lack of proper "next friend" standing ("Mot. for Leave") and (2) petitioners' motion for reconsideration of the Court's September 13, 2005 Order (dkt. no. 14) ("Mot. for Recon."). Because both motions involve the same or related erroneous assumptions and accusations and pertain to the issue of how this Guantanamo Bay detainee habeas case should proceed, respondents address both motions in this combined opposition memorandum.

Petitioners' motion for leave to file a proposed surreply is based on petitioners' counsel's unfounded accusation that a surreply is needed in order for petitioners to address allegedly "false statements" and "knowing deceptions" by respondents in their reply brief (dkt. no. 10) supporting their motion for an order to show cause why this case should not be dismissed for lack of proper "next friend" standing or, alternatively for a stay. See Mot. for Leave at 1.

Petitioners' counsel accuse the government of failing to inform the Court that putative petitioner "Saadiq Doe" has been classified by a Combatant Status Review Tribunal ("CSRT") as "no longer an enemy combatant" ("NLEC").  Petitioners' motion for reconsideration of the Court's September 13, 2005 Order which denied petitioners' motion for an order to show cause and granted a stay (dkt. no. 8) is similarly based on the status of "Saadiq Doe" as an NLEC, which, petitioners argue, justifies lifting the stay and requiring factual returns for all petitioners in the case.

As explained below, however, no false statements were made in the government's reply brief in support of their motion challenging "next friend" standing and seeking a stay because at the time of the filing of the reply brief, the identity of the "Saadiq Doe" petitioner had not been established.  The identity of petitioner "Saadiq Doe" was established only after the filing of the reply brief, based on information not supplied by petitioners' counsel until that time.  Thus, there is no reason to grant petitioners leave to file their proposed surreply, the overarching purpose of which is merely to accuse the government, unfairly and falsely, of making misrepresentations to the Court.  Indeed, the proposed surreply is a "scandalous" matter that unfairly and improperly casts a derogatory light on respondents, cf. FED. R. CIV. P. 12(f) (permitting striking of pleadings), and leave to file it on the record should be denied.  Further, though the particular identity of "Saadiq Doe" has now been established, his status as an NLEC does not cure the lack of standing of the alleged next friend petitioner in this case (detainee Jamal Kiyemba) that warranted respondents' motion for an order to show cause.

In addition, the status of "Saadiq Doe" provides no basis to reconsider the previously entered stay in this case so as to require factual returns and, presumably, other proceedings for

all petitioners, as petitioners appear to request.  The issues on appeal in the <u>Khalid</u> and <u>In re</u>
<u>Guantanamo Detainee Cases</u>,[1] touch the core of the issues involved in this case, both for the
seven identified petitioners in this case who have been classified by CSRTs as "enemy
combatants" just like petitioners in the <u>Khalid</u> and <u>In re Guantanamo Detainee Cases</u>, and for the
one identified NLEC petitioner, "Saadiq Doe,"[2] thereby warranting a stay.  And, in any case, a
stay of factual returns and other such proceedings is appropriate where respondents' motion for
an order to show cause related to "next friend" standing remains pending.

## BACKGROUND

As discussed above, the primary basis underlying petitioners' counsel's motions is their
accusation that the government misrepresented facts when, in its September 22, 2005 reply brief
in support of its "next friend" standing motion, it stated, "of petitioners whom respondents have
been able to arguably identify as of this date, all are held as enemy combatants," Resps' Reply
(dkt. no. 10) at 12 n.15.  Counsel charge that at the time the reply brief was filed, the government
had established the identity of petitioner "Saadiq Doe" as an NLEC and withheld that
information from the reply.  <u>See</u> Mot. for Leave at 1; Mot. for Recon. at 1.  Counsel's
accusations are false and unfair.

The petition in this case was filed on August 1, 2005, with Jamal Kiyemba, a
Guantanamo detainee, acting as alleged "next friend" for nine other Guantanamo detainees.

