IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABU BAKKER QASSIM, et al., <br><br> Petitioners, <br><br> v. <br><br> GEORGE W. BUSH, et al., <br><br> Respondents. | Civil Action No. 05-497 (JR) |

Pursuant to 28 U.S.C. § 1746, I, MICHAEL I. BUMGARNER, hereby declare:

1. I am a Colonel in the United States Army, with 24 years of active duty service. I currently serve as Commander, Joint Detention Group ("JDG") of Joint Task Force-Guantanamo, Guantanamo Bay, Cuba ("JTF-GTMO"). I have served in that position since April 2005. The JDG is responsible for JTF-GTMO detention operations. This detention mission is done in a humane manner that protects the security of both detainees and security personnel at GTMO. In my capacity as Commander, I am responsible for all aspects of the operations.

2. All detainees receive adequate shelter, food, and water at all times. Detainees are housed in areas providing adequate shelter from the elements and with adequate ventilation. They have access to potable drinking water and receive at least three meals per day that meet cultural dietary requirements. Detainees are provided with means to maintain adequate hygiene, including opportunities for showers and exercise.

3. Just over 500 individuals are currently detained at GTMO. The operational facilities for housing detained persons at JTF-GTMO are all designed for maximum security with the exception of Camp 4. Camp 4 is a medium security facility.

4. Detainees housed in Camp 4 are not confined to a one-man cell. Rather, they live in a communal living arrangement, sharing a 10-man bay with other detainees, and can move about

freely. This communal living arrangement provides the detainees with access to exercise yards for playing soccer, volleyball, and other recreational activities seven to nine hours per day. Other privileges include access to books distributed through the Detainee Librarian, games (including checkers and chess), playing cards, bottled water, prayer rugs, and canvas shoes.

5. Detainees in Camp 4 eat their meals together, typically on picnic benches under an awning, within their bay's exercise area. The meals are served family-style and the detainees feed themselves. Camp 4 residents are also provided weekly movies and special food items. Those that are designated as No Longer Enemy Combatants (NLECs) are not locked into their bays at night as most detainees are, but instead, are allowed access to their bays' compound area/exercise yard.

6. Abu Bakker Qassim and A'del Abdu Al-Hakim are both housed in Camp 4.

7. At GTMO, Camp 4 is currently the best practicable option available and for holding detainees who have been designated as NLEC and are pending release.

8. I base this on several important considerations. First, Guantanamo Bay is a secure military facility. Given the sensitive nature of the mission, access to and movements within the base are controlled. Housing the detainees in some other facility outside of the camps, even if possible would require 24-hour escorts by a security detail. Providing the manpower and resources to cover such a mission would significantly detract from other operations.

9. Second, the concept of housing the detainees outside of the camps is problematic, even with respect to those deemed NLECs and subject to release. Safety and security considerations preclude housing detainees amongst assigned personnel and visitors.

10. A determination that a detainee is an NLEC does not equate to a determination that the detainee poses no threat to himself or others. For example, due to the nature of the facilities at

GTMO, even if an NLEC were not housed in a camp, his safety and security would require full additional staffing by guards, medical, and other support staff. If an NLEC were not housed in the camps, the resources provided for them by the camp, to include routine and emergency medical services, food services, and humanitarian care, would be greatly compromised. Camp staff would not be in a position to respond if the detainee threatened harm to himself or others or was threatened with harm.

11. In the case of the detainees who are NLECs, significant uncertainty exists as to which country they will ultimately be released. I have concern, based upon my interactions with detainees, that the potential exists for detainees to act out and harm themselves or others if unsatisfied with the final decision concerning their country of release. Housing the detainees amongst the population at Guantanamo Bay, even under constant guard, would unnecessarily jeopardize the safety and security of the detainees and personnel at the base.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: July 29, 2005

MICHAEL I. BUMGARNER