IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| A JAMAL KIYEMBA, as Next Friend of ABDUSABUR DOE, *et al.*,<br><br>    Petitioners/Plaintiffs,<br><br>v.<br><br>GEORGE W. BUSH, *et al.*,<br><br>    Respondents/Defendants. | Case No. 1:05-cv-01509-RMU |

**PETITIONER SADDIQ AHMAD TURKISTANI'S REPLY IN SUPPORT OF MOTION FOR IMMEDIATE PRODUCTION OF THE BODY AND GRANT OF WRIT, OR, IN THE ALTERNATIVE, GRANT OF INTERIM RELEASE**

The most remarkable thing about the government's position in this case is that it thinks *actual innocence* is irrelevant to the legality of a man's imprisonment. The United States government has imprisoned Petitioner Saddiq Ahmad Turkistani for nearly four years, and it continues to imprison him even though he has never been accused of any crime. On the contrary, the government's own Combatant Status Review Tribunal ("CSRT") has conclusively determined that Mr. Turkistani is not an "enemy combatant." But the government thinks this does not matter. It still incarcerates Mr. Turkistani in one of the most oppressive, isolated and restrictive prisons in the world. And, the government argues, Mr. Turkistani's innocence has nothing to do with whether he should be released, or with whether his *habeas* challenge to his imprisonment should be stayed. *See* Opp. at 2.

The government could not be more wrong.

**A.    THE PENDING APPEALS BEFORE THE D.C. CIRCUIT DO NOT ADDRESS THE LEGALITY OF THE GOVERNMENT'S IMPRISONMENT OF NON-ENEMY COMBATANTS.**

As discussed at length in Petitioners' Motion, it is simply not true that appeals pending before the D.C. Circuit address the same issues in this case. *See* Motion at 5. Contrary to the government's claim, the cases on appeal do address the claims of accused "enemy combatants"

and admitted non-enemy combatants alike. None of the petitioners in the cases on appeal are acknowledged non-enemy combatants, and there was no discussion at all of non-enemy combatants in ether the briefing or at oral argument.

The government cannot continue to imprison Mr. Turkistani because it has no authority whatsoever to do so. *See* Motion at 3-10. The only justification the government has offered the D.C. Circuit for imprisoning men at Guantanamo Bay is the Executive's purported authority to detain "enemy combatants." There is no dispute that Mr. Turkistani is not an "enemy combatant." As discussed in Petitioner's Motion, the government therefore has no authority to imprison him.[1] He must be released.

**B.    THIS COURT HAS THE AUTHORITY TO DIRECT THAT PETITIONER BE BROUGHT TO WASHINGTON, D.C.**

    **1.    Mr. Turkistani does not have to be "admitted" to the United States because he is already in the custody of the United States and held on U.S. territory.**

The government states that "any authority a court possesses under the *habeas corpus* statute to order release of a petitioner *pendente lite* is an inherent attribute of its 'jurisdiction to order release as a final disposition of the action.'" *See* Opp. at 11 (citing *Baker v. Sard*, 420 F.2d 1342, 1343 (D.C. Cir. 1969) (emphasis in original). It, however, incorrectly states that this Court does not have the authority to order "as a final disposition that a non-resident alien be permitted to enter this country from a foreign territory such as Guantanamo Bay, Cuba." *See id.*

The Guantanamo Bay Naval Base is far from being foreign territory. The 1903 Lease Agreement between the United States and Cuba stated that, "the Republic of Cuba consent[ed] that during the period of the occupation by the United States . . . the United States shall exercise *complete jurisdiction and control* over and within [the naval base.]" *See Rasul v. Bush*, 124 S. Ct. 2686, 2690-91 (emphasis added). The Guantanamo Bay Naval Base is U.S. territory in every

---

[1] Although the Government argues that it has the authority to continue to imprison "non-enemy combatants" like Mr. Turkistani as a part of a "wind up" power, no such power in fact exists. *See* Motion at 5-10. Indeed, Judge Robertson has already rejected the Government's "wind up" power claim. *Id*.

essential aspect.

Because the Guantanamo Bay Naval Base is under exclusive U.S. control, Petitioner does not have to be "admitted" into the United States as the government contends. *See* Opp. at 12. Since Petitioner does not need to be "admitted" it is not necessary for him to obtain a visa.

