UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

JAMAL KIYEMBA, as Next Friend of
ABDUSABUR DOE, *et al.*,

    Petitioners/Plaintiffs,

v.

GEORGE W. BUSH, *et al.*,

    Respondents/Defendants.

Case No. 1:05-cv-01509-RMU

**MEMORANDUM IN SUPPORT OF PETITIONER'S
EMERGENCY MOTION FOR (i) COUNSEL ACCESS AND
(ii) RESOLUTION OF OTHER ACCESS AND CONDITIONS ISSUES**

Petitioner Saddiq Turkistani ("Saddiq") submits this memorandum in support of his Emergency Motion for (i) Counsel Access and (ii) Resolution of Other Access and Conditions Issues ("Emergency Motion"). Through the end of March 2006 Petitioners attempted to resolve these issues, without success, in advance of a base visit that commences April 9, 2006. We now are constrained to seek emergency relief.

**I.	Summary of Relief Sought**

Saddiq seeks, first, an expedited order preserving what has been the status quo for non-combatants since August, 2005, by permitting him access to his attorneys in Camp Iguana, where he lives, instead of being shackled and transported to the isolation cells at Camp Echo. Saddiq also requests intervention on a host of other issues concerning the implementation of an appropriate protective order for non-combatants. These include such issues as the extraordinary slowdowns in the delivery of legal mail (including such things as translations of relevant decisions), access to family photos, DVDs, and phone calls, and English-language materials.

## II.     Introduction

Saddiq is a Guantánamo detainee whom the military concluded more than a year ago is not an enemy combatant. Matters of attorney-client access in this *habeas* case are governed by a protective order entered by Judge Urbina on or about September 13, 2005. Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantánamo Bay, Cuba ("Protective Order"). The Protective Order has never been modified to more appropriately govern access to the nine non-combatants – including Saddiq – who are still detained at Guantánamo. The government made some accommodations rather than risk having its hand forced by the district court. However, the government has recently imposed new and inappropriate burdens on the attorney-client relationship. Despite Saddiq's non-combatant status, the government denies him basic humanitarian accommodations, even refusing to authorize a phone call with his aging mother and other family members (or in the case of another non-combatant, to deliver home videos of the man's children (now nearly five years old) whom he has never seen). Moreover, the military no longer allows Saddiq and the other non-combatants to meet their attorneys in the camp where they live, but instead transports them in chains to isolation cells. Efforts to resolve this consensually have failed.

## III.    Discussion

**A.     Procedural background**

Saddiq filed a petition for *habeas corpus* challenging the legality of his detention. On September 13, 2005, the Court entered an order staying the *habeas* proceedings pending the resolution of appeals in *Al-Odah v. Bush, et al.*, 02-cv-828, and *Boumediene v. Bush, et al.*, 04-cv-1166. The parties appealed that order to the D.C. Circuit, but this court retains jurisdiction to hear and consider issues concerning the Protective Order. Protective Order ¶ 3. An order of

Judge Gladys Kessler (as Chair of the Calendar and Case Management Committee) was docketed in this case on November 2, 2005, referring to Magistrate Judge Alan Kay all matters concerning the Protective Order and other logistical issues. *See* November 2, 2005, Order of Judge Gladys Kessler in No. 05-1509.

**B.    Unreasonable Restriction on Access to Counsel**

The Protective Order was entered on September 13, 2005. Among other things, it obligates the government to permit counsel reasonable access to their clients. *See, e.g.,* Protective Order Exhibit A, Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantánamo Bay, Cuba, §§ III.D.1-2. The government is not meeting that obligation.

The government long ago concluded that Saddiq was not an enemy combatant – i.e., that he was not al Qaeda, Taliban, or otherwise hostile to the United States.[1] He remains detained at Guantánamo in Camp Iguana, with eight other men the military determined are non-combatants but for various reasons cannot be sent to their native country. Although the Department of Defense has determined that there is no lawful basis to hold Saddiq and the other Camp Iguana detainees, they live behind fences and razor wire, under the constant watch of soldiers in guard towers. On December 22, 2005, Judge James Robertson held that the government's continued detention of two of Saddiq's non-combatant campmates is unlawful. *Qassim, et al. v. Bush, et al.*, 407 F.Supp. 2d 198, 201 (D.D.C. 2005). Saddiq's case is identical in all material respects.

In August 2005, November 2005, and January 2006, counsel met with non-combatant clients, including Saddiq, at Camp Iguana in a modest hut furnished with couches (and even a coffee table the detainees fashioned from a cardboard box). There are absolutely no security

---

[1] Indeed, among many bizarre stories at Guantánamo, Saddiq's stands out. In 2001, Saddiq was being held in a Taliban prison on suspicion of plotting to assassinate Osama bin Laden (charges he denies). U.S. forces "liberated" Saddiq and brought him to Guantánamo.

concerns.  The men are dignified – remarkably so, given the Kafkaesque nature of their predicament –  respectful, calm, intelligent, and mannered.  The military has now revoked this modest accommodation of the men whom it concedes it took by mistake, and whose detention a Federal judge held is unlawful.  *See, generally,* Declaration of Wells Dixon ("Dixon Decl.") (Exh. A to April 3, 2006, Declaration of Neil McGaraghan ("McGaraghan Decl.")).  The military has ordered that henceforth, counsel meetings with non-combatants, including Saddiq, will not take place at Iguana.  *Id.* ¶ 7.  Instead, non-combatant detainees will be transferred in shackles to meet their attorneys in grim isolation cells at Camp Echo, where detainees are chained to the floor during counsel visits.  *Id.* ¶ 9.

