IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
JAMAL KIYEMBA, et al.,              )
                                    )
        Petitioners,                )
                                    )
    v.                              )  Civil Action No. 05-1509 (RMU)
                                    )
GEORGE W. BUSH                      )
President of the United States, et al. )
                                    )
        Respondents.                )
_____)

**RESPONDENTS' OPPOSITION TO PETITIONER SADDIQ
TURKISTANI'S EMERGENCY MOTION FOR COUNSEL ACCESS
AND RESOLUTION OF OTHER ACCESS AND CONDITIONS ISSUES**

Respondents hereby oppose Petitioner Saddiq Turkistani's ("petitioner") Emergency Motion for (i) Counsel Access and (ii) Resolution of Other Access and Conditions Issues ("Petitioner's Motion"). Petitioner's motion seeks, among other things, an order requiring counsel visits with petitioner to take place in Camp Iguana, rather than in Camp Echo, and an order allowing petitioner telephone access to his family and access to English language learning materials, as well as newspapers and magazines. See Petitioner's Motion at 2. The motion should be denied because the Court lacks jurisdiction to grant the requested relief under the terms of the Detainee Treatment Act of 2005. In addition, petitioner's request to have meetings with counsel occur in Camp Iguana is not factually or legally warranted, especially considering that the military authorities at Guantanamo have exercised their discretion under the protective order to conclude that counsel meetings are more easily accommodated at Camp Echo than at Camp Iguana. Petitioner has also failed to provide a sufficient factual or legal basis to support his various requests regarding his conditions of confinement, including requests for phone calls

with family members, expedited mail delivery, and access to English materials and news publications. The record indicates that detainees determined to be "no longer enemy combatants" ("NLECs"), such as petitioner, live under the least restrictive conditions at Guantanamo and are provided numerous privileges such that petitioner cannot demonstrate that the Guantanamo staff has been deliberately indifferent to his needs in order to justify the relief he seeks. Accordingly, petitioner's motion should be denied in all respects.[1]

## ARGUMENT

**I.     THE DETAINEE TREATMENT ACT REMOVES THE COURT'S JURISDICTION TO CONSIDER PETITIONER'S MOTION.**

As a threshold legal matter, petitioner's motion should be denied because the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2739 ("the Act"), withdraws jurisdiction from this Court to grant any relief. The Act, among other things, amends the federal habeas corpus statute to remove court jurisdiction to hear or consider applications for writs of habeas corpus and all other challenges "relating to any aspect of the detention by the Department of Defense of an alien at Guantanamo Bay, Cuba, who . . . is currently in military custody." Id. § 1005(e)(1).[2] Under the unambiguous terms of the Act, therefore, issues regarding the conditions

---

[1] Although petitioner filed his motion on a purported "emergency basis" as a result of his then upcoming counsel visit scheduled to begin on April 9, 2006, see Petitioner's Motion at 1, any sort of urgency has since subsided. Since the filing of the motion, petitioner's counsel have completed their recent visit to Guantanamo, which extended from April 9, 2006 to April 16, 2006, during which they met specifically with petitioner on April 10. Accordingly, no immediate action by the Court is necessary. Moreover, Magistrate Judge Kay conducted a telephone conference with the parties regarding the motion prior to petitioner's counsel's visit to Guantanamo, but Judge Kay took no action on petitioner's requests for relief.

[2] The effect of the Act, including its application to pending cases, was addressed more fully in supplemental briefing in the Guantanamo detainee appeals pending before the D.C. Circuit, which heard oral argument on these issues on March 22, 2006. Respondents understand

of petitioner's detention, including the conditions imposed on counsel visits, are outside the scope of the Court's jurisdiction.  The Court, thus, lacks authority to grant any of the relief sought by petitioner and his motion should be denied.

