UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMAL KIYEMBA, as Next Friend of ABDUSABUR DOE, *et al.*,<br><br>Petitioners,<br><br>v.<br><br>GEORGE W. BUSH, *et al.*,<br><br>Respondents. | Case No. 1:05-cv-01509 (RMU)<br><br>**PETITIONERS' OPPOSITION TO EMERGENCY MOTION FOR STAY AND RECONSIDERATION OF MAGISTRATE JUDGE'S JUNE 29, 2006 MEMORANDUM** |

On July 6, 2006, the Respondents moved (docket no. 61) for an "emergency" stay of Magistrate Judge Kay's June 29, 2006 memorandum decision regarding counsel access. The only "emergency" cited is that after four years of imprisonment, four of the Petitioners might actually meet their attorneys starting on July 17.

The motion is one of several transparent efforts by the Government to prevent these visits. Another such machination is now playing out before Judge Kay.[1] If this motion is not summarily denied, it is necessary that it be addressed in the ordinary course, under full briefing, and without impairment of the July counsel visits.

1.   The present dispute has been brewing ever since the first attorney visits with Uighur prisoners disclosed that many of the Uighurs imprisoned at the United States Naval Station, Guantánamo Bay, Cuba ("Guantánamo"), had been seized by mistake and include men even the military concedes are noncombatants. These disclosures emerged late in July, 2005 in the *Qassim v. Bush* case (Civ. No. 05- 0497) pending before Judge Robertson in this Court.

---

[1] The Government has now asserted that *habeas* counsel's Uighur interpreter does not have sufficient clearance -- even though *she was formerly employed by Department of Defense interrogators to translate for Uighurs at Guantánamo.*

2.      Almost immediately thereafter, the Government began asserting "next-friend" challenges. Once it filed motions, without leave of court it unilaterally cut off base access to those it deemed to have insufficient next friend status.

3.      Petitioners are imprisoned at Guantánamo. Having no meaningful way to secure legal representation for themselves, *see generally* June 13, 2006 Decl. of Jason Pinney, ¶ 9 & Ex. 7 (Decl. of Gitanjali S. Gutierrez ¶¶ 6-17 (June 14, 2006)) (dkt. no. 54), Petitioners filed a *habeas corpus* petition through their next friend, Jamal Kiyemba, *see* Petition for Writs of *Habeas Corpus* (July 29, 2005) (dkt. no. 1). Due to restrictions on access to and communication with Guantánamo detainees imposed by the Respondents, the undersigned counsel have not yet been permitted to speak directly with four of the Petitioners.

4.      On September 13, 2005, this Court entered the Protective Order "previously entered in the other Guantánamo detainee cases." Memo. Order (Sept. 13, 2005) (dkt. no. 8).

5.      Bingham McCutchen LLP, which represents these men *pro bono publico*, has expended significant resources on this representation. On August 15, 2005, the firm provided Respondents with evidence of its authority to represent Petitioners. *See* June 13, 2006 Pinney Decl., ¶ 6 & Ex. 4 (next-friend authorization from Kiyemba regarding Petitioners). On August 31, 2005, Respondents filed a Motion for an Order To Show Cause Why Case Should Not Be Dismissed for Lack of Proper Next Friend Standing (dkt. no. 4), in which they argued, among other things, that Petitioners are not entitled to challenge the legality of their detention through their next friend, Kiyemba. Petitioners filed an opposition to Respondents' motion on September 12, 2005 (dkt. no. 7). The question of next-friend standing was fully briefed by both sides.

6.      Indeed, the Government originally forbade access to a *noncombatant* Petitioner, Saddiq Ahmed Turkestani, and relented only after motions were filed in this Court seeking sanctions for contempt of the Protective Order that this Court entered in September. (Mr. Turkestani was released in June, 2006).

7.      On November 2, 2005, in recognition of "the need to promote orderly and efficient case management of all *habeas* petitions . . . relating to the rights of [Guantanamo]

detainees," Judge Kessler, acting as Chair of the Calendar and Case Management Committee referred all motions "pertaining to interpretation or construction of any protective order" enter in any of the Guantanamo *habeas* cases to Judge Kay for resolution pursuant to LCvR 72.2(a).

