UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMAL KIYEMBA, as Next Friend of ABDUSABUR DOE, *et al.*,<br><br>Petitioners,<br><br>v.<br><br>GEORGE W. BUSH, *et al.*,<br><br>Respondents. | Case No. 1:05-cv-01509 (RMU)<br><br>**PETITIONERS' MEMORANDUM IN OPPOSITION TO RESPONDENTS' EMERGENCY MOTION FOR STAY AND RECONSIDERATION OF MAGISTRATE JUDGE'S JUNE 29, 2006 MEMORANDUM** |

## Introduction

Abdul Nassir (a.k.a. Abdulnasir, Abdul Annaser), Abdul Sabour (a.k.a. AbduSabur), Hammad Doe, and Khalid Doe ("Petitioners")[1] hereby oppose the Respondents' Emergency Motion for Stay and Reconsideration of Magistrate Judge's June 29, 2006 Memorandum, filed July 6, 2006 (dkt. no. 61; "Respondents' Motion").

Petitioners are imprisoned at the United States Naval Station, Guantánamo Bay, Cuba, ("Guantánamo"). Having no meaningful way to secure legal representation for themselves, *see* June 13, 2006 Declaration of Jason S. Pinney ("Pinney Decl."), ¶ 9 & Ex. 7 (June 14, 2006 Declaration of Gitanjali S. Gutierrez ¶¶ 6-17 ("Gutierrez Decl.")), Petitioners filed a *habeas corpus* petition on July 29, 2005, through their next friend, Jamal Kiyemba (dkt. no. 1; the "Petition"). Although almost a year has passed since the Petition was filed, counsel has yet to

---

[1] Of the nine petitioners in this case, Respondents have granted counsel access to only five: Saddiq Ahmed Turkestani, Jalal Jalalidin, Sabir Doe, Abdusamet Doe, Huzaifa Parhat. Respondents agreed to let Mr. Turkestani proceed on his own behalf, *see* Stipulation re Am. Pet. for Writ of Habeas Corpus (Oct. 21, 2005) (dkt. no. 25), and recently consented to allow Mr. Jalalidin to proceed through his sister as next friend, *see* Pinney Decl., ¶ 3 & Ex. 1. Counsel expect to file an amended *habeas corpus* petition for Mr. Jalalidin shortly. Respondents have refused to take a position as to whether Sabir, Abdusamet, and Mr. Parhat may proceed on their own behalf. *Id.*

communicate with Petitioners. As the record reflects, the Respondents -- in addition to restricting access to and communications with Guantánamo detainees -- have repeatedly refused to cooperate in the scheduling of visits with Petitioners, *see* Pinney Decl., ¶ 3 & Ex. 1; failed to comply with protective orders, *see* June 29, 2006 Memorandum Order of Magistrate Judge Kay (dkt. no. 60; the "Kay Order") (granting Petitioners' Emergency Motion for an Order Directing Respondents To Comply with the Protective Order and To Permit and Facilitate Attorney Meetings with Petitioners (dkt. no. 54; the "Petitioners' Emergency Motion")); and now, in their Motion, oppose and seek reconsideration of the Kay Order, permitting counsel to meet with Petitioners "as soon as possible," Kay Order at 13. All these maneuvers are designed to block Petitioners' access to counsel, and their right to have the Court "hear [their] habeas corpus challenges to the legality of their detention." *Rasul v. Bush*, 542 U.S. 466, 483 (2004).

Judge Kay decided that Respondents shall comply with the Protective Order and allow counsel to meet with Petitioners. Kay Order at 13. This Motion seeks to affirm that decision. Petitioners respectfully request that the Court deny Respondents' Motion in its entirety and affirm the Kay Order, as it is neither clearly erroneous nor contrary to law.

