## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMAL KIYEMBA, as Next Friend of
ABDUSABUR DOE, *et al.*,

    Petitioners,

v.

GEORGE W. BUSH, *et al.*,

    Respondents.

Case No. 1:05-cv-01509 (RMU)

**STATEMENT OF POINTS AND
AUTHORITIES IN SUPPORT OF
PETITIONERS' MOTION FOR
TEMPORARY RESTRAINING
ORDER AND PRELIMINARY
INJUNCTION [HEARING
REQUESTED]**

## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONERS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65 and the All Writs Act, 28 U.S.C. § 1651, and pending final

disposition of these *habeas corpus* petitions, Petitioners have moved for a temporary restraining

order and a preliminary injunction restraining and enjoining Respondents from detaining

Petitioners in any but the least restrictive camp within JTF-GTMO, including, without limitation,

that they be barred from any further imprisonment in the isolation regimens of Camps 5 and 6.

Petitioner Parhat has also requested an order directing that he be granted a telephone call with

counsel. As grounds for this relief, Petitioners say:

### Background

Petitioners Abdusabur, Abdusemet, Hammad Mehmet, Huzaifa Parhat, Jalal Jalaldin,

Khalid Ali, and Sabir Osman (hereinafter "Petitioners")[1] are prisoners at the United States Naval

---

[1] Petitioner Abdulnasir has not sought this relief, because, on information and belief, he is
already housed at Camp 4.

Station, Guantánamo Bay, Cuba ("Guantánamo"). Petitioners have been imprisoned at Guantánamo since May, 2002. As detailed in previous filings before this Court, Petitioners are ethnic Uighurs ("WEE-ghurs") from the Xinjiang Uyghur Autonomous Region, a province of the People's Republic of China (also referred to as "East Turkistan"). Uighurs are a Turkic Muslim minority group that has been, and continues to be, brutally oppressed by the communist Chinese government. The Government has repeatedly and publicly acknowledged that the Uighurs imprisoned at Guantánamo have been eligible for release for at least four years. *See, e.g.,* Interview with Colin Powell, Secretary of State, in Washington, D.C., at 5 (Aug. 12, 2004) ("[T]he Uighurs are a difficult problem and we are trying to resolve all issues with respect to all detainees at Guantánamo. The Uighurs are not going back to China, but finding places for them is not a simple matter, but we are trying to find places for them. And we are trying to find places for them, and, of course, all candidate countries are being looked at."). Despite such acknowledgements, Petitioners remain imprisoned at Guantánamo.

On June 20, 2008, pursuant to the Detainee Treatment Act of 2005, the United States Court of Appeals for the District of Columbia held invalid a decision of a Combatant Status Review Tribunal ("CSRT") that Petitioner Huzaifa Parhat ("Parhat") is an enemy combatant. *Parhat v. Gates*, No. 06-1397. A copy of the Notice summarizing the decision is attached as Exhibit 1 hereto. The court directed the government to release or to transfer Parhat, or expeditiously to hold a new CSRT consistent with the court's opinion.[2]

As to Parhat, the D.C. Circuit has now ruled that the government has failed to make a case for enemy combatant status. The status quo is that the government has no lawful basis to detain Parhat. For the same reason, the government has no lawful basis to detain the other

---

[2] The Court of Appeals is preparing a redacted version of its opinion for public release. We are informed and believe that a copy of the classified opinion has been supplied to the Court.

Kiyemba Petitioners, each of whom was identically situated to Parhat. Moreover, Parhat and the other Kiyemba Petitioners were all identically situated to the five Uighurs released to Albania in 2006 after revelation that the military itself had concluded that they were not "enemy combatants."

In late 2006, Petitioners were transferred to conditions of almost complete isolation at Guantanamo's Camp 6. Petitioners have suffered (and on information and belief all but one today continue to suffer) astonishingly harsh, and potentially deadly isolation.

