IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:

GUANTANAMO BAY
DETAINEE LITIGATION

Misc. No. 08-CV-442 (TFH)

Civil Action Nos. 05-1509 (RMU)
05-1602 (RMU)
05-1704 (RMU)
05-2370 (RMU)
05-2398 (RMU)
08-1310 (RMU)

**JOINT STATUS REPORT**

Pursuant to the Court's August 12, 2008 Order, undersigned counsel for petitioners and respondents in the above-captioned cases jointly state as follows:

1. *Petitioner's Name, ISN, and Status*

Attached hereto as Exhibit 1 is a chart listing the agreed-upon name of each petitioner, petitioner's ISN number, the name of each petitioner as listed in petitioner's habeas petition, the date of petitioner's capture, and the date petitioner was approved for transfer either for release or for possible detention, investigation, and/or prosecution as the receiving government deems appropriate under its own laws.

2. *Status Of Next-Friend Authorizations*

*a. Petitioners' Position*

The chart attached herewith as Exhibit 2 sets forth the name of each Petitioner's Next Friend and the date of his Next Friend Authorization. As each Petition was filed pursuant to a valid Next Friend Authorization, we have not addressed the ability of the Court to proceed with these cases without such authorization. Respondents have not advised whether they intend to contest the validity of Petitioners' Next Friend Authorizations. To the extent Respondents raise a challenge to

these authorizations now or in the future, Petitioners reserve the right to respond accordingly in subsequent briefing.

*b. Respondents' Position*

The habeas corpus petitions in these cases were filed in 2005 by putative "next friends" on behalf of the seventeen Uighur petitioners currently seeking relief. With the exception of petitioner Edham Mamet (ISN 102), whose brother is serving as his next-friend, the other sixteen petitions are brought by two former Guantanamo Bay detainees purporting to act as a "next friend." Because the petitioners seeking relief have not filed direct authorizations with this Court, it is unknown whether they consent to this matter proceeding. Accordingly, petitioners' counsel should be required to file a direct authorization from each of the petitioners.

To that end, on July 29, 2008, Judge Hogan issued an order requiring petitioners' counsel in most of the Guantanamo Bay habeas cases to file signed authorizations from the petitioners within sixty days (or ninety days for petitions filed on or after May 19, 2008). *See In re Guantanamo Bay Detainee Litigation*, July 29, 2008 Order (Misc. No. 08-442) at 2 (dkt. no. 210). In the alternative, Judge Hogan ordered petitioners' counsel to file a declaration stating that petitioners directly authorized counsel to pursue the action and to explain why counsel was unable to secure a signed authorization. *Id.* Judge Hogan's July 29 Order was entered in all of the above-captioned cases except *Razakah v. Bush*, 05-CV-2370.[1] To ensure consistency among the consolidated Uighur cases and to assure the Court that the petitioners on whose behalf relief

---

[1] Although the claims of petitioners Abdul Ghappar Abdul Rahman (ISN 281) and Adel Noori (ISN 584) have now been given a new civil action number (08-1310) in accordance with the Court's order of July 9, 2008 (08-MC-0442, dkt. no. 44), petitioners Rahman and Noori were still petitioners in Civil Action No. 05-2386 at the time Judge Hogan issued the July 29, 2008 Order. Consequently, the terms of that order apply to petitioners Rahman and Noori.

is being sought in fact desire legal representation, this Court should extend the portion of Judge Hogan's July Order requiring the filing of a direct authorization to the petitioners in *Razakah*.[2]

In the event any of the petitioners do not file the required direct authorizations or declarations by September 29, 2008, proceedings in those cases should cease and the cases should be dismissed for lack of proper next friend standing. *See Whitmore v. Arkansas*, 495 U.S. 149 (1990).

3. *Respondents' Efforts To Resettle Petitioners*

Submitted separately herewith as Exhibit 3 is the classified declaration of former Ambassador Pierre-Richard Prosper, Ambassador At Large For War Crimes Issues, filed in August 2005 in *Qassim v. Bush*, 05-CV-497 (JR). The declaration describes the Department of State's efforts to pursue resettlement options for the Uighur petitioners as of August 2005. The full submission cannot be filed on the public record because it contains classified information. The full submission will be filed with the Court under seal through the Court Security Office, pursuant to the protective orders entered in the above-captioned cases. Respondents will also provide a copy of the submission in its entirety to petitioners' counsel at the secure work facility for habeas counsel. A redacted copy of the declaration is attached hereto for filing on the public record.