---

[1] <u>See</u> <u>Khalid v. Bush</u>, <u>Boumediene v. Bush</u>, Nos. 04-CV-1142 (RJL), 04-CV-1166 (RJL),
355 F. Supp. 2d 311 (D.D.C. 2005), <u>appeals docketed</u>, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2,
2005); <u>In re Guantanamo Detainee Cases</u>, No. 02-CV-0299, <u>et al.</u>, 355 F. Supp. 2d 443 (D.D.C.
2005), <u>appeal on petition for interlocutory appeal</u>, No. 05-5064 (D.C. Cir. Mar. 10, 2005).

[2] One petitioner in this case remains to be identified.

Each of the putative petitioners, other than the alleged next friend, were described by first name only and as Chinese citizens of Uighur ethnicity.   Petition ¶ 3.  The government then undertook, as in all Guantanamo detainee habeas cases, the process of attempting to match the provided names and nationality information with individuals detained at Guantanamo.

Identifying "Doe" petitioners as actual detainees at Guantanamo is far from straightforward, however.  Most of the detainees have foreign language names that have to be transliterated, and many have multiple aliases.  Fragments of purported identifying information that may be presented by counsel may not be unique in nature (*e.g.*, physical appearance or common first name); may be transitory (*e.g.*, camp location in the past); or may be contradictory of other information provided, *i.e.*, it may point to multiple, different individuals.  The government makes best efforts to identify putative petitioners, but is not in a position to divine the identity of a "Doe" petitioner counsel purports to represent when incomplete or conflicting information is provided.

On August 17, 2005, petitioners' counsel filed a motion for an order to show cause (dkt. no. 2), and on August 18, 2005, the government filed its own Motion for Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing Or, In the Alternative, to Stay Proceedings Pending Related Appeals and for Continued Coordination, and Memorandum in Opposition to Petitioners' Motion for Order to Show Cause (dkt. nos. 3, 4), demonstrating that no showing had been made in the case establishing that the alleged "next friend" Kiyemba satisfied the requirements for next friend standing set forth in Whitmore v. Arkansas, 495 U.S. 149, 163-64 (1990), namely: (1) the inability of the detainees for whom habeas relief is sought to challenge or arrange for the challenge of the legality of their detention

themselves; and (2) a significant relationship between the purported "next friend" and each

detainee to show that the "next friend" is truly dedicated to each detainee's best interests.

Petitioners' counsel filed an opposition to the motion on September 12, 2005 (dkt. no. 7), and on

September 13, 2005, the Court entered its Order, among other things, denying petitioners'

motion for an order to show cause and staying the case (dkt. no. 8). On September 22, 2005,

respondents filed their reply in support of their motion regarding "next friend" standing (dkt. no.

10).

        Meanwhile, between late August and mid-September, 2005, petitioners' counsel provided

further information regarding the identity of at least one of the putative petitioners through e-

mails to respondents' counsel or through court filings. First, petitioners' counsel claimed that

petitioner "Saadiq Doe" was, in fact, a Saudi national or former resident, of Uighur heritage,

who might be known as "Saddiq Al Bukhari" and classified as an NLEC. See Declaration of

Terry M. Henry ("Henry Decl.") Exs. A, B (Aug. 31, 2005 e-mail from Susan Manning; Sept. 1,

2005 e-mail from Sabin Willett). Counsel also informed respondents that they believed that the

internment serial number ("ISN") of "Saadiq Doe" at Guantanamo was ISN 491 and that he had

been in a certain camp at Guantanamo some two months before. See Sept. 8, 2005 Declaration

of Sabin Willett ¶¶ 11-12.

        The piecemeal information regarding the identity of "Saadiq Doe" provided by

petitioners' counsel from the inception of the case up to that time, however, was internally

inconsistent, i.e., it did not point to one particular individual detainee. For example, one detainee

existed who used the name "al Bukhari" and was a Saudi national of Central Asian heritage –

but that detainee was classified as an "enemy combatant," not as an NLEC. There was also a

detainee with ISN 491 who claimed to be a Saudi of Uighur heritage who had a first name

similar to "Saadiq" –  but that detainee, to the knowledge of the Department of Defense

("DoD"), did not use the name "al Bukhari."  On top of this, moreover, that particular detainee

had already been identified for months by DoD as likely the petitioner "Adel Turkestani" in

another Guantanamo case brought by other counsel and pending before Judge Leon, Sliti v.