**2.     Mr. Turkistani does not need a visa to enter the continental U.S.**

Moreover, Respondents unequivocal statement that "without a visa . . . an alien is inadmissible and cannot lawfully enter the country," s*ee* Opp. at 12, is plainly wrong. Numerous circuit court decisions have ordered the Immigration and Naturalization Service to admit an alien outside of the United States without the issuance of a visa. *See Mendez v. Immigration & Naturalization Service*, 563 F.2d 956 (9th Cir. 1977) (ordering INS to admit alien into the United States after deportation); *see also Zepeda-Melendez v. Immigration and Naturalization Service*, 741 F.2d 285 (9th Cir. 1984) (federal courts have jurisdiction to review deportation orders of aliens who are not in the United States); *Wiedersperg v. Immigration and Naturalization Service*, 896 F.2d 1179 (9th Cir. 1990); *Newton v. Immigration and Naturalization Service*, 622 F.2d 1193 (3rd Cir. 1980); *Juarez v. Immigration and Naturalization Service*, 732 F.2d 58 (6th Cir. 1984). Even assuming for the sake of argument that Mr. Turkistani is outside of U.S. territory, these cases make it clear that a visa from a consular office is *not* always necessary to enter the United States.

Interestingly, the government fails to discuss *Rasul*. As this Court knows well, the United States Supreme Court held that the habeas corpus statute "confers on the District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention at the Guantanamo Bay Naval Base." *Rasul*, 124 S. Ct. at 2698. The Supreme Court also found "that the statute draws no distinction between Americans and aliens held in federal custody, there is little reason to think that Congress intended the geographical coverage of the statute to vary depending on the detainee's citizenship." *See id* at 2696. The Supreme Court did not limit the federal courts' habeas authority with regard to the production of the petitioner's body. Once such habeas jurisdiction was conferred it was conferred completely. The Supreme Court knew

3

full-well that the petitioners were all detainees at Guantanamo. Knowing that, the Supreme Court still held that the habeas statute did not distinguish between U.S. citizens and aliens at Guantanamo.

Finally, most of the cases cited by the government are inapposite to the Petitioner's situation. The cited cases relate to the immigration process and the rights related to such process. *See* Opp. at 12-15. Petitioner has, however, not requested any immigration benefits nor has he requested that a visa issue to him to enter the United States. Yet, the government cites cases setting the parameters and limits of the immigration process, which do not affect the Petitioner's current status. Petitioner has not requested immigration relief, but instead, relief under habeas corpus, the exact relief accorded to him and other detainees by the U.S. Supreme Court in *Rasul*.

C.  **PETITIONER HAS DEMONSTRATED EXTRAORDINARY CIRCUMSTANCES AS REQUIRED TO ALLOW INTERIM RELEASE**

Respondents contend that Mr. Turkistani is "[f]ar from demonstrating 'extraordinary or exceptional circumstances'" that would entitle him to interim release. *See* Opp. 16-17. This argument is so absurd that only a brief response is warranted. Mr. Turkistani's circumstances could not be more exceptional. He has been imprisoned by the United States for nearly four years even though he has never committed or been charged with a crime. What distinguishes Petitioner's situation from the vast majority of habeas cases is that he has been found not to be an "enemy combatant"—that is, he has been found innocent—yet he is still being imprisoned.[2] This is the epitome of extraordinary or exceptional circumstances. Mr. Turkistani should be released.

---

[2]  The Government makes the offensive claim that imprisonment at Guantanamo, "where his material needs are met, and where numerous amenities are provided," is better for Mr. Turkistani than freedom. *See* Opp. at 18-19. Nonsense. Of course Mr. Turkistani will not be "turned out into the streets." Any interim release will be subject to appropriate conditions as determined by this Court. As the government well knows, there is a Uighur community in the Washington D.C. area that has already shown that it is willing to take in Uighur men freed from Guantanamo. At any hearing on the appropriate conditions governing parole, we will be prepared to show that Mr. Turkistani will be well provided for during interim parole in the Washington D.C. area.

D. **THE GOVERNMENT OFFERS NO EVIDENCE WHATSOEVER THAT IT IS TRYING TO ARRANGE MR. TURKISTANI'S RELEASE—OR, EVEN IF IT IS, THAT THERE IS ANY REALISTIC PROSPECT OF TIMELY RELEASE**

When it comes to whether or not Mr. Turkistani might *ever* be released and resettled to a third country, the government effectively tells this Court to mind its own business. *See* Opp. at 17-18. But whether the government has any realistic prospect of resettling Petitioner—or whether it will simply imprison an innocent man indefinitely—is exactly this Court's business.