Counsel attempted to resolve this informally.  *See* Letter of Sabin Willett to Col. Michael I. Bumgarner dated March 22, 2006 (McGaraghan Decl., Exh. B).  No response was received. As counsel have indicated, there are at least three ways to facilitate meetings in Camp Iguana: (i) the shed can accommodate both clients and non-clients at the same time, or (ii)  non-clients are perfectly willing that lawyer visits occupy the shed, or (iii) there is a guard shack, and indeed there is an outdoor, shaded table within the locked perimeter of the camp where counsel could meet clients.  *Id.*

The military does not believe that Saddiq is a risk to the United States, or that he was ever an enemy combatant.  He is well into his fifth year of wrongful imprisonment by the United States.  The government that admits it wrongly secreted Saddiq from Afghanistan to Guantánamo now would subject him to a transfer, in shackles, to be chained to the floor in an isolation cell just to meet with his lawyers.  This is not "reasonable" attorney-client access.

Moreover, this change in policy threatens the existence of a functional attorney-client relationship.  An observer might reasonably conclude that the change is intended to cause

detainees such as Saddiq to reject their lawyers and simply ask them not to return.  Further, the return of such measures can only be viewed by the men as confirmation that their "noncombatant" status is completely illusory, and that their attorneys and the judicial process are either incompetent to obtain any relief or in fact untrustworthy.  This measure is immensely destructive to the attorney/client relationship and to the precarious morale of these men.  There is no rational justification for taking an innocent man, in chains, to meet with counsel.  Saddiq respectfully requests that the Respondents be ordered to permit counsel visits to resume in Camp Iguana immediately.

The "security" issues raised in the Government's recent D.C. Circuit filing in *Qassim v. Bush* – in effect that these measures are imposed for *counsel's* or the *detainees*' benefit -- are deeply cynical.  The detainees would prefer to meet counsel in Camp Iguana.  They do not object to meetings occupying the shed.  Moreover there are other available protocols.  *See* McGaraghan Decl., Exh. B.  The Government has done this simply as a punishment, knowing, as it does, that because an appellate court now has jurisdiction of these cases, it is procedurally much more difficult to address issues of this kind.

**B.     Unreasonable Personal Restrictions on Non-Combatants**

There are in addition a host of important issues concerning access and conditions that require judicial supervision.

First, it appears that legal mail is not promptly getting through to clients, including mail that contains copies and translations of court orders directly relevant to this case.

Second, for more than two months Counsel has been trying to secure the government's permission for Saddiq to speak to his aging mother and other family members in Saudi Arabia.  Although the government has not refused the request outright, it has dragged its feet to the point

that its non-response is effectively a denial of Saddiq's request to speak to his mother, a "privilege" this innocent man has not been afforded in more than four years of U.S. custody. We could facilitate such a call simply by patching in Saddiq's family to a call initiated by the base to us.

Third, the government refuses to permit the men in Camp Iguana – including Saddiq – to have access to news of any sort – newspaper, magazine, radio or television – or even to possess English language learning materials.[2] This simple request would allow the men a constructive way to pass their endless time at Guantánamo. The government has not offered a reason for the denial. Surely it is not a security threat for the non-combatants to learn English. And if the justification is not security-related, then it is difficult to imagine a legitimate rationale. At best, it is sheer caprice, which has to give way to doing the humanitarian thing and permitting the men in Camp Iguana this small improvement to their existence behind fences and razor wire.

Lastly, the military has simply stonewalled on taking basic humanitarian steps (such as the delivery of a family home video and family photographs to another petitioner) to ameliorate the harsh reality of indefinite detention despite a military finding that the men are innocent. Such matters could best be addressed at a status conference.

## IV.     Conclusion

Counsel seek an immediate order that they be permitted to meet Saddiq at Camp Iguana during their April 9-16 visit and thereafter.

After hearing, Saddiq also seeks an order directing reasonable improvements of the conditions of his continued imprisonment, including meaningful access to books, newspapers, magazines, family, telephone, and the like.

---

[2] The non-combatants at Camp Iguana are also forbidden to receive newspapers, news magazines, radio or television reports, etc.

WHEREFORE, Petitioner Saddiq Turkistani respectfully requests that the Court allow the Emergency Motion and enter an Order:

a. Directing that counsel visits with Saddiq and other non-combatant detainees shall immediately resume in Camp Iguana, free of chains and shackles;

b. Directing that Petitioner Saddiq be granted telephonic access to his family;

c. Directing that Petitioner Saddiq be allowed access to English language learning materials, news materials, and the like; and

d. Granting such additional and further relief as the Court deems proper.

Dated: April __, 2006

| | |
|---|---|
| Of Counsel: | Susan Baker Manning (Cal. 197350) |
| | BINGHAM McCUTCHEN LLP |
| Barbara Olshansky | 1120 20th Street NW, Suite 800 |
| Deputy Director | Washington, DC  20036-3406 |
| CENTER FOR CONSTITUTIONAL | Telephone:   (202) 778-6150 |
| RIGHTS | Facsimile:   (202) 778-6155 |
| 666 Broadway, 7th Floor | |
| New York, NY 10012 | /s/ Neil McGaraghan |
| Telephone:  (212) 614-6439 | P. Sabin Willett (BBO# 542519) |
| | Neil McGaraghan (BBO# 649704) |
| | Jason S. Pinney (BBO# 658853) |
| | BINGHAM McCUTCHEN LLP |
| | 150 Federal Street |
| | Boston, MA  02110-1726 |
| | Telephone:   (617) 951-8000 |
| | Facsimile:   (617) 951-8736 |