## II. PETITIONER'S REQUEST TO HAVE COUNSEL MEETINGS OCCUR IN CAMP IGUANA IS NOT FACTUALLY OR LEGALLY WARRANTED.

In addition to the Court's lack of jurisdiction to order the relief sought by petitioner, there is no factual or legal basis to justify petitioner's request to have counsel meetings occur in Camp Iguana.  In fact, petitioner cites no constitutional or other legal authority in support of his request to permit his counsel to meet with him at Camp Iguana, rather than at Camp Echo.  Indeed, as explained in prior submissions, whether petitioner, as an alien held outside the sovereign territory of the United States, has any constitutional rights whatsoever is an issue currently on appeal before the D.C. Circuit.  See Khalid v. Bush, No. 05-5062; Boumediene v. Bush, No. 05-5063; In re Guantanamo Detainee Cases, No. 05-5064 (D.C. Cir.).  Even if detainees such as petitioner are entitled to some constitutional protections, such protections would not include the specific right to dictate the particular location of a meeting with counsel on a military base in a time of war.

The only authority cited by petitioner to support his claimed right to meet with his counsel in Camp Iguana, instead of Camp Echo, is the protective order entered in this case.  See In re Guantanamo Detainee Cases, 344 F. Supp. 2d 174 (D.D.C. 2004) (approving and publishing Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba); Memorandum Order (Sept. 13, 2005) (dkt.

---

that it is the sense of the Court that it wishes to await anticipated guidance from the D.C. Circuit regarding the effect of the Act before deciding any pending motions.

no. 8) (adopting protective order in this case).  The cited paragraphs of the protective order, however, do not support the relief sought by petitioner.  Paragraph III.D.1 of Exhibit A to the protective order requires that the Government make "reasonable efforts" to accommodate the *dates* requested when counsel seek to schedule a meeting with their detainee clients.  See 344 F. Supp. 2d at 185.  As to *where* the meeting will take place, the protective order leaves that decision to the discretion of the military.  Paragraph III.D.2 specifically indicates that "[l]egal visits shall take place in a room designated by JTF-Guantanamo."  Id.  Accordingly, rather than supporting petitioner's claimed right to meet where he and his counsel prefer, the protective order explicitly states just the opposite – the visits shall take place in a room designated by the Joint Task Force.

After a period of months during which counsel visits with NLEC detainees were attempted in Camp Iguana – the area of Guantanamo where NLEC detainees currently reside – the Commander of the Joint Detention Group within JTF-Guantanamo, who oversees detainee operations, facilities, and security, exercised his discretion and determined that Camp Echo should be used for subsequent visits.  Camp Echo is a facility designed and typically used for counsel visits with Guantanamo detainees.  Camp Echo is much larger than Camp Iguana and it provides counsel and detainees with individual rooms to conduct privileged meetings.  In contrast, Camp Iguana has no area conducive to safe and private meetings with counsel. Accommodation of such counsel meetings at Camp Iguana requires the use of the Camp Iguana recreation room (which is the only indoor living space other than the sleeping area) and causes that common area to be denied to other detainees not participating in the counsel meetings. When, in the past, the Commander of the Joint Detention Group allowed the use of the recreation

room for counsel meetings, it created safety, security, and resource concerns for the Joint Task Force guard force. Additionally, the number of attorneys representing the NLEC detainees has increased over time, making counsel visits in Camp Iguana even more difficult to accommodate. Accordingly, the Commander decided that in-person counsel visits with NLEC detainees should occur in Camp Echo rather than in Camp Iguana.

The military's judgment regarding the most appropriate area in which to conduct counsel visits, in light of safety, security, and disciplinary concerns, is not a matter that is appropriately subject to judicial second-guessing. See Cafeteria & Rest. Workers Union, Local 473 v. McElroy, 367 U.S. 886, 890, 893 (1961) ("The control of access to a military base is clearly within the constitutional powers granted to both Congress and the President . . . . [A commander may,] "in his discretion, exclude private persons and property . . . or admit them under such restrictions as he may prescribe in the interest of good order and military discipline.") (internal quotations and citations omitted); Orloff v. Willoughby, 345 U.S. 83, 93 (1953) ("[J]udges are not given the task of running the Army . . . . Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."). Steffan v. Perry, 41 F.3d 677, 709 (D.C. Cir. 1994) ("we accord great deference to the judgment of military decisionmakers within their areas of expertise"). Petitioner's motion, thus, lacks any viable legal foundation.