8. The next-friend disputes came before Magistrate Judge Kay in various cases, including *Doe v. Bush*, *Adem v. Bush*, and this case. Judge Kay diligently conducted hearings, encouraged compromise, and solicited briefing. When the Government refused to compromise, he entered thorough memorandum decisions that were meticulously researched and reasoned, and both scholarly and practical. The decisions afforded counsel reasonable access and imposed reasonable requirements to confirm representation.

9. The first next-friend decision was issued in the *Adem* case. *See* March 14, 2006 Memo. Opinion in *Adem v. Bush*, Civ. No. 05-723 (RWR)(AK). The Government refused to accept the force of that decision in any other *habeas* case, and consequently Judge Kay was obliged to enter substantially the same ruling on May 11, 2006, in *Doe v. Bush*, Civ. No. 05-1704 (JR)(LFO)(AK).

10. The Government appealed the decision in *Adem* to Judge Roberts and refused to grant access in *Kiyemba*. On April 28, 2006, Judge Roberts affirmed Judge Kay's ruling in *Adem*. *See* July 10, 2006 Decl. of Jason Pinney, Ex. 1 (April 28, 2006 Memo. Opinion and Order in *Adem v. Bush*, Civ. No. 05-723 (RWR)(AK) (dkt. no. 42)).

11. In April, on the eve of counsel's *last* base visit, the *Kiyemba* Petitioners brought an emergency request (dkt. no. 49), and Judge Kay skillfully directed a compromise that, while somewhat cumbersome, allowed counsel to meet three of the Petitioners.

12. Counsel wrote to Respondents on May 30, 2006, requesting permission to meet with Petitioners during a visit to Guantánamo scheduled for the week of July 10, 2006, and have been making plans for these meetings ever since. *See* June 14, 2006 Decl. of Jason S. Pinney, Ex. 1. (e-mail correspondence between Jason S. Pinney and Andrew Warden) (dkt. no. 54)).

13. Having received no response to this initial communication, counsel sent Respondents a second e-mail message, dated June 6, 2006, regarding the scheduled Guantánamo

visit. *See* June 14, 2006 Decl. of Jason Pinney, Ex. 1 (e-mail correspondence between Jason S. Pinney and Andrew Warden) (dkt. no. 54)).. Respondents replied on June 7, 2006, stating that they "cannot agree to schedule counsel visits with the [P]etitioners at this time" because of "outstanding next-friend standing issues." *Id.*

14. Respondents moved for relief from Judge Kay. The Government opposed and Judge Kay issued a comprehensive order on June 29, 2006. *See* Memo. Order (June 29, 2006) (dkt. no. 60).

15. On Friday, June 9, 2006, Respondent President George W. Bush said that he believes that detainees "ought to be tried in courts here in the United States." Press Release, Remarks by President Bush and Prime Minister Rasmussen of Denmark in Joint Press Availability, White House Press Office (June 9, 2006), *available at* http://www.whitehouse.gov/news/releases/2006/06/20060609-2.html. The President is our opposing litigant in this, a civil case, and we agree with him: these habeas petitions ought to be tried in this Court here in the United States.[2] We can hardly bring the matter to Court, however, if we cannot meet with our clients.

16. Access to our clients is urgently needed. On or shortly before June 10, 2006, three Guantánamo detainees, who evidently had despaired of ever receiving hearings, committed suicide. *See generally* June 13, 2006 Pinney Decl., ¶ 7 & Ex. 5 (James Risen & Tim Golden, *3 Prisoners Commit Suicide at Guantánamo*, N.Y. TIMES, June 11, 2006, at A1) ("Prisoners Commit Suicide"). An officer at Guantánamo has said that he expects more suicide attempts. *See* Pinney June 13, 2006, Decl., ¶ 7 & Ex. 5 (Michael Gordon, *Officer Expects More Suicide Tries: Guantanamo Bay Colonel Says Homemade Nooses Seized*, CHARLOTTE OBSERVER, June 12, 2006, at 1A) ("'We have indications of more attempts any time now,' said [Colonel Michael] Bumgarner."). Counsel are desperately concerned for the welfare of the Petitioners. We who have been to Guantánamo have no doubt about the despair that is rampant there, along with the

---

[2] The agreement of parties in a civil case is generally entitled to some weight.

conviction among detainees that American justice is a fiction. Access to the Petitioners has never been more crucial.

17. The Respondents' refusal to accept the considered rulings of the Magistrate and District Court judges on the "next-friend" point is enormously frustrating to counsel. The Respondents' approach appears to be to block access to the detainees until each and every judge in the district has separately passed on this matter. This strategy of delay for delay's sake offends FED. R. CIV. P. 11.