## Background

The facts as found by Magistrate Judge Kay are set out in some detail in the Kay Order. In early 2005, Petitioners, who do not speak English, asked a fellow detainee and fluent English-speaker, Jamal Kiyemba, to help them find a lawyer to challenge their potentially indefinite imprisonment without charge. *See* Pinney Decl., ¶ 6 & Ex. 4 (next-friend authorization from Kiyemba), ¶ 9 & Ex. 7 (Guitierrez Decl.). Kiyemba forwarded Petitioners' names to his own attorney and signed a statement attesting to their request for representation to challenge their detention. *Id.* Kiyemba's attorney conveyed Petitioners' request to the Center for Constitutional Rights, which, in turn, assigned counsel to represent these men *pro bono publico*.

Counsel filed the Petition through Petitioners' next friend Kiyemba on July 29, 2005, and provided Respondents with evidence of their authority to represent Petitioners on August 15, 2005. *See* Pinney Decl., ¶ 6 & Ex. 4 (next-friend authorization from Kiyemba). On August 31,

2005, Respondents filed a Motion for an Order To Show Cause Why Case Should Not Be Dismissed for Lack of Proper Next Friend Standing (dkt. no. 4), in which they argued, among other things, that Petitioners are not entitled to challenge the legality of their detention through their next friend, Kiyemba. Petitioners filed an opposition to Respondents' motion on September 12, 2005 (dkt. no. 7). The question of next-friend standing was fully briefed by both sides.

On September 13, 2005, this Court entered the Protective Order "previously entered in the other Guantánamo detainee cases." Memo. Order (Sept. 13, 2005) (dkt. no. 8). Copies of the Protective Order are attached to Petitioners' Motion for Order To Show Cause and for Entry of Protective Order filed on August 17, 2005 (dkt. no. 2).

Following entry of the Protective Order, Petitioners' counsel obtained the necessary security clearances and submitted Notification of Representation and all information required therein to the Respondents, both of which are prerequisites to any in-person meeting with a detainee-client. *See* Protective Order, at Ex. A, § III (dkt. no. 2). In May 2006, counsel requested permission from Respondents to meet with Petitioners in person. *See* Pinney Decl., ¶ 3 & Ex. 1 (e-mail correspondence regarding scheduling of a base visit). Respondents denied the request because of "outstanding next-friend standing issues." *Id.*

Petitioners thereafter brought Petitioners Emergency Motion to Magistrate Judge Kay,[2] which Respondents opposed (dkt. no. 57), seeking an order directing Respondents to comply with the Protective Order and, therefore, to permit counsel meetings with Petitioners.[3] On June 26, 2006, Magistrate Judge Kay issued the Kay Order granting Petitioners' Emergency Motion and directing Respondents to comply with the Protective Order and allow counsel access to their

---

[2] On November 2, 2005, in recognition of "the need to promote orderly and efficient case management of all *habeas* petitions . . . relating to the rights of [Guantánamo] detainees," Judge Kessler, acting as Chair of the Calendar and Case Management Committee, referred all motions "pertaining to interpretation or construction of any protective order" enter in any of the Guantánamo *habeas* cases to Judge Kay for resolution pursuant to LCvR 72.2(a).

[3] The Protective Order explicitly permits detainees' counsel to petition the court for appropriate relief in the event of a disagreement concerning counsel visits. *See* Protective Order, at Ex. A, § III.C.2 (dkt. no 2).

clients. The Respondents' Motion now seeks reconsideration of the Kay Order as well stay relief.

## Judge Kay's Order

Petitioners' Emergency Motion presents a straightforward issue of interpretation. The Protective Order is in the nature of a contract between counsel for detainees and counsel for the Respondents. Since no party has claimed that the Protective Order is ambiguous, Magistrate Judge Kay properly construed the plain language of the order in light of the circumstances surrounding its entry. *See Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 737 (2d Cir. 2000) (applying contract construction principles to interpretation of protective order).

Magistrate Judge Kay addressed the narrow question -- discussed at length in recent opinions -- whether a detainee's right to meet with counsel is conditioned on counsel providing direct, written evidence of his or her authority to represent the detainee *before* a visit, or whether such evidence may be provided *after* meeting with the detainee. In so doing, Judge Kay specifically interpreted two paragraphs of the Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantánamo Bay, Cuba, Annexed to the Protective Order as Exhibit A, dealing with requirements for verification of representation.