**Argument**

**A.    This Court's Habeas Jurisdiction Gives it Ample Basis to Grant the Relief Requested.**

Petitioners expect shortly to move for an order directing their release, if necessary, into the United States. Petitioners expect the government to resist this request for relief. In the interim, however, the Court has broad power to fashion equitable relief as may be necessary in aid of its equity jurisdiction in habeas cases. *See SEC v. Vision Commc'ns, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996) (noting that the All Writs Act "empowers a district court to issue injunctions to protect its jurisdiction"); *see also Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (noting that centuries of tradition confirm that federal judges have "broad discretion in conditioning a judgment granting habeas relief"); *see* 28 U.S.C. § 2243 (directing courts to "dispose of [a habeas case] as law and justice require"); *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968) ("mandate [of § 2243] is broad with respect to the relief that may be granted"); *Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (habeas "never has been a static, narrow, formalistic remedy").

The Court also has broad and specific authority to order appropriate relief under habeas corpus, including relief in the nature of bail or parole, addressed to the condition or maintenance

of the prisoner prior to final resolution of the *habeas* petition. *Baker v. Sard*, 420 F.2d 1342,

1343 (D.C. Cir. 1969) (noting that a district court has "an inherent power to grant relief *pendente*

*lite*, to grant bail or release, pending determination of the merits" and that "[r]elease is available

in a habeas corpus action, which is a civil collateral attack"); *Mapp v. Reno*, 241 F.3d 221, 226

(2d Cir. 2001) (citing to *Baker*, 420 F.2d at 1343); *Ostrer v. United States*, 584 F.2d 594, 596 n.1

(2d Cir. 1978); *Boyer v. City of Orlando*, 402 F.2d 966, 968 (5th Cir. 1968) (ordering the release

of a habeas petitioner on bail pending exhaustion of state and federal remedies).  In addition, the

writ of habeas corpus has long dealt with movement of prisoners. *See, e.g., United States v.*

*Mauro*, 436 U.S. 340, 357 (1978) (power to issue writs of habeas corpus includes authority to

issue such a writ when it is necessary to bring a prisoner into court to testify or for trial or to

remove a prisoner in order to prosecute him in the proper jurisdiction where offense was

committed).

        In light of the D.C. Circuit's June 20 ruling, the alarming deterioration in their

psychological well-being, and astonishing length of these imprisonments, Petitioners have an

urgent need, which cannot be remedied at law, to be protected from further exposure to the harsh

regime of Camp 6 (or Camp 5, where conditions are similar).  Both the continued detention of

Parhat, now that a court has determined that the government has no lawful basis to detain him,

and the conditions of his confinement violate Common Article 3 to the Geneva Convention

Relative to the Treatment of Prisoners of War, which prohibits "violence to life and person, in

particular . . . cruel treatment and torture[.]" *See* Art. 3 ¶1(a), Aug. 12, 1949, 6 U.S.T. 3316,

3320, 75 U.N.T.S. 135; *Hamdan v. Rumsfeld*, 548 U.S. 557, 126 S. Ct. 2749, 2757 (2006).

        On information and belief, accommodations for Petitioners are immediately available in

Camp 4.  Camp 4, on information and belief, (i) already houses one of the Uighurs, the Court's

petitioner Abdulnasir, (ii) permits prisoners to live communally in a bunk-house arrangement,

and (iii) represents the least restrictive imprisonment regimen currently available at JTF-GTMO.

Movement to Camp 4 would also assist with the overall goal of helping Petitioners

recover from their psychological cruelty of their isolation, and readying them for transfer to the

United States or an appropriate country.

**B.    There is an Equitable Basis for Injunctive Relief Here.**

This case does not fall within the Federal Rules of Civil Procedure, but the Court's All

Writs authority gives it power to enter injunctions as appropriate. Reference to the standard for

the issuance of injunctions shows that each of the four factors to be weighed in awarding

preliminary injunctive relief favors the requested injunction here: (1) the Petitioners will suffer

irreparable harm if the injunction is denied; (2) no harm will be suffered by Respondents if the

injunction is granted; (3) Petitioners are likely to succeed on the merits of their claims (indeed,

the D.C. Circuit's decision in *Parhat v. Gates* provides *certainty* on the merits) and (4) there is a

clear public interest in preventing the government from detaining individuals in astonishingly

harsh, and potentially deadly isolation, particularly where the government has no lawful basis to

detain them. *See Al-Fayed v. CIA*, 254 F.3d 300, 304 (D.C. Cir. 2001); *Serono Labs., Inc. v.

Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); *Mova Pharm. Corp. v. Shalala*, 140 F.3d

1060, 1066 (D.C. Cir. 1998).