Respondents have also undertaken to provide a supplemental declaration from the current

---

[2] *Razakah v. Bush*, 05-CV-2370, was excluded from Judge Hogan's July 29 Order because the case was originally assigned to Judge Sullivan, who has retained the Guantanamo Bay cases originally assigned to him, but has since reassigned *Razakah* to this Court's docket. For this reason, the petitioners in *Razakah* were not included in the parties' July 21, 2008 Joint Status Report to Judge Hogan. *See* 08-MC-0442, dkt. no. 170. The status of the two petitioners in the *Razakah* case is noted in the chart attached hereto as Exhibit 1.

Ambassador At Large For War Crimes Issues, Clint Williamson, that updates the information provided in the 2005 Prosper Declaration. Since the Court issued its August 12, 2008 Order, however, Ambassador Williamson has been traveling outside of Washington, D.C. and, therefore, has not been in a position to handle classified national security information or otherwise provide a declaration containing classified information. Ambassador Williamson returns to the Department of State tomorrow (August 19, 2008) and respondents will respectfully request that the Court accept the filing of Ambassador Williamson's classified declaration at that time.

4. *Further Proceedings And Submission Of Factual Returns*

*a.1. Petitioners' Response to the Court's Request for Information Concerning the Necessity of Factual Returns*[3]

Respondents should produce Petitioners' factual returns - and the Court should schedule prompt *habeas corpus* hearings - unless and until Respondents concede that Petitioners are not enemy combatants and release them from Guantánamo. Petitioners filed *habeas corpus* petitions to challenge a deprivation of their liberty and their "enemy combatant" status. Each day they remain in Guantánamo, they suffer the harm these actions were filed to remedy. The harm of indefinite detention is so grievous that even an adjudicated criminal alien who has never entered the United States must be released into the United States when faced with the prospect of indefinite detention. *See Clark v. Martinez*, 543 U.S. 371, 386 (2005); *cf.* Braden v. 30th Jud.

---

[3] Following the Court's August 12, 2008 Order, Petitioners' counsel contacted Respondents' counsel in an effort to determine whether the parties could reach an agreement on this issue and present a joint response to the Court. Respondents' counsel advised that they did not believe such an agreement was possible and therefore suggested that Petitioners and Respondents each present their respective views to the Court in separate filings.

Ct. of Ky., 410 U.S. 484, 490 (1973) (noting interest of society and prisoner in preserving habeas as a swift and imperative remedy to indefinite confinement); *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (rejecting indefinite stay in habeas case). Indeed, the need for production of factual returns and prompt judicial review is never greater than where, as here, Petitioners have long been cleared for release but afforded no judicial review on the merits of their detention. *Cf. Jones v. Shell*, 572 F.2d 1278, 1280 (8th Cir. 1978) (habeas is reduced to sham if trial courts do not act promptly).[4]

Petitioners believe the merits of their petitions for *habeas corpus* have already been resolved by the D.C. Circuit's decision in *Parhat v. Gates*, No. 06-1397, --- F.3d ---, 2008 WL 2576977 (D.C. Cir. June 20, 2008), *rhg. pet. pending* (filed Aug. 4, 2008) (*See a.2 infra*). In response to the D.C. Circuit's decision, Respondents have indicated they will treat Petitioner Huzaifa Parhat (ISN 320) "as if he were no longer an enemy combatant." Resp'ts' Combined Opp'n To Parhat's Mot. For Immediate Release Into the U.S. and Mot. For J. On His Habeas Pet. at 1-2, *Kiyemba v. Bush*, No. 05-cv-1509 (RMU) (D.D.C. Aug. 5, 2008) ("Resp'ts' Opp. To Parhat Release Mot."). On August 18, 2008, Respondents' counsel further advised that the government will afford the same treatment to Petitioners Khalid Ali (ISN 280), Sabir Osman (ISN 282), Abdul Semet (ISN 295) and Jalal Jalaldin (ISN 285). However, as of this filing