Bush, No. 05-CV-0429 (RJL).  The detainee was the only one using the surname "Turkestani"

who was of Chinese or Uighur origin, consistent with the description of the petitioner in Sliti,

though the first name "Adel" was not associated with that detainee in DoD's records.  See Henry

Decl. ¶ 7.  Accordingly, in the mid-September time frame, it was unclear and indeterminate

which of the two detainees was the "Saadiq Doe" referenced in the petition, especially in light of

the fact that a petition appeared to be already pending in Sliti on behalf of the detainee with ISN

491.  Thus, on September 22, 2005, when respondents filed their reply brief in support of their

motion regarding "next friend" standing (dkt. no. 10), they accurately stated that the petitioners

in the case who had been identified were held as enemy combatants.

Subsequently, on September 28, 2005, petitioners' counsel *for the first time* informed

respondents' counsel that "Saadiq Doe" used the names, "Saddiq Ahmad, Turkestani" or

"Saddiq Ahmad al Turkestani," based on a letter counsel purportedly had received from the

detainee directly requesting and authorizing representation and suit by petitioners' counsel.  See

Henry Decl. Ex. C (Sept. 28, 2005 e-mail from Sabin Willett).  This information was of

transformative significance in that it superceded the earlier information that the detainee's last

name was "al Bukhari," removed the element of internal inconsistency, and enabled the

government to conclude with reasonable certainty that "Saadiq Doe" was, in fact, the detainee

with ISN 491, the only detainee using the surname "Turkestani," who also fulfilled most of the other identifying criteria supplied by petitioners' counsel.  See id. Ex. C (Sept. 29, 2005 e-mail to Sabin Willett), Ex. D (Sept. 30, 2005 e-mail to Sabin Willett).

Based upon this recently supplied information, including the purported direct request from "Saadiq Doe" to petitioners' counsel for representation, respondents have proposed to petitioners' counsel that the petition in this case be amended to convert it from a "next friend" petition to a direct petition, at least insofar as it is brought on behalf of "Saadiq Doe."  See id. Ex. E (Oct. 7, 2005 e-mail to Sabin Willett).  This would eliminate the issue of the defective "next friend" standing with respect to the claims on behalf of "Saadiq Doe," such that a lawsuit exists properly on "Saadiq Doe"'s behalf and counsel visits with him can go forward.[3]

## ARGUMENT

### I.    LEAVE FOR PETITIONERS TO FILE A SURREPLY IN OPPOSITION TO THE NEXT FRIEND STANDING MOTION SHOULD BE DENIED.

Petitioners' motion for leave to file their proposed surreply in opposition to respondents' motion related to next friend standing should be denied.  Petitioners' counsel claim that a surreply is needed to correct the alleged "false statements" and "knowing deceptions" in respondents' September 22, 2005 reply brief.  See Mot. for Leave at 1; id. Attachment (Proposed Surreply) at ¶¶ 1-2.  As demonstrated above, however, the passage in question in respondents' reply brief was neither false nor a "deception," but was an accurate reflection of the state of affairs as of the date of filing with respect to the identification of the petitioners in this case.  The

---

[3] Once the petition is amended, however, the defective "next friend" standing of petitioner Kiyemba will remain an outstanding issue with respect to petitioners other than "Saadiq Doe," as discussed in respondents' motion for an order to show cause (dkt. no. 3).  Also, of these remaining petitioners, one has yet to be identified and the others are all held as "enemy combatants."  See Henry Decl. ¶ 8.

identity of petitioner "Saadiq Doe" was definitely established only after the filing of the reply

brief, based on information that was not supplied by petitioners' counsel until that time.  Thus,

there is no reason to grant petitioners leave to file their proposed surreply, the overarching

purpose of which is merely to accuse the government, unfairly and falsely, of making

misrepresentations to the Court.   Furthermore, petitioners made the same sorts of assertions in

their initial brief opposing respondents' next friend standing and stay motion, <u>see</u> Opp. to Mot.

for Order to Show Cause Why Case Should Not be Dismissed for Lack of Proper "Next Friend"

Standing (dkt. no. 7) at 3, 4-5, 8-10 (arguing that government knows identities of petitioners

including "Saadiq Doe" and any contrary claim is false), and there is no reason to permit

petitioners' counsel to load and encumber the docket in this case with further unfounded

accusations.