The government asserts that its efforts "to pursue resettlement options for NLEC detainees such as petitioner have been diligent, ongoing, and multifaceted, and have included outreach to appropriate governments and organizations." Opp. at 18. The government offers not a shred of evidence that would allow the Court to evaluate this claim. The government does not say whether it has made any effort to resettle Mr. Turkistani specifically (as opposed to non-enemy combatants generally).[3] The government does not say what it has done as part of its allegedly "diligent" efforts. Nor does the government say how its efforts have been received by other countries.[4] Nothing in the government's opposition gives any hope for Mr. Turkistani's timely release—or indeed that the government has any realistic prospect of ever finding a country to which he could be released.

---

[3]    Mr. Turkistani may be differently situated than the other known "non-enemy combatants" currently imprisoned at Camp Iguana. As described in the Motion, Mr. Turkistani was born in Saudi Arabia to Uighur refugee parents. Counsel are informed and believe that although Mr. Turkistani was formerly a resident of the kingdom, he is not a citizen of Saudi Arabia. We are further informed and believe that Saudi Arabia is unwilling to accept Mr. Turkistani back into the kingdom. Although we cannot be sure because counsel have not yet been able to meet with Mr. Turkistani, he may, in effect, be stateless. In that situation, he may well be in a very different situation than the "other non-enemy combatant" detainees who are still imprisoned at Guantanamo Bay.

[4]    Although the government does not provide any information to the Court, Ambassador Pierre-Richard Prosper (the State Department official whose office is apparently charged with the matter) has publicly acknowledged that the government has approached approximately twenty-five different countries without any success. *See* Exhibit A (August 25, 2005 National Public Radio interview). The most obvious explanation for the government's selective silence is that there is no realistic prospect of finding a third country that is willing to accept Mr. Turkistani as a refugee. Certainly, the government has not given this Court any reason to believe otherwise.

Petitioner does not ask the Court to require the government to take or desist from any action as to resettlement in a third country. Negotiations with foreign governments are undoubtedly within the purview of the Executive. But if the Executive has no realistic prospect of securing Mr. Turkistani's timely release to an appropriate third country, whether the United States will continue to imprison him indefinitely is undoubtedly within the purview of this Court. *See Rasul v. Bush*, 124 S. Ct. 2686, 2699 (discussing the "legality of the Executive's potentially indefinite detention of individuals who claim to be wholly innocent of wrongdoing"); *id*. at 2701 ("[I]n light of . . . the indefinite pretrial detention of the detainees, I would hold that federal court jurisdiction is permitted in these cases.") (Kennedy, J., concurring). Whether or not there is any realistic prospect of release can only be evaluated based a clear and specific factual showing (made under seal if necessary) by the government about its diplomatic efforts, or lack thereof. Unless and until the government makes such a showing, its conclusory claim that Mr. Turkistani must stay in jail because it is trying hard enough must be rejected.[5]

### E. CONCLUSION

Mr. Turkistani is an innocent man, and the government admits it. The Court should therefore grant the writ of habeas corpus, and require that he be immediately released from prison. In the alternative, Mr. Turkistani respectfully requests that this Court grant him interim release and hold a hearing to address the practical issues of such release.

---

[5] The Supreme Court has made it very clear that the indefinite detention of an undeportable alien is unacceptable. *See, e.g., Zadvydas v. Davis,* 533 U.S. 678, 682 (2001) ("Based on our conclusion that indefinite detention of aliens [admitted to the United States and subsequently ordered removed] would raise serious constitutional concerns, we construe the statute [authorizing post removal detention] to contain an implicit 'reasonable time' limitation, the application of which is subject to federal court review."). *See also Clark v. Martinet*, 125 S. Ct. 716 (2005) (affirming *Zadvydas* and; extending the rule against indefinite detention to aliens held by the government but not yet admitted to the United States).

Dated: November 15, 2005                           SADDIQ AHMAD TURKISTANI,

By his attorneys,

_____/s/_____

Sabin Willett
Neil McGaraghan
Farschad Farzan
Jason S. Pinney
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA  02110-1726
Telephone:     (617) 951-8000
Facsimile:     (617) 951-8925

Susan Baker Manning
BINGHAM MCCUTCHEN LLP
1120 20th Street NW, Suite 800
Washington, DC  20036
Telephone:     (202) 778-6150
Facsimile:     (202) 778-6155

Barbara Olshansky
Deputy Director
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY  10012
Telephone:     (212) 614-6439