In addition, petitioner's motion is based, in part, on a false factual premise. Petitioner asserts that he will be chained to the floor during his meetings with counsel in Camp Echo. See Memorandum in Support of Petitioner's Motion at 4. Contrary to petitioner's assertion, detainees who have been designated as no longer enemy combatants, such as petitioner, are not

restrained or shackled during their counsel meetings in Camp Echo. The D.C. Circuit recently rejected a nearly identical motion brought by other NLEC detainees in light of the fact that NLECs are not shackled in Camp Echo during their meetings with their attorneys. See Qassim v. Bush, No. 05-5477 (D.C. Cir.), Order (Apr. 7, 2006) (attached as Exhibit A).[3]

As demonstrated, petitioner's request to have counsel meetings occur in Camp Iguana, rather than in Camp Echo, is not legally or factually justified. As a result, this request should be denied.

## III. PETITIONER'S VARIOUS COMPLAINTS REGARDING HIS CONDITIONS OF CONFINEMENT DO NOT MERIT RELIEF.

Petitioner's additional requests for telephone calls with his family members and access to English language learning materials and news publications do not warrant relief. As an initial matter, a telephone call between petitioner and his wife and sister tentatively has been arranged to occur on April 29, 2006, making that particular request moot.

In any event, petitioner fails to offer any legal support for any of his various requests to modify his confinement conditions. In the domestic prisoner context, requests pertaining to detention conditions, like petitioner's in the present case, are typically based on the Fifth Amendment or Eighth Amendment to the Constitution. See Bell v. Wolfish, 441 U.S. 520, 523,

---

[3] Although detainees are shackled during their short movement from Camp Iguana to Camp Echo for counsel meetings, this security measure at most imposes a temporary inconvenience on the detainees. Furthermore, counsel for NLECs detained at Camp Iguana are allowed periodic telephone calls with their clients at Camp Iguana subject to applicable security and operational constraints. Thus, if counsel or the detainees seek to avoid the inconvenience of the security measures required for the counsel visits at Camp Echo, counsel can arrange a telephone call with their clients through the Department of Defense, and such a call can usually take place without their clients ever having to leave Camp Iguana. Indeed, petitioner's counsel arranged such a call with their other NLEC clients and spoke to them on March 27, 2006.

536 (1979) (explaining that pretrial detainee challenges to conditions stem from the Fifth Amendment's Due Process Clause); Farmer v. Brennan, 511 U.S. 825, 834-35, 846 (1994) (indicating that convicted criminals' complaints regarding confinement conditions are based on the Eighth Amendment).  As mentioned above, however, whether petitioner, as an alien held outside the sovereign territory of the United States, has any constitutional rights at all is an issue currently on appeal before the D.C. Circuit.

Even if petitioner were entitled to constitutional protections and had invoked those protections in his motion, his complaints regarding the lack of family phone calls, English materials, and newspapers would not merit relief.  Such challenges to conditions of confinement are governed by the "deliberate indifference" standard, which requires a prisoner to establish that prison officials "were knowingly and unreasonably disregarding an objectively intolerable risk of harm to the prisoners' health or safety."[4]  Farmer, 511 U.S. at 846.  In particular, courts have employed the "deliberate indifference" standard as a guide to evaluate complaints regarding detention conditions made by Guantanamo detainees, despite the fact that it is presently unclear whether the detainees at Guantanamo even have constitutional rights.  See O.K. v. Bush, 344 F. Supp. 2d 44, 60-63 & n.23 (D.D.C. 2004) (Bates, J.) ("Without concluding that the 'deliberate indifference' doctrine applies" to Guantanamo detainees' challenges to confinement conditions, "the Court will draw on this well-developed body of law to guide its analysis").

Petitioner cannot establish that the Guantanamo staff has been deliberately indifferent to his health or well-being by allegedly depriving him of family phone calls, English language

---

[4] This standard is applicable both to claims alleging inadequate medical care as well as challenges to general conditions of confinement.  See Wilson v. Seiter, 501 U.S. 294, 303 (1991).

learning materials, and newspapers. First, as mentioned, a phone call tentatively has been scheduled between petitioner and his family. Second, the Guantanamo staff has concluded that access to English language learning materials and newspapers presents a security threat and is not appropriate, even for NLEC detainees.[5] The military's judgment regarding the types of contraband at Guantanamo is entitled to considerable deference, and the Court should not interfere in these determinations. See Thornburgh v. Abbott, 490 U.S. 401, 404 (1989) (upholding Bureau of Prisons regulation that authorized prison warden to reject incoming publications on the grounds that the publications are "detrimental to the security, good order, or discipline of the institution").