18. Counsel have not had sufficient opportunity to study the Government's thirty-three page filing and exhibits, but several points are easily made.

*First*, FED. R. CIV. P. 72 provides that nonfinal, pretrial rulings of a magistrate of the kind at issue here cannot be overruled unless there has been an abuse of discretion or plain error of law. Further, "[r]ulings issued by a magistrate judge pursuant to LCvR 72.2 are reviewed by the district court judge, in this case Judge Urbina, on a 'clearly erroneous' or 'contrary to law' standard. LCvR 72.2(c)." Memo. Order at 1 n.1 (June 29, 2006) (dkt. no. 60). In light of the nature of the issues, the care and thoroughness of the opinion, and the endorsement of this reading by Judge Roberts in *Adem*, it is idle to suggest that the Government could never meet that standard.

*Second*, regardless of whether these proceedings should be treated in the Court of Appeals under the Detainee Treatment Act of 2005 or in this Court as *habeas* petitions, counsel need to meet with their clients to prepare.

*Third*, the Supreme Court has just made abundantly clear, in the plainest possible words, that the Detainee Treatment Act of 2005 does not apply to *habeas* cases, like this one, that were pending on or before December 30, 2005. *Hamdan v. Rumsfeld*, No. 05-184, 2006 WL 1764793, at *16 n.15 (U.S. June 29, 2006) ("Because we conclude that § 1005(e)(1) does not strip federal courts' jurisdiction over cases pending on the date of the DTA's enactment, we do not decide whether, if it were otherwise, this Court would nevertheless retain jurisdiction to hear Hamdan's appeal.").

*Fourth*, there is no emergency. All that will happen here is that counsel sworn to observe the Protective Order will have a chance to meet clients now in their fifth year of imprisonment -- men who have never been charged with any crime, who contend that they have never been soldiers or otherwise hostile to America, and who appear to have been situated precisely as were five detainees the Government concedes were not enemy combatants. If these clients, having lost faith in the American justice system, choose to discharge their lawyers (this is becoming more common – a rational prisoner can only wonder what on earth the point of talking to lawyers is, when courts never hear cases), then they will be free to do so and we, as officers of this Court, will be obliged to report.

19.  So thorough has been the treatment of the Government's position by Judge Roberts and Magistrate Judge Kay that we think the Court may and should summarily deny the motion. In the alternative, no emergency stay or other relief should be granted, and Petitioners should be permitted to file a responsive memorandum on the merits in the ordinary course. This will necessarily permit Petitioners to meet their counsel beginning on July 17, 2006.

WHEREFORE, Petitioners respectfully urge the Court to

(1)   deny the Government's motion summarily, or, in the alternative;

(2)   deny the entry of any stay or other emergency relief and permit Petitioners to file a brief on the merits of the motion on or before July 25, 2006;[3] and

(3)   award such other relief as the Court deems just and proper.

Respectfully submitted,

Dated: July 10, 2006

Of Counsel:

Barbara Olshansky
Deputy Director
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone: (212) 614-6439

Petitioners Abdul Nassir, Abdul Sabour, Hammad Doe and Khalid Doe,

By their attorneys,

Sabin Willett
Rheba Rutkowski
Neil McGaraghan
Jason S. Pinney
Francesca Lucia Miceli
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110-1726
Telephone: (617) 951-8000
Facsimile: (617) 951-8925

Susan Baker Manning
BINGHAM McCUTCHEN LLP
1120 20th Street, NW, Suite 800
Washington, DC 20036-3406
Telephone: (202) 778-6150
Facsimile: (202) 778-6155

---

[3] Petitioners' counsel will be at the base when ten days expires and unable to prepare and file papers.

## CERTIFICATE OF SERVICE

I, Jason S. Pinney, have this 10th day of July, 2006, served the foregoing PETITIONERS' OPPOSITION TO EMERGENCY MOTION FOR STAY AND RECONSIDERATION OF MAGISTRATE JUDGE'S JUNE 29, 2006 MEMORANDUM by hand to the offices of court security officer:

Christine Gunning
U.S. Department of Justice
Compliance Review and Litigation Security
20 Massachusetts Avenue, NW
Suite 5300
Washington, DC  20044

_____
Jason S. Pinney