Magistrate Judge Kay rejected Respondents' argument that the evidence of authority to represent the detainee must be provided before counsel is permitted access to the detainee, stating that the plain terms of the Protective Order "manifestly do[] not require" such evidence "as a prerequisite," and concluding that only Notification of Representation must be provided in advance of obtaining access. Kay Order at 6. Judge Kay also rejected Respondents' contention that, in addition to producing sufficient evidence of counsel's authority to represent the detainee through a proper "next friend" prior to gaining privileged access, counsel must submit evidence of the detainee's authorization for counsel to represent him directly within ten days of meeting with the detainee. Noting that the Protective Order "does not distinguish between cases filed by a 'next friend' and cases filed directly," *id.* at 6, Judge Kay concluded that requiring such authorization would be an "unworkable prerequisite," *id.* at 11, and that Petitioners should be

permitted access to their clients "so that they may obtain the very authorization that Respondents insist be provided prior to any visits," *id.* at 5.

Finally, Judge Kay rejected Respondents' jurisdictional argument -- that the Detainee Treatment Act of 2005 (the "DTA") divested the Court of jurisdiction to decide the Petitioners' Emergency Motion -- concluding that allowing Petitioners to meet with their lawyers "is not the type of interim relief that even remotely risks infringing on the Circuit's possible exclusive jurisdiction," Kay Order at 12, and citing the "well-settled" principle that courts have the authority to issue such orders as necessary to preserve their own jurisdiction and to maintain the status quo, *id.* at 13 ("It would be untenable for the District Court to be put in a position where it is powerless to enforce its own protective order, presently in effect and over which it has continuing control.").

**Argument**

**A.    Respondents' Motion For Reconsideration Should Be Denied Because The Kay Order Is Neither Clearly Erroneous Nor Contrary To Law.**

FED. R. CIV. P. 72 provides that nonfinal, pretrial rulings of a magistrate of the kind at issue here cannot be overruled unless there has been an abuse of discretion or a plain error of law. "Rulings issued by a magistrate judge pursuant to LCvR 72.2 are reviewed by the district court judge . . . on a 'clearly erroneous' or 'contrary to law' standard. LCvR 72.2(c)." Kay Order at 1 n.1. Given the nature of the issues, the care and thoroughness of the Kay Order, and the endorsement of Judge Kay's reading by Judge Roberts in *Adem v. Bush*, Respondents cannot meet the governing standard.

**1.    The Kay Order is not contrary to law because the DTA does not eliminate this Court's jurisdiction over the Petition.**

Contrary to Respondents' assertion, *see* Resp. Motion at 13-15, the DTA does not strip this Court of jurisdiction over the Petition. Petitioners challenge their prolonged, indefinite detention as violating their due process rights under the common law and the Fifth Amendment to the Constitution of the United States, as well as procedures established by the Third and Forth

Geneva Conventions and International Humanitarian and Human Rights law, and assert, as well, that the conditions of their confinement violate the law of nations under the Alien Tort Statute, 28 U.S.C. §1350. Thus, the relevant provision of the DTA governing Petitioners' claims is section 1005(e)(1). As the Supreme Court held in its recent decision in *Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006), section 1005(e)(1) "addresses jurisdiction in *habeas* cases and other actions 'relating to any aspect of the detention.'" 126 S. Ct. at 2767. *Hamdan*, which also involved a *habeas* petition that was pending prior to the enactment of the DTA, squarely held "that § 1005(e)(1) does not strip federal courts' jurisdiction over cases pending on the date of the DTA's enactment." *Id.* at 2769 n.15. This Court has since applied *Hamdan* in determining that it has jurisdiction to hear and determine *habeas* petitions and related matters brought by Guantánamo detainees. *See* July 5, 2006 Memorandum Order, *Hamoud v. Bush*, No. 05-1894 (dkt. no. 23) (citing *Hamdan* as making clear that it has authority over Guantánamo detainee's *habeas* petition and challenge to stay of proceedings).