**C.    A Telephone Call to Mr. Parhat is Appropriate.**

The Habeas Protective Order recognizes that Respondents may, in their discretion, allow

telephone calls. *See* Amended Protective Order and Procedures for Counsel Access to Detainees

of the United States Naval Base, Guantanamo Bay, Cuba, *In re Guantanamo Detainee Cases*,

No. 02-0299 (D.D.C. Nov. 8, 2004), Exhibit A attached thereto at 8. Counsel for Petitioners

have requested a telephone call with Parhat to communicate to him the unclassified summary of the Parhat decision, and to explain to him the advice regarding the next steps in connection with his habeas corpus petition. The undersigned represent Petitioners on a pro bono basis, and it would be a hardship to make a special trip to communicate this development, particularly where two of the undersigned returned from Guantánamo just days ago. Parhat therefore requests that this Court order Respondents to allow his counsel to conduct a telephone call with him for the above stated reasons.

### Other Matters

Pursuant to Local Rule 7(m), counsel on June 23, 2008 sought the government's consent to a grant of this relief. No consent has been given.

As the prisoners are destitute, the Court should waive any requirement for a bond.

A grant of the relief requested herein lies within the sound discretion of the Court.

Petitioners have sought this emergency relief to address only the gravest, most immediate and emergent harms they are unlawfully suffering. Petitioners reserve all rights to seek other and further relief, and expect to seek such relief by means of further motion.

**WHEREFORE**, Petitioners request that their Motion be allowed, and that they be granted such other and further relief as may be just and proper.

Dated:  June 25, 2008

_____

Susan Baker Manning
susan.manning@bingham.com
BINGHAM McCUTCHEN LLP
1120 20th Street NW, Suite 800
Washington, DC  20036-3406
Telephone:   (202) 778-6150
Facsimile:   (202) 778-6155

_____

Sabin Willett
sabin.willett@bingham.com
Neil McGaraghan
neil.mcgaraghan@bingham.com
Rheba Rutkowski
rheba.rutkowski@bingham.com
Jason S. Pinney
jason.pinney@bingham.com
BINGHAM McCUTCHEN LLP
One Federal Street
Boston, MA  02110-1726
Telephone:   (617) 951-8000
Facsimile:   (617) 951-8736

## CERTIFICATE OF SERVICE

I certify that, on this 25th day of June, 2008, I served the foregoing Statement of Points and Authorities in Support of Petitioners' Motion For Temporary Restraining Order and Preliminary Injunction on the Respondent's counsel of record by depositing copies with the Court Security Officer as provided by the Amended Protective Order and Procedures for Counsel Access to Detainees of the United States Naval Base, Guantanamo Bay, Cuba, *In re Guantanamo Detainee Cases*, No. 02-0299 (D.D.C. Nov. 8, 2004). I am informed and believe that, pursuant to the same protective order, the Court Security Officer will cause copies to be delivered by hand to Robert M. Loeb, Attorney, Appellate Staff, Civil Division, Room 7268, Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530-0001.


Sabin Willett (Bar No. 50134)

A/72577071.1

# EXHIBIT 1

.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 06-1397**                                     **September Term 2007**

**Filed On:** June 23, 2008

Huzaifa Parhat,

    Petitioner

    v.

Robert M. Gates, Secretary of Defense, et al.,

    Respondents

    **BEFORE:**    Sentelle, Chief Judge, and Garland and Griffith, Circuit Judges

## N O T I C E

On Friday, June 20, 2008, the court issued an opinion to the parties in the above-captioned case. Pursuant to the Detainee Treatment Act of 2005, the court held invalid a decision of a Combatant Status Review Tribunal that petitioner Huzaifa Parhat is an enemy combatant. The court directed the government to release or to transfer Parhat, or to expeditiously hold a new Tribunal consistent with the court's opinion. The court also stated that its disposition was without prejudice to Parhat's right to seek release immediately through a writ of habeas corpus in the district court, pursuant to the Supreme Court's decision in *Boumediene v. Bush*, No. 06-1195, slip op. at 65-66 (U.S. June 12, 2008). Because the opinion contains classified information and information that the government had initially submitted for treatment under seal, a redacted version for public release is in preparation.

### Per Curiam

                    **FOR THE COURT:**
                    Mark J. Langer, Clerk

            BY:    /s/Nancy G. Dunn
                    Deputy Clerk