---

[4] Even if Petitioners are released from Guantánamo, the Court must adjudicate their status as "enemy combatants" through habeas hearings because such a designation exposes them to collateral consequences including the stigma of being falsely labeled as terrorists, which jeopardizes their future employability, freedom to travel and freedom from persecution and torture. Indeed, unless and until Respondents concede that Petitioners are not enemy combatants - as opposed to simply treating or considering them as such - the collateral consequences doctrine entitles them to have their claims heard through habeas. *See Qassim v. Bush*, 466 F.3d 1073 (D.C. Cir. 2006) (collateral consequences, if established, could have provided grounds for released Uighur prisoners to pursue habeas relief).

Respondents have refused to advise Petitioners' counsel whether they will concede the application of the Parhat decision to the remaining twelve Uighur Petitioners.

If Respondents contest the merits of the cases of these twelve Petitioners, then they "are entitled to a prompt *habeas corpus* hearing," *Boumediene v. Bush*, 128 S. Ct. 2229, 2275 (2008), and Petitioners will need factual returns in advance of those hearings to respond to the allegations against them. Even if Respondents do not intend to contest the merits of any of these cases, however, factual returns are still necessary to resolve the all important question of remedy. As the Court is aware, Petitioner Parhat has filed a motion for judgment on his habeas petition ordering his release into the continental United States and a motion for immediate release on parole into the continental United States pending final judgment on his *habeas* petition. Respondents have opposed Parhat's motions, and while they concede that the merits of his habeas action have been resolved in Parhat's favor, they continue to assert that the "circumstances of [Parhat's] capture and detention" justify denying him the relief he seeks. Resp'ts' Opp. To Parhat Release Mot. at 9. Petitioners anticipate that Respondents will make similar arguments in response to any subsequent motions for such relief by the remaining sixteen Uighur Petitioners. If Respondents assert that the factual circumstances of Petitioners' capture and detention justify denying them release or parole into the United States, then Petitioners are entitled to factual returns to their *habeas* petitions and prompt *habeas* hearings so that they may meaningfully respond to these allegations.

Five Petitioners - Edham Mamet (ISN 102), Abdur Razakah (ISN 219), Ahmad Tourson (ISN 201), Anwar Hassan (ISN 250) and Dawut Abdurehim (ISN 289) - have already received a factual return consisting of the classified and unclassified records of their Combatant Status

Review Tribunal ("CSRT") proceedings pursuant to court orders in their *habeas* actions. Eight Petitioners - Abdul Nasser (ISN 278), Abdul Semet (ISN 295), Hammad Memet (ISN 328), Huzaifa Parhat (ISN 320), Jalal Jalaldin (ISN 285), Khalid Ali (ISN 280), Sabir Osman (ISN 282) and Abdul Ghappar Abdul Rahman (ISN 281) have received these same records pursuant to court orders that the government produce the record on review in their parallel actions filed under the Detainee Treatment Act of 2005, Pub. L. No. 109-148, §§ 1001-06 ("DTA"). Petitioners Bahtiyar Mahnut (ISN 277) and Arkin Mahmud (ISN 103) have received only the unclassified portions of their CSRT records in their *habeas* actions. Petitioner Abdul Sabour (ISN 275) has received only the unclassified portion of his CSRT record in his DTA action. Petitioner Adel Noori (ISN 584) has not received any portion of his CSRT record, although the "unclassified summary" of evidence presented to his CSRT is publicly available as a result of a court order enforcing compliance with a Freedom of Information Act request by the Associated Press. The government has been under court order since 2007 to produce classified and unclassified CSRT records for Petitioners Abdul Sabour, Bahtiyar Mahnut, Arkin Mahmud and Adel Noori in their DTA actions. Therefore, there is no justification to further delay production of these documents.

Additionally, should Respondents wish to supplement the factual return of any Petitioner with allegations beyond those asserted by the CSRT - allegations which the government maintains have justified Petitioners' detention for the past six years - they should be required to file motions to amend and attach to their motion the proposed amended factual return, and the Court should allow amendment only where Respondents establish cause, consistent with Judge Hogan's order dated July 11, 2008 (Dkt. No. 53 in Misc. No. 08-442).