In this same vein, leave to file the proposed surreply should not be granted due to the

impertinent and scandalous nature of the surreply.  Federal Rule of Civil Procedure 12(f) permits

the Court to strike "impertinent[] or scandalous" matter from pleadings.  As Judge Friedman of

this Court has noted, "scandalous" allegations involve those that "'unnecessarily reflect[] on the

moral character of an individual or state[] anything in repulsive language that detracts from the

dignity of the court,'" <u>Pigford v. Veneman</u>, 215 F.R.D. 2, 4 (D.D.C. 2003) (quoting 2 Moore's

Federal Practice § 12.37[3] at 12-97 (3d ed. 2002)), as well as those that "cast 'a cruelly

derogatory light on a party or other person,'" 215 F.R.D. at 4 (quoting <u>In re 2TheMart.com Inc.</u>

<u>Securities Litigation</u>, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000)), or "'improperly cast[] a

derogatory light'" on other litigants, 215 F.R.D. at 4 (quoting 5A Charles Alan Wright &

Arthur R. Miller, Federal Practice & Procedure § 1382 (2d ed. 1995)).  While the

Federal Rules of Civil Procedure do not explicitly apply to habeas cases and this Court, in other contexts, previously has not considered filings such as the proposed surreply to be "pleadings" within the scope of Rule 12(f), see Naegele v. Albers, 355 F. Supp. 2d 129, 142 (D.D.C. 2005) (Urbina, J.), principles applicable under Rule 12(f) would, by analogy, warrant denial of leave to place the offending surreply on the record in this case. The allegations in the proposed surreply that the government has engaged in "knowing and deliberate falsehood," deception, and "blatant and plainly intentional" misrepresentation, Mot. for Leave Attachment (Proposed Surreply) at ¶¶ 1-3, 8, at the very least "improperly cast[] a derogatory light" on government counsel.[4] This is true given the facts involved with respect to the identification of "Saadiq Doe," as well as the fact that government counsel are responsible for defending and dealing on an ongoing basis with issues raised in district court in an extraordinary and taxing number of Guantanamo detainee habeas cases, more than 150 habeas cases involving scores of opposing counsel and more than 250 Guantanamo detainees. Accordingly, leave to file the surreply should be denied.[5]

---

[4] The proposed surreply also erroneously accuses the government of withholding a letter from "Saadiq Doe" to petitioners' counsel for "months." See Mot. for Leave, Attachment (Proposed Surreply) at ¶ 5. Petitioners' counsel have since admitted that the letter was not withheld at all, but rather was written by the petitioner and gathered by petitioners' counsel himself during his last trip to Guantanamo at the end of August. See Henry Decl. Ex. E (Oct. 6, 2005 e-mail from Sabin Willett).

[5] In all events, though the particular identity of "Saadiq Doe" has now been established, his status as an NLEC does not cure the lack of standing of the alleged next friend petitioner in this case, as argued in respondents' motion for an order to show cause on the issue. (Of course, respondents have proposed to petitioners' counsel that the petition in this case be amended to reflect the direct authorization by "Saadiq Doe" of a petition on his behalf, thereby resolving any problem with the standing of the purported next friend with respect to the claims on behalf of "Saadiq Doe." See supra at 7.)

- 9 -

## II.    PETITIONERS' REQUEST FOR RECONSIDERATION OF THE SEPTEMBER 13, 2005 ORDER SHOULD BE DENIED.

A court should reconsider an interlocutory order only where "justice requires" it, in the sense that reconsideration may be appropriate when the court has "'patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court.'" See Singh v. George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (Lamberth, J.) (citing Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004)).  "Errors of apprehension may include a Court's failure to consider 'controlling decisions or data that might reasonably be expected to alter the conclusion reached by the court.'" 383 F. Supp. 2d at 101 (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).  Importantly, "'the district court's discretion to reconsider a non-final ruling is, however, . . . subject to the caveat that where litigants have once battled for the court's decision, they should not be required, nor without good reason permitted, to battle for it again.'" 383 F. Supp. 2d at 101 (citing In re Ski Train Fire, 224 F.R.D. 543, 546 (S.D.N.Y. 2004) (internal quotation marks and citation omitted)).