Moreover, petitioner does have access to library books and other reading materials, as well as other privileges. NLECs such as petitioner are housed in Camp Iguana, which provides the least restrictive detainee living conditions available at the Guantanamo detention facility. As explained in a prior submission in this case, Camp Iguana provides a communal living situation, overlooking the Caribbean Sea, in which NLECs have their own bunk house, activity room, air conditioning in all living areas, recreational yard, around-the-clock access to television sets with VCR, DVD, and video game capability; a stereo system, recreational items (such as board games, soccer, volleyball, and ping pong), unlimited access to a shower facility, and, as mentioned, library materials. See Declaration of Jay W. Hood ¶¶ 5-6, attached as Exhibit A to

---

[5] Petitioner assumes that his status as an NLEC should eradicate any security-related concerns that the Guantanamo staff has with respect to him. However, an NLEC determination does not necessarily imply a finding that an individual has been or is benign in all respects, nor does it serve as a guarantee regarding future conduct. To the contrary, the safety and security of the camp, its personnel, and the detainees themselves consistently remain serious concerns, requiring appropriate precautions and measures.

Respondents' Opposition to Petitioner's Motion for an Order Amending Access Procedures Pertaining to Non-Enemy Combatants (Nov. 14, 2005) (dkt. no. 37). Clearly, the Guantanamo staff has not subjected petitioner to any sort of inhumane conditions of confinement such that the staff could be found to have been deliberately indifferent to petitioner's health or well-being. To the contrary, the military has attempted to make petitioner, and the other NLECs in Camp Iguana, as comfortable as reasonably possible.[6]

In light of the demanding deliberate indifference standard, courts accord substantial deference to the judgment of prison administrators and generally refrain from interfering in the day-to-day operations of correctional facilities. See, e.g., Bell v. Wolfish, 441 U.S. 520, 548 562 (1979) (explaining that the operation of even domestic "correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial," and cautioning lower courts to avoid becoming "enmeshed in the minutiae of prison operations"); Inmates of Occuquan v. Barry, 844 F.2d 828, 841 (D.C. Cir. 1988) (noting that "courts are not to be in the business of running prisons" and that "questions of prison administration are to be left

---

[6] Petitioner's vague complaint regarding the alleged inefficiency of the delivery of legal mail also does not merit relief. See Memorandum in Support of Petitioner's Motion at 5. Under current procedures, legal mail is sent to and from Guantanamo via certified mail through the United States Post Office, and such mail typically takes approximately two weeks for delivery. Petitioner's undefined request presumably to expedite mail delivery is not legally supported nor is it practically feasible. Respondents are not in a position to somehow demand that the Postal Service speed up the mail delivery, and there is no direct overnight mail delivery to or from any addresses at Guantanamo. In any event, petitioner's complaint ignores a pilot program of alternative mail delivery to represented detainees that is being initiated by other counsel. Under this program, counsel may submit legal mail for contraband inspection and invoicing in Washington, D.C., as required under the counsel access procedures. Once the package is inspected and sealed, it is sent via Fed Ex, at counsel's expense, to a charter airline company in Fort Lauderdale, Florida, that flies to Guantanamo, which then transports the package to Guantanamo. Any then-visiting habeas counsel may retrieve the package from the airline at Guantanamo and deliver it to Guantanamo staff for appropriate mail delivery.

to the discretion of prison administrators"). Such deference is clearly warranted in this case, where there is no indication that the Guantanamo staff has been deliberately indifferent to petitioner's welfare. As a result, the Court should not get mired in these narrow issues, and petitioner's request for various improvements to his conditions of confinement should be denied.

## CONCLUSION

For the reasons stated above, respondents respectfully request that petitioner's motion be denied in all respects.

Dated: April 20, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

  /s/ Edward H. White
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
ANDREW I. WARDEN
NICHOLAS J. PATTERSON
MARC A. PEREZ
EDWARD H. WHITE (D.C. Bar No. 468531)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC 20530
Tel: (202) 514-4107
Fax: (202) 616-8470

Attorneys for Respondents