Sections 1005(e)(2) and (e)(3) of the DTA -- the provisions relied upon by the Respondents, *see* Resp. Motion at 13-15 -- have no bearing on the claims at issue here. As the Supreme Court recognized, "subsections (e)(2) and (e)(3) grant jurisdiction only over actions 'to determine the validity of any final decision' of a CSRT or commission." *Hamdan*, 126 S. Ct. at 2767. Thus, a petitioner who is "not contesting any 'final decision' of a CSRT or military commission . . . does not fall within the scope of subsection (e)(2) or (e)(3)." *Id.* Moreover, the Supreme Court explicitly rejected Respondents' argument that section 1005(e)(2) creates an "exclusive review" mechanism in the D.C. Circuit Court of Appeals that precludes Petitioners determined by the CSRT to be enemy combatants from seeking *habeas* relief in the district courts. Specifically, the Supreme Court noted:

> There is nothing absurd about a scheme under which pending habeas actions—particularly those, like this one, that challenge the very legitimacy of the tribunals whose judgments Congress would like to have reviewed—are preserved, and more routine challenges to final decisions rendered by those tribunals are carefully channeled to a particular court and through a particular lens of review.

*Id.* at 2769. Any interpretation of the DTA that would preclude judicial review of Petitioners' constitutional claims would raise substantial constitutional questions. *See Hamdan*, 126 S. Ct. at 2769 n.15. (noting that construing a statute to "preclude review of a pure question of law by any court would give rise to substantial constitutional questions") (citing *I.N.S. v. St. Cyr*, 533 U.S. 289, 300 (2001)).

Respondents' attempt to cast Petitioners' claims as nothing more than a challenge to the validity of their CSRT decisions subject to the jurisdiction-stripping provision of section 1005(e)(2) fails. As noted, Petitioners do not merely seek to challenge "the validity of" their CSRT determinations but more broadly assert that there is no legal basis for their detention. More immediately, Petitioners' Emergency Motion sought to enforce the Protective Order already entered in this case and to allow Petitioners access to counsel in accordance with their rights under *Al Odah v. United States*, 346 F. Supp. 2d 1, 7 (D.D.C. 2004). Therefore, Respondents cannot rely on the Court's statement in *Hamdan* that "[t]here may be habeas cases that were pending in the lower courts at the time the DTA was enacted that do qualify as challenges to 'final decision[s]' within the meaning of subsection (e)(2) or (e)(3)," 126 S. Ct. at 2769 n.14, to apply the jurisdictional stripping provision of Section 1005(e)(2) here. Petitioners broad statutory and constitutional claims cannot possibly be construed as a challenge to a "final decision" of the CSRT and under no viable construction fall within the purview of sections 1005(e)(2) or (e)(3).

Respondents' remaining arguments that Magistrate Judge Kay's jurisdictional findings are contrary to law, *see* Resp. Motion at 14-19, are equally unavailing, grounded as they are in

---

[4] *Cf. id.* at *58 (Scalia, J., dissenting) ("[t]he vast majority of pending petitions, no doubt, do not relate to military commissions at all, but to more commonly challenged aspects of 'detention' such as the terms and conditions of confinement").

the presumption, rejected by this Court, that the DTA ousted jurisdiction over the Petition. Respondents' contention that Magistrate Judge Kay clearly erred in concluding that granting Petitioners access to their lawyers does not implicate any jurisdictional questions, *see* Resp. Motion at 14, is contrary to recent holdings in *Nasrullah v. Bush* and *Doe v. Bush*. *See Nasrullah v. Bush*, 05-891 (RBW), Order at 2 (June 12, 2006) (dkt. no. 18) ("[T]he court is not persuaded that granting a protective order enabling the petitioner to have access to counsel would in any way intrude or infringe upon the Court of Appeals' [possible] exclusive jurisdiction."); *Doe v. Bush*, No. 05-CV-1704 (JR)(LFO)(AK), Memo. Order at 13 (May 11, 2006) (dkt. no. 33) ("Petitioners' motion for an order compelling access to counsel pursuant to the Amended Protective Order, however, does not implicate any of the jurisdictional questions currently pending in the D.C. Circuit and the Supreme Court."); *see also Al Salami v. Bush*, No. 05-2452 (PLF), Order at 1 (Apr. 13, 2006) (dkt. no. 12) (detainees' right to meet with counsel, provisions "[c]entral to the Protective Orders," is 'independent of the . . . question of the Court's jurisdiction to rule on their habeas petitions'").