*a.2. Petitioners' Recommendation as to How the Court Should Proceed*

Petitioners recommend that the Court enter an order: (1) requiring Respondents to state by August 28, 2008 whether they concede that Petitioners are not enemy combatants; (2) requiring Respondents to state simultaneously whether they otherwise concede that the merits of Petitioners' *habeas* claims are resolved by *Parhat*; (3) promptly adjudicating Petitioner Parhat's pending motions for release and parole into the United States; and (4) if Respondents do not concede that Petitioners are not enemy combatants and/or if Parhat's motions are denied, requiring production of factual returns by September 4, 2008 and scheduling prompt *habeas* hearings.

Petitioners believe that the D.C. Circuit's decision in *Parhat* is dispositive of the merits of each Petitioner's *habeas* claim. In *Parhat*, the court ruled that the December 2004 CSRT determination that Parhat is an enemy combatant was invalid. 2008 WL 2576977, at *1. Accordingly, it directed the government to release Parhat, to transfer him or "to expeditiously convene a new CSRT to consider evidence submitted in a manner consistent with [the court's] opinion." *Id.* at *15. Although the D.C. Circuit afforded Respondents the opportunity to offer additional evidence before a new CSRT in order to establish that Parhat is an enemy combatant, the government has declined to do so, instead conceding that "it would serve no useful purpose to engage in further litigation over [Parhat's] status." Petition for Rehearing at 1, *Parhat v. Gates*, No. 06-1397 (D.C. Cir. Aug. 4, 2008).[1] The government has also represented that "it will

[1] Although the government has filed a petition for rehearing in *Parhat*, it does not seek reconsideration of the merits of Parhat's prior designation as an enemy combatant. Rather, the government has asked only the DC Circuit to "clarify that it did not purport to resolve the scope of a district court's [sic] to order Parhat's release into the United States." *Id.* at 3.

treat Parhat as if he were no longer an enemy combatant," a course of action that it believes "should resolve the merits of Parhat's habeas claim." *Id*. at 1-2.

The remaining sixteen Uighur Petitioners are in all material respects identically situated to Parhat. Although they have been approved to leave Guántanamo by the U.S. Department of Defense, each was designated an enemy combatant and has been held in extrajudicial detention since 2002 on the basis of the same core allegations that the D.C. Circuit found wanting against Parhat himself. Parhat's CSRT determined that he was an enemy combatant on the theory that he was "affiliated" with a Uighur independence group known as the East Turkistan Islamic Movement ("ETIM"), that ETIM was "associated" with al Qaeda and the Taliban, and that ETIM is engaged in hostilities against the United States and its coalition partners. *Id*. at *3. But the court in *Parhat* found that the government's evidence linking ETIM to al Qaeda and the Taliban and its evidence of ETIM's alleged hostile actions against the United States and its coalition partners was inadequate. *Parhat*, 2008 WL 2576977, at *1. Therefore, the court held that the government's "bare assertions cannot sustain the determination that Parhat is an enemy combatant." *Id*. at *24.

For the same reason, these assertions cannot support the determination that *any* Uighur Petitioner is an enemy combatant. All of the Uighur Petitioners are alleged to be affiliated with ETIM. *See Thabid v. Bush*, No. 05-CV-2398 (ESH) (D.D.C.) (dkt no. 27, Ex. A at 29) (Unclassified Department of Defense Report, Oct. 30, 2004).[2] Indeed, Respondents have long