Petitioners, in their motion to reconsider this Court's September 13, 2005 Order granting a stay and denying petitioners' earlier motion for an order to show cause, do not attempt to address the standard for a motion for reconsideration, but instead opt to address the stay and factual return issues as though they were before the Court *de novo*.  In any event, the reconsideration of the September 13, 2005 Order petitioners seek is not warranted.

In their motion for reconsideration, petitioners assert, in sum, that the status of the "Saadiq Doe" petitioner in the case as an NLEC means that (1) all of the other petitioners in the

case must also be NLECs, and (2) in such circumstances, the pending appeals in Khalid and In re

Guantanamo Detainee Cases would not affect petitioners' claims and an order to show cause in

petitioners' favor, requiring factual returns, should issue.  See Mot. for Recon. §§ B.-E.  Of

course, as explained above, only one of the arguably identified putative petitioners in this case,

"Saadiq Doe," is an NLEC;[6] the others have been determined by CSRTs to be enemy

combatants.[7]  Aside from that fact, however, respondents addressed the issue of the possibility

that a petitioner might be an NLEC in the portion of their motion for an order to show cause

regarding next friend standing addressing the propriety of a stay in the case, noting that such

status of a petitioner would not affect the propriety of a stay.  See Respondents' Motion for

Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend"

Standing Or, In the Alternative, to Stay Proceedings Pending Related Appeals and for Continued

Coordination, and Memorandum in Opposition to Petitioners' Motion for Order to Show Cause

(dkt. nos. 3, 4) at 19 n.18.  Thus, respondents' motion raised the very issue petitioners seek to

address in their motion for reconsideration; petitioners' opportunity and obligation to respond to

and address the matter, however, was during normal briefing, through their opposition to

respondents' motion.  Petitioners' attempt now to brief the issue anew – in effect, to take a

second bite at the apple – is not a legitimate use of a motion to reconsider.  Cf. In re Foster, 283

_____

[6] As noted supra, one putative petitioner in the case remains unidentified by respondents.

[7] Petitioners inexplicably rely upon a factual return filed in Kabir v. Bush, No. 05-CV-1704 (JR), see Mot. for Recon. at 6-9; id. Manning Decl., Ex. F, to support their assertion that all of the petitioners in this case are NLECs.  That factual return establishes, however, that the Uighur petitioner at issue in Kabir is being detained as an "enemy combatant."  Id.  Manning Decl., Ex. F.  Petitioners also rely upon a variety of press reports that either accurately note that only *some* Uighur detainees were determined to be NLECs, or inaccurately conflate NLEC designations with separate discretionary decisions by DoD to attempt to arrange for the ultimate release of detainees held as enemy combatants in appropriate circumstances.

B.R. 917, 920 (Bankr. E.D. Wis. 2002) (explaining that purpose of motion for reconsideration under FED. R. CIV. P. 60(b) is "not to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been previously raised"); see Singh, 383 F. Supp. 2d at 101. This alone is reason to deny petitioners' motion to reconsider the September 13, 2005 Order.

In any event, that one identified petitioner in this case is classified an NLEC does not call into question the propriety of the Court's action denying petitioners' motion for an order to show cause in its September 13, 2005 Order.[8] As noted in respondents' motion for an order to show cause concerning next friend standing and for a stay, any issue of the substantive legal rights of an alien, wartime detainee-petitioner under the Constitution, treaties, or statutes regarding his detention, as well as the powers provided the courts through the habeas statute with respect to wartime detentions, would be the subject of and affected by resolution of the pending appeals in Khalid and In re Guantanamo Detainee Cases.[9] Such issues, thus, are properly the subject of a