The same is true of Respondents' assertion, *see* Resp. Motion at 15, that the Kay Order's enforcement of the Protective Order and Access Procedures is clearly erroneous. This Court undoubtedly had the power to enforce its own Protective Order during the pendency of the Supreme Court's resolution of the jurisdictional question presented by the DTA. *See Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006) (power of enforcement is "inherent" to the court); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993) ("A protective order, like any ongoing injunction, is always subject to the inherent power of the district court."); *see also Doe v. Bush*, Memo. Op. at 11 (May 11, 2006) (holding that the Protective Order remained in effect, as Respondents conceded, and that the court had inherent authority to enforce it).

In enforcing the terms of the existing Protective Order, the Court acted well within its authority to maintain the status quo in a case pending resolution of questions of its own jurisdiction. *United States v. United Mine Workers*, 330 U.S. 258, 292 (finding that the district court retained power to maintain the status quo and punish violations of an injunction until the

question of its jurisdiction was resolved); *Application of President & Dir. of Georgetown College, Inc.*, 331 F.2d 1000, 1005 (D.C. Cir. 1964) ("[W]hether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was 'authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition.'") (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906)). This Court has reached the same conclusion in other cases involving jurisdictional questions arising out of the DTA. *See, e.g., Nasrullah v. Bush*, Memo. Order at 2 (June 12, 2006) (pending resolution of jurisdictional issues by the higher courts, the district court "is not powerless to take any action whatsoever with the case in its current posture").

Respondents contention that the Kay Order went far beyond what was necessary to maintain the status quo and constitutes a "radical reversal of long-standing practice under the Access procedures," *see* Resp. Motion at 15, is patently untrue and inconsistent with this Court's prior rulings. *See infra* Part A.2. The Kay Order did no more than enforce existing procedures embodied in the Protective Order to enable Petitioners to exercise their right to counsel recognized by this Court in *Al-Odah*. The Petition is properly before this Court, which "is authorized to craft the procedures necessary" for Petitioners to present their case, including "the authority to appoint counsel." *Al Odah*, 346 F. Supp. 2d. at 7. Respondents' contrary arguments have no basis in law and the Respondents' Motion for Reconsideration must be denied.

2. **The Kay Order complies with the plain language of the Protective Order and this Court's prior interpretations thereof and, therefore, is neither clearly erroneous nor contrary to law.**

Contrary to Respondents' arguments, *see* Resp. Motion at 19-31, Magistrate Judge Kay's interpretation of the Protective Order comports with the plain language of the Order, as well as its history and context. Respondents' arguments are entirely insufficient to mandate reconsideration of the Kay Order.

These arguments are identical to those previously raised in pending detainee cases and rejected by Magistrate Judge Kay, in the first instance, and District Judge Roberts, upon reconsideration. *See, e.g., Adem v. Bush*, Civ. No. 05-723 (RWR)(AK), Memo. Opinion (Mar. 14, 2006), *affirmed*, Memo. Opinion and Order (D.D.C. Apr. 28, 2006); *Doe v. Bush*, Civ. No. 05-1704 (JR)(LFO)(AK), Memo. Order (May 11, 2006).[6] Moreover, the same Protective Order has been entered after passage of the DTA in numerous other detainee cases[7] and consistently construed according to its plain terms -- clearly demonstrating its continued propriety and vitality.

Respondents' arguments as to the "proper" interpretation of the Protective Order were fully addressed and rejected by Magistrate Judge Kay in a thirty-three page opinion the *Adem* case, *see Adem v. Bush*, Civ. No. 05-723 (RWR)(AK), Memo. Opinion (Mar. 14, 2006), which District Judge Roberts affirmed on April 28, 2006, *see Adem v. Bush*, Civ. No. 05-723 (RWR)(AK), Memo. Opinion and Order (D.D.C. Apr. 28, 2006). Because Respondents refused to accept either decision, Judge Kay was obliged to enter substantially the same rulings on May 11, 2006, in *Doe v. Bush*, Civ. No. 05-1704 (JR)(LFO)(AK), and again on June 29, 2006, in this case.

In rejecting the very same arguments made here in Respondents' Motion, District Judge Roberts explained that, not only does the plain language of the Protective Order *not* require a showing of direct evidence of authorization to represent a detainee as a prerequisite to an in-

---

[6] These orders have previously been included as exhibits in prior filings. See June 14, 2006 Pinney Decl., ¶ 4 & Ex. 2 (*Adem v. Bush*, Civ. No. 05-723 (RWR)(AK), Memo. Opinion (Mar. 14, 2006)), ¶ 5, Ex. 3 (*Doe v. Bush*, Civ. No. 05-1704 (JR)(LFO)(AK), Memo. Order (May 11, 2006)) (dkt. no. 54); July 10, 2006 Pinney Decl., ¶ 3 & Ex. 1 (*Adem v. Bush*, Civ. No. 05-723 (RWR)(AK), Memo. Opinion and Order (D.D.C. Apr. 28, 2006)).

[7] *See, e.g., Thabid v. Bush*, Civ. No. 05-2398 (Mar. 21, 2006) (Huvelle); *Razakah v. Bush*, Civ. No. 05-2370 (Mar. 17, 2006) (Sullivan); *Wahab v. Bush*, Civ. No. 05-886 (Jan. 10, 2006) (Sullivan); *Mohammad v. Bush*, Civ. No. 06-879 (Jan. 9, 2006) (Robertson); *Bostan v. Bush*, Civ. No. 05-883 (Jan. 9, 2006) (Robertson); *Khiali-Gul v. Bush*, Civ. No. 05-877 (Jan. 6, 2006) (Robertson); *Zadran v. Bush*, Civ. No. 05-2367 (Apr. 12, 2006) (Roberts); *Alsaaei v. Bush*, Civ. No. 05-2369 (Apr. 12, 2006) (Roberts); *Said v. Bush*, Civ. No. 05-2384 (Apr. 12, 2006) (Roberts); *Al Shareef v. Bush*, Civ. No. 05-2458 (Apr. 12, 2006) (Roberts); *Awad v. Bush*, Civ. No. 05-2379 (Apr. 11, 2006) (Robertson).

person meeting, as Respondents contend, but "[r]equiring a Guantánamo detainee to identify a specific lawyer from among all the volunteer lawyers -- most of whom are unknown to the detainee before a meeting -- is a meaningless exercise. It would be unconscionable to tether a detainee's access to counsel to such an unworkable prerequisite." *Adem v. Bush*, Civ. No. 05-723 (RWR)(AK), Memo. Opinion and Order, at 16 (D.D.C. Apr. 28, 2006).

District Judge Roberts also held that Respondents' "two-layer" interpretation of the Access Procedures verification requirements in cases presenting "next friend" *habeas* petitions, *see* Resp. Motion at 21, contravenes the clear language of the Protective Order, as the order provides no exception for issues concerning authorization by or next friend status of any petitioner. *Adem v. Bush*, Civ. No. 05-723 (RWR)(AK), Memo. Opinion and Order, at 11-12 (D.D.C. Apr. 28, 2006). Furthermore, because the plain language of the Protective Order is susceptible of a straightforward interpretation, the history and context of the text also is "unavailing." *Id.* at 13.

As District Judge Robert's concluded, Magistrate Judge Kay's rulings are based upon on the Protective Order's plain language and well-established rules of construction and are "well-supported in fact and law." *Adem v. Bush*, Civ. No. 05-723 (RWR)(AK), Memo. Opinion and Order, at 11 (D.D.C. Apr. 28, 2006). Accordingly, the Kay Order is neither clearly erroneous nor contrary to law and Respondents' Motion for Reconsideration must be denied.

3.   **Respondents have mischaracterized the Kay Order's findings and effect.**

Respondents argue that the Kay Order breaks from established precedent by "invent[ing] a new, third option for [*habeas*] standing," Resp. Motion at 26; that Judge Kay's critiques of the Respondents' notification efforts are unsupported, *id.* at 27-29; and that the "prejudicial impact" of the interpretation of the Access Procedures is "significant," *id.* at 30. These arguments exaggerate the work of this Court.

Judge Kay's Order does not, as the Respondents' suggest, Resp. Motion at 26-27, actually create *habeas* jurisdiction. Kay's interpretation requires that Notification of

Representation be filed in advance of obtaining client access and mandates that proper authorization, next friend or otherwise, be submitted within ten days of said meeting. Not only does this interpretation comport with the plain language of the Protective Order, it is also accounts for the communication difficulties and notification obstacles for detainees at Guantánamo.

Respondents also criticize Kay for his "critique" of their notification efforts. Resp. Motion at 27-29. No "legal basis" is necessary for the observation that the Government's notifications have been ineffectual. Aside from practical difficulties such as language and communication barriers, it is almost incomprehensible that a detainee, operating from a cell in Guantánamo with no knowledge of the United States legal system, and who may not even have access to pen and paper, is capable of filing a petition for *habeas corpus*. The challenge is great enough for teams of skilled lawyers representing the detainees on the pending cases. Kay's Order permitting counsel to meet with Petitioners, "in part so they may obtain the very authorization of representation that Respondents insist be provided prior to any visits," is true to the letter and spirit of the Protective Order. Kay Order at 5. To hold otherwise would render the Order's Access Procedures hollow promises.

Respondents' complaint that the Order forces it "to provide direct, privileged access to a wartime detainee in a military detention facility by counsel merely purporting to represent a detainee, without an appropriate showing by counsel of proof of appropriate authority to represent the detainee," Resp. Motion at 31-32, is simply untrue. First, as to the Uighurs, there is no "war," and these detainees have nothing to do with any armed conflict against the United States or its allies. Second, Respondents have, in fact, reversed their position on counsel access. Previously the Government complied with the Protective Order by allowing counsel, even in the case of a "next friend," at least two visits before insisting upon written evidence of authority. Third, all counsel for the detainees providing services on a *pro bono* basis are expending significant sums for travel and translators, have had to obtain security clearance, and are bound by the terms of the Protective Order. These factors mitigate against any security risk. Finally,

there is ample (and uncontroverted) evidence that these Petitioners want a lawyer.[8] Respondents will suffer no harm by permitting counsel to confirm Petitioners' desire by asking them in person if they still want representation.

B. **The Motion To Stay Should Be Denied Because The Potential Irreparable Harm To Petitioners Outweighs Respondents' Interest In Maintaining The Status Quo.**

Although counsel's previously scheduled July visit was unavoidably postponed due to Respondents' resistance to our Uighur interpreter,[9] access to our clients is urgently needed. We have been seeking access to these clients since September of 2005. Petitioners are now in their fifth year of imprisonment -- men who have never been charged with any crime, who contend that they have never been soldiers or otherwise hostile to America, and who appear to have been situated precisely as were five detainees the Government concedes were not enemy combatants.[10] As recent as June 10, 2006, three Guantánamo detainees, who evidently had despaired of ever receiving hearings, committed suicide at the base. *See generally* June 13, 2006 Pinney Decl., ¶ 7 & Ex. 5 (James Risen & Tim Golden, *3 Prisoners Commit Suicide at Guantánamo*, N.Y. TIMES, June 11, 2006, at A1). An officer at Guantánamo has said that he

---

[8] As Magistrate Judge Kay has indicated, Petitioners have provided "prima facie evidence that they **personally** authorized the challenge to the legality of their detention and sought the assistance of counsel by communicating those requests through a fellow detainee." Kay Order at 8 (emphasis in original). Fellow detainee, Jamal Kiyemba, submitted a signed statement listing the names of detainees who had come to him seeking help. *See* June 13, 2006 Pinney Decl., ¶ 6 & Ex. 4 (next-friend authorization from Kiyemba regarding Petitioners). Respondents have provided no evidence to contradict the signed witness statements that Petitioners want to challenge their detention and that they asked Kiyemba to help them get a lawyer. Kay Order at 10; *see also Adem v. Bush*, Civ. No. 05-723 (RWR)(AK), Memo. Opinion and Order, at (D.D.C. Apr. 28, 2006) (rejecting government's argument that petitioner should be dismissed for lack of next friend standing where government provided no evidence to contradict prima facie evidence that detainee desired to challenge his detention). Moreover, contrary to Respondents' position, a fellow-detainee is a sufficient "next friend" for jurisdictional standing purposes.

[9] The Government asserted that *habeas* counsel's Uighur interpreter did not have sufficient security clearance, even though she was *formerly employed by the Department of Defense to translate for Uighurs at Guantánamo*.

[10] As this Court stated in *Adem* and *Doe*, with respect to the year-plus battle of the petitioners in those cases to secure counsel, "[i]t is simply unacceptable to wait any longer." *See Adem v. Bush*, Civ. No. 05-723, Memo. Opinion, at 22-23 (Mar. 14, 2006); *Doe v. Bush*, Civ. No. 05-1704, Memo. Order, at 13 (May 11, 2006).

expects more suicide attempts. *See* Pinney June 13, 2006, Decl., ¶ 7 & Ex. 5 (Michael Gordon, *Officer Expects More Suicide Tries: Guantanamo Bay Colonel Says Homemade Nooses Seized*, CHARLOTTE OBSERVER, June 12, 2006, at 1A) ("'We have indications of more attempts any time now,' said [Colonel Michael] Bumgarner."). Despite Respondents' persistent efforts to delay visitation and maintain the "status quo," undersigned counsel are desperately concerned for the welfare of the Petitioners. We who have been to Guantánamo have observed the despair that is rampant there, along with the conviction among detainees that American justice is a fiction. Access to the Petitioners has never been more crucial.

Allowing counsel to visit Petitioners is nothing more than routine enforcement of a valid Protective Order. The Government's tired rhetoric does not change that fact. Accordingly, the Court should immediately affirm Magistrate Judge Kay's order so that counsel may proceed as planned to Guantánamo and deliver to Petitioners much anticipated legal representation.

### Conclusion

For the foregoing reasons, the Kay Order is neither clearly erroneous nor contrary to the law. Petitioners respectfully urge this Court to deny Respondents' Motion for Reconsideration and affirm the June 29, 2006 Memorandum Order of Magistrate Judge Kay, directing Respondents to permit counsel access to Petitioners.

|  |  |
|---|---|
| Dated: July 24, 2006<br><br>Of Counsel:<br><br>Barbara Olshansky<br>Deputy Director<br>CENTER FOR CONSTITUTIONAL RIGHTS<br>666 Broadway, 7th Floor<br>New York, NY 10012<br>Telephone: (212) 614-6439 | Respectfully submitted,<br><br>Petitioners Abdul Nassir, Abdul Sabour, Hammad Doe and Khalid Doe,<br><br>By their attorneys,<br><br>_____/s/ Neil McGaraghan_____<br>Sabin Willett<br>Rheba Rutkowski<br>Neil McGaraghan<br>Jason S. Pinney<br>Francesca Lucia Miceli<br>Ilisa Horowitz<br>BINGHAM McCUTCHEN LLP<br>150 Federal Street<br>Boston, MA 02110-1726<br>Telephone: (617) 951-8000<br>Facsimile: (617) 951-8925<br><br>Susan Baker Manning<br>BINGHAM McCUTCHEN LLP<br>1120 20th Street, NW, Suite 800<br>Washington, DC 20036-3406<br>Telephone: (202) 778-6150<br>Facsimile: (202) 778-6155 |

## CERTIFICATE OF SERVICE

I, Francesca L. Miceli, have this 24th day of July, 2006, served the foregoing PETITIONERS' MEMORANDUM IN OPPOSITION TO RESPONDENTS' EMERGENCY MOTION FOR STAY AND RECONSIDERATION OF MAGISTRATE JUDGE'S JUNE 29, 2006 MEMORANDUM by hand to the offices of court security officer:

Christine Gunning
U.S. Department of Justice
Compliance Review and Litigation Security
20 Massachusetts Avenue, NW
Suite 5300
Washington, DC  20044

*[signature]*
Francesca L. Miceli