[2] The Unclassified Department of Defense Report, prepared by Respondents in advance of the Uighurs' CSRT proceedings, purports to detail the age of each of the twenty-two Uighurs then detained at Guantánamo, when they left China, the dates of their most recent interrogations and whether they exhibited any disciplinary problems in the previous year. While these details obviously differ as to each prisoner, the Report also sets forth the substantive allegations against them – allegations which are *identical* as to all of the Uighurs, including Parhat

acknowledged that all of the Uighur prisoners in Guantánamo are identically situated "notwithstanding a specific act" attributable to some subset of the group. An email from one of Respondents' agents, released pursuant to court order in *Thabid v. Bush*, No. 05-cv-2398 (ESH) (D.D.C.), and written at the time of Petitioner Anwar Hassan's CSRT proceeding, indicates that (i) Respondent ordered a new CSRT proceeding for Anwar Hassan after he had initially been found *not* to be an enemy combatant; (ii) Respondent did so in order to further "exploit" the Uighurs in Guantánamo; and (iii) Respondent had no legitimate basis to distinguish those Uighurs deemed to be enemy combatants from those deemed not to be enemy combatants. The email stated:

> Two points to consider in determining [Anwar Hassan's] status:
>
> - 16 of 22 Uighers have been classified as [enemy combatants ("EC")] and the same criteria applied (Per SPECIAL Uigher Chart) to them as well. Inconsistencies will not cast a favorable light on the CSRT process or the work done by [the Office for the Administrative Review of the Detention of Enemy Combatants ("OARDEC")]. This does not justify making a change in and of itself, but is a filter by which to look at the overall Uigher transaction since *they are all considered the same notwithstanding a specific act.*
>
> - By properly classifying them as EC, then there is an opportunity to (1) further exploit them here in GTMO and (2) when they are transferred to a third country, it will be controlled transfer in status. The consensus is that all Uighers will be transferred to a third country as soon as the plan is worked out.

*In re Petitioner Ali*, No. 06-1194, Petition for Original Writ of Habeas Corpus (S. Ct. filed Feb. 13, 2007) at 8 (emphasis added).

---

and five Uighurs who were later classified as non-enemy combatants and released. The Report alleges that each of the Uighurs "has been suspected as being a probable member of [ETIM]. He is suspected of having received training in an ETIM training camp in Afghanistan." *Id*.

Respondents have now conceded "that the rationale . . . supporting [the D.C. Circuit's] ruling in *Parhat* applies equally" to four additional Uighurs – Petitioners Khalid Ali (ISN 280), Sabir Osman (ISN 282), Abdul Semet (ISN 295) and Jalal Jalaldin (ISN 285) – "noting the lack of findings by the [CSRTs] regarding the reliability of evidence, and concluding that [the court] could not determine that the material was on its face reliable." Gov't's Mot. To Enter J. From *Parhat v. Gates* In These Actions, With Modification, And To Remove Cases From Oral Argument Calendar at 2, *Abdusemet v. Gates*, No. 07-1509, No. 07-1510, No. 07-1511, No. 07-1512 (D.C. Cir. Filed Aug. 18, 2008). Respondents have also indicated that they will now "treat these [additional four Uighur] petitioners, like Parhat, as if they were no longer enemy combatants." *Id*. at 4. The only factor distinguishing these four from the remaining twelve Uighur Petitioners is that each has a motion for judgment as a matter of law pending before the D.C. Circuit in their parallel actions filed under the DTA. *See Ali v. Gates*, No. 07-1511 (D.C. Cir. Filed June 12, 2008); *Osman v. Gates*, No. 07-1512 (D.C. Cir. Filed June 12, 2008); *Abdusemet v. Gates*, No. 07-1509 (D.C. Cir. Filed June 12, 2008); and *Jalaldin v. Gates*, No. 07-1510 (D.C. Cir. June 12, 2008).

Although *Parhat* was decided nearly two months ago, as of this filing the government has refused to share its position as to whether the decision has equal application to the remaining twelve Uighur Petitioners. But in that time the government has offered no indication that it regards any Uighur currently detained in Guantánamo as materially distinguishable from Parhat, or that it intends to offer additional evidence against them to support their continued detention. Respondents' refusal to state their position on this issue has thus far prevented the parties from determining the remaining contested issues in this litigation. Therefore, as an initial matter, the Court should order Respondents to identify by August 28 every Uighur Petitioner who Respondents will reclassify as

a noncombatant on the basis of the *Parhat* decision. To the extent Respondents will not concede the *Parhat* decision's application to any Uighur Petitioner, the Court should order Respondents to produce their factual returns by September 4 and schedule "prompt" *habeas* hearings. *See Boumediene*, 128 S. Ct. at 2275. The factual returns should, among other things, state the allegations against Petitioners other than their alleged affiliation with ETIM that purportedly justify their continued designation as enemy combatants. Petitioners reserve the right to propose an appropriate procedural framework for their *habeas* hearings after Respondents have specified the nature of the allegations against them.

On the other hand, if Respondents are prepared to concede that the merits of Petitioners' *habeas* claims are resolved then the only remaining issue for this Court to decide is the appropriate remedy. Parhat's motion for release into the United States and his motion for immediate parole into the United States are now fully briefed, and we would urge the Court to consider those motions on an expedited basis. Each of the remaining sixteen Petitioners anticipate that they will promptly move this Court for similar relief, either by fully adopting the arguments set forth in Parhat's moving papers or by filing their own briefs in support of such relief.

*a.3. Petitioners' Position On Remaining Issues*

The Department of Defense has announced that it currently is in the process of modifying the maximum security facility known as Camp VI, to provide more "intellectual stimulation" for the prisoners. *See, e.g.*, Carol J. Williams, *Los Angeles Times*, August 2, 2008. It is Petitioners' position that under the circumstances, it is imperative that Respondents promptly advise the Court and Petitioners' counsel concerning these plans, including a timetable for when they will be completed.

As recently as August 2, 2008, Rear Admiral Dave Thomas, Commander of the military prison at Guantánamo showed reporters renovations that were underway to allow some of the men in Camp VI to eat, visit and exercise together. Because at least six of the 17 Uighur prisoners are still confined in Camp VI under conditions of near-isolation – and because these conditions have resulted in a marked deterioration in their mental health – it vitally important for Petitioners to know whether and when the conditions in Camp VI will be modified. While we understand that this Court has ruled that Petitioners did not demonstrate in their recently filed motion for a preliminary injunction and temporary restraining order that the Court has jurisdiction to order their transfer from Camp VI, we respectfully request that the Court inquire as to Respondents' progress on the Camp VI renovations and plans for improving conditions. Petitioners' counsel also respectfully request that the Court order Respondents to identify the Camp in which each Uighur Petitioner is currently housed and to notify Petitioners' counsel within 48 hours following their future transfer to any other Camp within Guantánamo.

Finally, Petitioners respectfully request that the Court enter an order clarifying that Judge Hogan's order dated July 10, 2008 (Dkt. No. 52 in Misc. No. 08-442), applies to Petitioners Abdul Ghappar Abdul Rahman and Adel Noori. The July 10 order – which requires that Respondents provide the Court and Petitioners with 30-days' advance notice of any intended removal of Petitioners from Guantánamo – was previously entered as to them when they were petitioners in *Mohammon v. Bush*, No. 05-cv-2386 (RBW) before the Court assigned them a new civil action number, although there is no indication in the court's docket that the order applies to them.

*b. Respondents' Position On Further Proceedings And Submission Of Factual Returns*

In light of the Court of Appeals' decision in *Parhat v. Gates*, __ F.3d __, 2008 WL 2576977 (D.C. Cir. 2008), *rhg. pet. pending* (filed August 4, 2008), respondents are in the process of completing a comprehensive review of the status of the seventeen Uighur petitioners in the above-captioned cases. As explained in respondents' opposition to petitioner Parhat's motion for immediate release into the United States (05-1509; dkt no. 147), respondents have determined that it would serve no useful purpose to engage in further litigation over petitioner Parhat's enemy combatant status. Consequently, respondents plan to house Parhat as if he were no longer an enemy combatant while efforts continue to resettle him in a foreign country. Parhat would, after transfer to such special housing, remain there until he is resettled to another country, provided he complies with camp rules, regulations, and procedures.[3]

Respondents have also determined that it would serve no useful purpose to engage in further litigation over the enemy combatant status of petitioners Abdul Semet (ISN 295), Jalal Jalaldin (ISN 285), Khalid Ali (ISN 280), and Sabir Osman (ISN 282). Provided they comply with camp rules, regulations, and procedures, these petitioners, like Parhat, will be housed in a special living facility while efforts continue to resettle them in a foreign country.

[3] The process of moving Parhat to this new housing is ongoing and respondents expect the new housing will be ready this week. This special camp facility provides significantly more living privileges, including a communal living arrangement, access to all areas of the camp (including a recreation yard, bunk house, and an activity room), access to entertainment (including a television set equipped with a VCR and DVD, a stereo system, and equipment for soccer, table football (foosball), and table tennis), air conditioning in all living areas (which they control), special food items, and expanded access to shower facilities and library materials. In the meantime, Parhat committed a disciplinary infraction (assaulting another Uighur detainee) and is temporarily being held in Camp 6, based on security concerns. When he is moved to the special housing, Parhat will be given a clear warning that the new housing arrangements are contingent upon his adhering the base security and disciplinary rules.

In light of respondents' decision with respect to these five petitioners, further litigation over petitioners' status is unnecessary and respondents will not file factual returns for these petitioners. Therefore, remedy is the only outstanding issue. Respondents have opposed petitioner Parhat's motion for release into the United States and will oppose motions for similar relief by the other four similarly situated petitioners. As discussed in respondents' classified submission, the Department of State has been working diligently to find an appropriate country for resettlement of petitioners and respondents will provide petitioners with special living privileges pending the successful outcome of the resettlement process.

With respect to the remaining twelve petitioners in the above-captioned cases, respondents are continuing to evaluate their status in light of the *Parhat* decision. Respondents will undertake to provide the Court with a supplemental status report on or before September 30, 2008, in which respondents will report whether further litigation concerning petitioners' status will be necessary. Proceeding in this fashion will allow respondents potentially to narrow the number of petitioners to only those for whom status disputes remain to be litigated, as to whom the production of factual returns and litigation on the merits will be appropriate. Further, this process will avoid unnecessary litigation concerning the production of factual returns in the interim and enable respondents to concentrate their limited litigation resources on the many other pending habeas cases with active status disputes.

Dated: August 18, 2008

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

*/S/ Andrew I. Warden*
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar No. 347518)
TERRY M. HENRY
ANDREW I. WARDEN (IN Bar No. 23840-49)
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC 20530
Tel: (202) 616-5084
Fax: (202) 616-8470

Attorneys for Respondents

Susan Baker Manning
BINGHAM McCUTCHEN LLP
2020 K Street NW
Washington, DC 20006
Telephone: (202) 373-6000
Facsimile: (202) 373-6001

Sabin Willett (Pursuant to LCvR 83.2(g))
Neil McGaraghan (Pursuant to LCvR 83.2(g))
Rheba Rutkowski (Pursuant to LCvR 83.2(g))
Jason S. Pinney (Pursuant to LCvR 83.2(g))
BINGHAM McCUTCHEN LLP
One Federal Street
Boston, Massachusetts 02110
Telephone: (617) 951-8000
Facsimile: (617) 951-8736

*Counsel for Petitioners Abdul Nasser, Abdul Sabour, Abdul Semet, Hammad Memet, Huzaifa Parhat, Jalal Jalaldin, Khalid Ali, Sabir Osman and Edham Mamet*

George Clarke
MILLER & CHEVALIER CHARTERED
655 15th Street, NW, Suite 900

Eric A. Tirschwell (Pursuant to LCvR 83.2(g))
Michael J. Sternhell (Pursuant to LCvR 83.2(g))
Darren LaVerne (Pursuant to LCvR 83.2(g))
Seema Saifee (Pursuant to LCvR 83.2(g))
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel to Petitioners Abdur Razakah, Ahmad Tourson, Abdul Ghappar Abdul Rahman and Adel Noori*

Elizabeth P. Gilson (Pursuant to LCvR 83.2(g))
383 Orange Street
New Haven, Connecticut 06511
Telephone: (203) 777-4050
Facsimile: (203) 787-3259

*Counsel for Petitioners Bahtiyar Mahnut and Arkin Mahmud*

J. Wells Dixon

Washington, DC 20005
Telephone: (202) 626-1573
Facsimile: (703) 598-5121

*Counsel for Petitioners Anwar Hassan and Dawut Abdurehim*

CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Telephone: (212) 614-6464
Facsimile: (212) 614-6499

*Counsel for All Petitioners*