---

[8] With respect to all detainees accorded NLEC status through CSRTs, the government intends to release them as soon as a suitable country for transfer can be found that, consistent with United States policy, avoids a situation where petitioners would be returned to a country where it is more likely than not that they would be tortured. Cf. Declaration of Deputy Assistant Secretary of Defense for Detainee Affairs Matthew C. Waxman dated June 2, 2005 ¶ 6, Declaration of Ambassador Pierre-Richard Prosper dated March 8, 2005 ¶ 4 (submitted in various cases before the Court, including as Exhibits 2 and 3 to Respondents' Opposition to Motion for Temporary Restraining Order and Preliminary Injunction (dkt. no. 13) in Hatim v. Bush, No. 05-CV-1429 (RMU)). A Uighur NLEC such as "Saadiq Doe" presents a situation where the detainee cannot be repatriated to China due to concerns over potential mistreatment; efforts are underway, however, to locate a suitable country for transfer. During the interim period, NLECs are held in the least restrictive conditions available.

[9] Petitioners claim that the government cannot have authority to detain an NLEC pending necessary arrangements for an appropriate destination country. See Mot. for Recon. § A. To the contrary, however, the Executive's authority regarding its initial wartime detention of enemy combatants and the current custody pending resettlement of any such detainee ultimately declared an NLEC, is straightforward. The Executive's power to wage war and detain suspected

stay, and this is true regardless of whether an individual's detention is expected to continue or respondents have already determined to release him as soon as the necessary arrangements for an appropriate destination country can be made.[10]

Furthermore, the September 13, 2005 Order denying petitioners' motion for an order to show cause is appropriate in light of the pendency of respondents' motion challenging the standing of the so-called "next friend" in this case. As noted in that motion, the absence of a showing of proper next friend standing, raising serious question regarding the existence of jurisdiction, dictates against the commencement of substantive proceedings in this case, such as the granting of petitioners' motion for an order to show cause.

---

enemy combatants is firmly established. See, e.g., Hamdi v. Rumsfeld, 124 S. Ct. 2633, 2640 (2004) (explaining that "[t]he capture and detention of lawful combatants and the capture, detention, and trial of unlawful combatants, by 'universal agreement and practice,' are 'important incident[s] of war'" (quoting Ex parte Quirin, 317 U.S. 1, 28 (1942))). The Executive's power to detain a suspected enemy combatant necessarily includes the authority to wind up that detention in an orderly fashion after a detainee has been determined to no longer be an enemy combatant or after hostilities have ended. Indeed, historically, the United States Military or its allies have continued the detention of prisoners of war following the end of major conflicts to which the U.S. has been a party in order to properly resolve repatriation issues or effectuate resettlement where repatriation was not appropriate due to humanitarian or other concerns. See Christiane Shields Delessert, Repatriation of Prisoners of War to the Soviet Union During World War II: A Question of Human Rights, in World in Transition: Challenges to Human Rights, Development and World Order 80-81 (Henry H. Han ed., 1979) (noting delays in repatriation of prisoners after end of World War II and Korean War); Final Report to Congress on the Conduct of the Persian Gulf War, Appendix O, at 708 (April 1992) (available at http://www.ndu.edu/library/epubs/cpgw.pdf) (noting delays in return of prisoners after Persian Gulf War).

[10] The fact that an NLEC is, by virtue of that status, already slated for release, independent of the outcome of this litigation, would constitute, if anything, an additional factor weighing in favor of a stay. The pendency of appeals that are likely to determine the legal landscape going forward warrants a stay in *any* Guantanamo detainee habeas case, but if there is any such case in which it would be appropriate to lift the stay and forge ahead with plenary proceedings, surely it is not one in which respondents are already engaged in efforts to bring about a petitioner's release.

- 13 -

For these reasons, the Court's September 13, 2005 Order should not be reconsidered or modified as petitioners request.

## **CONCLUSION**

For the reasons stated, the Court should deny petitioners' motion for leave to file a surreply in opposition to respondents' motion for an order to show cause related to next friend standing, as well as petitioners' motion for reconsideration of the Court's September 13, 2005 Order.

Dated: October 11, 2005                    Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

DOUGLAS N. LETTER
Terrorism Litigation Counsel

     /s/ Terry M. Henry
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Room 7144
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents